IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| KELLI ANDREWS, as Administrator of the Estate of Tiffany Ann Rusher, deceased, | ) ) ) |
| Plaintiff, | ) ) |
| -vs- | ) )  No. 18-cv-1101-SEM-TSH |
| BRUCE RAUNER et al., | ) ) ) |
| Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION FOR DISMISSAL OF COUNTS II AND III OF PLAINTIFF'S COMPLAINT**

Defendants, JOHN R. BALDWIN (in his official capacity), BRUCE RAUNER (in his official capacity), ILLINOIS DEPARTMENT OF CORRECTIONS, and STATE OF ILLINOIS, by and through their attorney, Lisa Madigan, Attorney General for the State of Illinois, provide the following memorandum of law in support of their contemporaneously filed motion for dismissal of Counts II and III of Plaintiff's Complaint (doc. 1), stating as follows:

**INTRODUCTION**

On March 11, 2018, Plaintiff, as purported administrator for the Estate of Tiffany Rusher, filed this lawsuit against John Baldwin (the current acting director of the Illinois Department of Corrections), Governor Bruce Rauner, Dr. Jeff Sim, the Illinois Department of Corrections ("IDOC"), and the State of Illinois. (Doc. 1.) It appears Plaintiff attempts to state the following claims: (1) that Defendants Baldwin, Rauner, and Sim—in their respective individual capacities—violated Tiffany Rusher's Eighth Amendment rights by acting with deliberate indifference to Ms. Rusher's medical and mental health needs; (2) that Defendants Baldwin, Rauner, the IDOC, and the State of Illinois—in their respective official capacities—violated Tiffany Rusher's rights under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 ("ADA"), by failing to provide adequate mental health treatment, and depriving her of "access to human contact;" and (3) that

Defendants Baldwin, Rauner, the IDOC, and the State of Illinois—in their respective official capacities—violated the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* ("RA"), for the same conduct as stated in count II *supra*. *Id.*

Defendants now move to dismiss Plaintiff's complaint, in part. Plaintiff's claims under the ADA and RA should be dismissed because allegations of inadequate treatment for mental health conditions do not give rise to a viable claim under the ADA or RA. Additionally, since "access to human contact" is not a program or service as defined by the ADA, Plaintiff's ADA and RA claims should be dismissed. Defendants also move to dismiss Plaintiff's request for relief to the extent she seeks punitive damages for her ADA and RA claims.

If the Court grants Defendants' Motion, this case will proceed against Defendants Baldwin, Rauner, and Sim, in their individual capacities, on Plaintiff's Eighth Amendment claims. For the aforementioned reasons and as more thoroughly discussed below, Defendants respectfully request this honorable Court grant their Motion and dismiss Plaintiff' claims under the ADA and RA, and Plaintiff's claims against Defendant Baldwin (in his official capacity), Defendant Rauner (in his official capacity), the IDOC, and the State of Illinois.

## **LEGAL STANDARD**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Plaintiff's statement of claims requires more than labels, conclusions, or a recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Chancey v. Suburban Bus Div. of Regional*

*Transp. Authority*, 52 F.3d 623, 626–27 (7th Cir. 1995). However, the Court need not strain to find favorable inferences that are not apparent on the face of the complaint. *Coates v. Illinois State Board of Ed.*, 559 F.2d 445, 447 (7th Cir. 1977).

## FACTUAL BACKGROUND[1]

Tiffany Rusher, deceased, was an inmate of the Illinois Department of Corrections and housed at Logan Correctional Center from March 2013 until May 2016, when she was released into the custody of the Illinois Department of Human Services. (¶¶ 18 & 31.) While in the custody of the Illinois Department of Corrections, Ms. Rusher suffered from multiple severe mental illnesses including bipolar-type schizoaffective disorder, a borderline personality disorder, and post-traumatic stress disorder. (¶ 20.)

Ms. Rusher was specifically provided with therapy and group activity in order to address the mental illnesses with which she had been diagnosed. (¶ 20.) Due to Ms. Rusher's repeated attempts to and successful acts of self-harm, medical professionals placed Ms. Rusher on crisis watch and restricted her access to personal property. (¶ 21.) While Ms. Rusher was on crisis watch, medical staff would meet with her on a daily basis and a psychiatrist met with her weekly. (¶ 26.) Ms. Rusher was allowed to participate in group therapy sessions while on crisis watch. (¶ 27.) Ms. Rusher also received mediations to treat her mental illnesses. (¶ 26.)

Plaintiff claims Ms. Rusher's placement on crisis watch caused her mental condition to deteriorate. (¶ 28.) Instead of placement on crisis watch and the mental health treatment Ms. Rusher received, Plaintiff claims Ms. Rusher needed inpatient mental health treatment. (¶ 29.) Plaintiff claims Ms. Rusher received appropriate mental health treatment once she was placed in

---

[1] The below facts are taken from Plaintiff's Complaint (doc. 1). In ruling on Defendants' Motion to Dismiss, the Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Chancey*, 52 F.3d at 626–27. The inclusion of Plaintiff's facts in Defendants' Motion is not intended to be an endorsement of Plaintiff's version of events—not does it constitute an admission or denial on behalf of Defendants.

the custody of the Illinois Department of Human Services and she was housed at McFarland Mental Health Center. (¶ 32.)

While at McFarland Mental Health Center, Ms. Rusher was arrested for committing battery against another patient and she was transported to Sangamon County Jail. *Andrews v. Sangamon County*, No. 18-cv-01100-SEM-TSH, Doc. 1, ¶ 14 (C.D. Ill. Mar. 12, 2018).[2] Shortly after she arrived at Sangamon County Jail, Ms. Rusher engaged in numerous acts of self-harm and eventually committed suicide. *Id.* at ¶¶ 34 & 35.

## ARGUMENT

### I. Plaintiff's Complaint does not state a claim under the ADA or RA.

Plaintiff claims Defendants violated Ms. Rusher's rights under the ADA and RA by denying her the reasonable accommodation of "access to human contact, rehabilitation opportunities, group therapy, and adequate mental health treatment." (¶ 52 & 54.) Plaintiff's claims concerning Ms. Rusher's mental health treatment—specifically, the claim that Ms. Rusher was denied rehabilitation opportunities, group therapy, and adequate mental health treatment—are not cognizable claims under the ADA and RA. Further, access to human contact is not a program or service as defined by the ADA, and Plaintiff's ADA and RA claims should be dismissed.

The relief available to a prisoner under the Americans with Disabilities Act and the Rehabilitation Act is coextensive. *Jaros v. Illinois Dept. of Corrections*, 684 F.3d 667, 671 (7th Cir. 2012). The analysis of claims brought under the Title II of the ADA and Section 504 of the RA are the same, except the RA requires an additional element—receipt of federal funds. *Jaros*, 684 F.3d at 671–72; *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015). It is undisputed that

---

[2] *See generally Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (holding that courts may take judicial notice of public records, including public court documents, when considering a 12(b)(6) motion to dismiss).

state prisons receive federal funds. *See Jaros*, 684 F.3d at 671 (noting that all states accept federal funds for their prisons). As such, Defendant will analyze Plaintiff's claims under the ADA.

The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [a qualified] individual; (B) a record of such an impairment; or (C) being regarded as having such impairment." 42 U.S.C. § 12102(2).

To determine whether an individual is disabled under the Americans with Disability Act, a three-step inquiry must be undertaken. *Moore v. J.B. Hunt Transport, Inc.*, 221 F.3d 944, 950 (7th Cir. 2000) (citing *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998)). The Court must: (1) determine whether the plaintiff's condition is a physical or mental impairment; (2) identify an affected life activity and determine whether it constitutes a major life activity for purposes of the ADA; and (3) determine whether the plaintiff's impairment was a substantial limit on the identified major life activity. *Id.* (quotations omitted).

To establish a violation under both Title II of the ADA and Section 504 of the RA ("the statutes"), a plaintiff must prove (1) he is a qualified individual; (2) with a disability; (3) was denied the "benefits of the services, programs, or activities of a public entity" or was subjected to discrimination by the entity; and (4) denial or discrimination was because of his disability. *Jaros*, 684 F.3d at 72; *Wagoner*, 778 F.3d at 592. Failing to provide an accommodation is the equivalent of denying access. *Jaros*, 684 F.3d at 672.

**A. The ADA and RA do not provide for a claim of inadequate mental health treatment.**

Plaintiff's ADA and RA claims are based on the theory that Defendants denied Ms. Rusher rehabilitation opportunities, group therapy, and—generally—adequate mental health treatment. (¶ 52.) It is undisputed that Ms. Rusher received group therapy, met with psychiatrists, and was provided other mental health treatment. Plaintiff simply claims that this treatment was inadequate. Plaintiff's allegation does not support a claim under the ADA or RA.

An inmate's allegation that she is not receiving medical treatment, or is receiving inadequate treatment, is not a viable claim under the ADA. *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996); *Rashad v. Doughty*, 4 Fed. App'x. 558, 560 (10th Cir. 2001). Failure to attend to the medical needs of an inmate is not a violation of the ADA and the ADA does not create a remedy for medical malpractice. *Resel v. Fox*, 26 Fed. App'x. 572, 577 (7th Cir. 2001) ("[A] prison official does not violate the ADA when failing 'to attend to the medical needs of … disabled prisoners.'") (internal citations omitted). Claims of inadequate mental health treatment are similarly not viable under the ADA. *See generally Estate of Crandall v. Godinez*, 2015 WL 1539017, *7 (C.D. Ill. Mar. 31, 2015).

In *Estate of Crandall*, an offender in the custody of the Illinois Department of Corrections suffered from bipolar disorder. *Estate of Crandall*, 2015 WL 1539017, at *1. The plaintiff claimed that Wexford Health Sources Inc., the contractual provider for certain medical and mental health services in the Illinois correctional system, treated Crandall's mental illness with psychotropic medications, instead of intensive psychological and psychiatric services. *Id.* While on these medications, Crandall was placed in segregation and, thereafter, committed suicide. *Id.* at *2. Crandall's Estate then filed a lawsuit against Salvador Godinez, the then director of the Illinois Department of Corrections, claiming—in relevant part—that Director Godinez violated Crandall's rights under the ADA and RA. *Id.* at *6. Specifically, the plaintiff claimed Crandall suffered from a disability—his bipolar disorder—and Director Godinez failed to accommodate this disability by failing to provide adequate mental health treatment. *Id.* Director Godinez filed a motion to dismiss for failure to state a claim. *Id.* at *1. In granting Director Godinez's Motion, the District Court for the Central District of Illinois held:

> Plaintiff has not pleaded that Crandall was denied access to medical services. In fact the First Amended Complaint admits that Crandall received medical services…but challenges the adequacy of those services. […] This claim—that

>Crandall was not properly treated for his mental illness—is distinctly different from a claim that Crandall was denied access to medical services, and is not cognizable under the ADA.

*Id.* at *7.

The instant case is factually indistinguishable from *Estate of Crandall*. Plaintiff admits Ms. Rusher received group therapy (¶ 27), met with psychiatrists on a weekly basis (¶ 26), and received medications for her mental illnesses (¶ 26). Plaintiff does not dispute Ms. Rusher was receiving treatment, rather, Plaintiff claims Defendants denied Ms. Rusher the "reasonable accommodation of inpatient intensive psychiatric treatment." (¶ 55.) Plaintiff's disagreement with Ms. Rusher's course of mental health treatment—when Ms. Rusher was not denied access to mental health treatment—does not amount to a cognizable claim under the ADA or RA. *Estate of Crandall*, 2015 WL 1539017, at *7. Accordingly, Plaintiff's ADA and RA claim should be dismissed.

**B. Access to human contact is not a program or service under the ADA or RA.**

Plaintiff generally claims Ms. Rusher's placement on crisis watch—where Ms. Rusher was placed from time to time by medical and mental health professionals because Ms. Rusher was engaging in self-harm—denied her access to human contact. (¶ 52.) It appears Plaintiff is claiming Defendants alleged denial of intensive inpatient psychiatric treatment denied Ms. Rusher access to the program or service of "access to human contact." Plaintiff has pleaded this claim away because she admitted that Ms. Rusher received group therapy and met with mental health professionals throughout her time at Logan Correctional Center, even when Ms. Rusher was placed on crisis watch. (¶¶ 20, 26, and 27.) Accordingly, this claim should be dismissed because Plaintiff admits Plaintiff had "access to human contact." In any event, access to human contact is not a program or service as defined by the ADA, and Plaintiff's ADA and RA claims should be dismissed.

To state a claim under Title II of the ADA, a plaintiff must show that she was denied access to the "benefits of the services, programs, or activities of a public entity." *Jaros*, 684 F.3d at 672.

In the prison context, services, programs, and activities include recreational activities, medical services, educational and vocational programs. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). A prison cell is not a service, program, or activity. *Bryant*, 84 F.3d at 249.

Access to human contact does not fall within the category of services, program, and activities as defined by the U.S. Supreme Court in *Yeskey*, Rather, access to human contact is an incident of prison life—similar to be placed in a prison cell. Since access to human contact is not a service, program, or activity, Plaintiff's claim fails and the Court should dismiss her ADA and RA claims.

## II. Plaintiff is Not Entitled to Punitive Damages Under the ADA or RA

In her request for relief, Plaintiff generally requests "[a]n award of compensatory, punitive, and nominal damages." To the extent Plaintiff is seeking punitive damages for her ADA or RA claims, Defendants move to dismiss Plaintiff's request.

Relief under the RA and ADA are coextensive and courts used the same standards to analyze claims under both statutes. *Jaros*, 684 F.3d at 671. Punitive damages may not be awarded in private suits brought under the ADA and RA. *Barnes v. Gorman*, 539 U.S. 181, 189 (2002).

Here, Plaintiff claims in Counts II and III that Governor Rauner, the State of Illinois, Acting Director Baldwin, and the Illinois Department of Corrections violated Tiffany Rusher's rights under the ADA and RA. (Compl. 16–20.) Plaintiff makes a general request for damages, including punitive damages. (Compl. 21.) It is not clear whether Plaintiff is seeking punitive damages under Counts II and III. To the extent Plaintiff is seeking punitive damages for her ADA or RA claims, the Court should dismiss her request because the ADA and RA do not provide for punitive damages in private suits. *Barnes*, 539 U.S. at 189. Defendants request that the Court grant their Motion and dismiss Plaintiff's claims for punitive damages as it applies to her Counts II and III.

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request this honorable Court grant their Motion and dismiss Plaintiff's Counts II and III, and dismiss Defendant Baldwin (in his official Capacity), Defendant Rauner (in his official capacity), the Illinois Department of Corrections, and the State of Illinois.

          Respectfully submitted,

          JOHN R. BALDWIN (in his official capacity),
          BRUCE RAUNER (in his official capacity),
          ILLINOIS DEPARTMENT OF CORRECTIONS,
          and STATE OF ILLINOIS,

          Defendants,

| | |
|---|---|
| Jeremy C. Tyrrell #6321649 | LISA MADIGAN, Illinois Attorney General, |
| Assistant Attorney General | |
| 500 South Second Street | Attorney for Defendants, |
| Springfield, Illinois 62701 | |
| (217) 785-4555 Phone | By: s/Jeremy C. Tyrrell |
| (217) 782-8767 Fax | Jeremy C. Tyrrell |
| Email: jtyrrell@atg.state.il.us | Assistant Attorney General |

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| KELLI ANDREWS, as Administrator of the Estate of Tiffany Ann Rusher, deceased, ) ) ) | |
| Plaintiff, ) | |
| -vs- ) | No.  18-cv-1101-SEM-TSH |
| ) | |
| BRUCE RAUNER et al., ) ) | |
| Defendants. ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on June 4, 2018, I caused to be electronically filed the foregoing *Memorandum of Law in Support of Defendants' Motion for Dismissal of Count II and II of Plaintiff's Complaint* with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Alexis G. Chardon:    ali@weilchardon.com
Nicole Rae Schult:    nicole@uplcchicago.org
Stephen H Weil:       steve@weilchardon.com
Alan Mills:           alan@uplcchicago.org
Emmanuel Andre:       eandre@northsidetlc.com
Karen L. McNaught:    kmcnaught@cassiday.com

                Respectfully Submitted,

                s/Jeremy C. Tyrrell
                Jeremy C. Tyrrell #6321649
                Assistant Attorney General
                500 South Second Street
                Springfield, IL  62701
                Telephone:    (217) 785-4555
                Facsimile:    (217) 782-8767
                jtyrrell@atg.state.il.us