IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| KELLI ANDREWS, as Administrator of the Estate of Tiffany Ann Rusher, deceased, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 3:18-cv-1101<br>) |
| BRUCE RAUNER, THE STATE OF ILLINOIS, JOHN R. BALDWIN, JEFF SIM, HE YUAN, BRIAN RICHARDSON, THE ILLINOIS DEPARTMENT OF CORRECTIONS, and WEXFORD HEALTH SOURCES, INC., | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on the Motion to Dismiss Counts II and III of Plaintiff's Complaint (d/e 15) filed by Defendants John R. Baldwin, Bruce Rauner, Illinois Department of Corrections, and State of Illinois. Because Plaintiff has alleged plausible claims under the Americans with Disabilities Act and the Rehabilitation Act of 1973, the Motion to Dismiss is DENIED.

# I. JURISDICTION

This Court has subject matter jurisdiction because Plaintiff's causes of action are brought under the Eighth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983; the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. (ADA); and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 et seq. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"). Venue is proper because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district. 28 U.S.C. § 1391(b)(2).

# II. LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. Christensen v. Cnty. of Boone, Ill., 483 F.3d 454, 458 (7th Cir. 2007). To state a claim for relief, a plaintiff need only provide a short and plain statement of the claim showing she is entitled to relief and giving the defendants fair notice of the claims. Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008).

When considering a motion to dismiss under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the

plaintiff, accepting all well-pleaded allegations as true and construing all reasonable inferences in her favor. Id. However, the complaint must set forth facts that plausibly demonstrate a claim for relief. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007). A plausible claim is one that alleges factual content from which the Court can reasonably infer that the defendants are liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Merely reciting the elements of a cause of action or supporting claims with conclusory statements is insufficient to state a cause of action. Id.

### III FACTS ALLEGED IN THE COMPLAINT

The complaint contains the following allegations, which the Court accepts as true for purposes of the motion to dismiss. Tamayo, 526 F.3d at 1081.

Plaintiff, Kelli Andrews, is the administrator of the estate of her daughter, Tiffany Rusher. Rusher was confined at the Logan Correctional Center from March 2013 until May 2016.

The defendants are Bruce Rauner, the Governor of Illinois; John R. Baldwin, the acting director of the Illinois Department of Corrections (IDOC); Jeff Sim, the Central Regional Psychologist

Supervisor of IDOC; the State of Illinois; Wexford Health Services, Inc.; Dr. He Yuan, the Chief Psychiatrist at Logan Correctional Center; and Brian Richardson, a mental health professional at the Logan Correctional Center.

Sometime in 2013, Rusher was placed in solitary confinement as the result of a disciplinary infraction. Rusher's mental health deteriorated. Plaintiff alleges, on information and belief, that Rusher had not previously been diagnosed with a mental illness.

Between October 2013 and May 2015, Rusher made several attempts to hurt herself, including attempts to strangle herself and swallowing items like batteries and pens. During this time, Rusher cycled between the prison's general population and stints in solitary confinement as punishment for the acts of self-harm.

In May 2014, prison staff diagnosed Rusher with a bipolar-I've type shizoaffective disorder, a borderline personality disorder, and post-traumatic stress disorder. Prison staff determined that Rusher was at a continued risk of harming herself. The medical professionals noted the importance of "out of cell time" to engage in activities like socializing and writing. Rusher was provided with therapy and group activities to address her mental illness.

However, Rusher was placed in solitary confinement when she tried to hurt herself. Her placement in solitary confinement undermined the limited mental health care she had been receiving.

In September 2015, after another suicide attempt, Logan medical staff ordered Rusher be placed on "constant watch" in a "crisis cell" within the Logan's Medical Housing Unit. Rusher was stripped naked and only permitted an anti-suicide smock. All of her personal property was taken away. A guard was stationed outside Rusher's cell 24 hours a day.

Plaintiff alleges that, while short periods of constant watch are medically acceptable, extended constant watch is strictly forbidden. Plaintiff alleges that, instead of trying to secure Rusher effective mental health treatment—such as transferring Rusher to the custody of the Illinois Department of Human Services or transferring Rusher out of Logan for inpatient mental health treatment—defendants chose to keep Rusher in isolation. Plaintiff alleges that prisoners suffering from physical illness are transferred outside of IDOC for medical care.

Shortly after placing Rusher in a crisis cell, Logan medical staff identified Rusher as one of only a few dozen patients within

IDOC whose mental condition was so acute and dangerous that she required full inpatient level mental health care. Instead of securing effective mental health care for Rusher, defendants kept her in isolation. A staff member went to Rusher's cell once a day and asked her rote questions through the cell door. Rusher was also interviewed once a week for 30 minutes by a psychiatrist for purposes of adjusting the levels of her various medications. Eventually, in response to pressure from the Rasho v. Baldwin, 07-cv-1298 (C.D. Ill.)(Mihm, J.) class action lawsuit, Rusher would occasionally be allowed to leave the crisis cell for 30-minute group therapy sessions, which occurred no more than once per week. Prison staff treated the therapy sessions as a privilege, rather than health care, and would cancel the sessions as punishment if Rusher tried to harm herself. Rusher made repeated attempts to harm herself.

Plaintiff alleges that the defendants knew that allowing Rusher to be placed in solitary in a crisis cell for a meaningful length of time would be toxic to her mental health. Plaintiff further alleges that defendants had the ability to secure appropriate treatment for Rusher but failed to do so.

In May 2016, Rusher's term of incarceration ended. The defendants, knowing the damage they inflicted on Rusher, took steps to have Rusher involuntarily committed to a state psychiatrist hospital. Rusher did not oppose the petition and her admission became "voluntary" under state law. Rusher was transferred from the Logan crisis cell to the McFarland mental health hospital operated by the Illinois Department of Human Services.

At McFarland, Rusher was placed in a group setting and received intensive psychological and psychiatric care. As a result, her mental health condition improved.[1]

In Count I, not at issue in the Motion to Dismiss, Plaintiff alleges that defendants Rauner, Baldwin, Sim, Yuan, Richardson, and Wexford were deliberately indifferent to Rusher's medical needs. In Counts II and III, Plaintiff alleges that Rauner and Baldwin, in their official capacities, IDOC, and the State of Illinois

---

[1] Although not alleged in this Complaint, the Court takes judicial notice of the complaint filed by Plaintiff in Andrews v. Sangamon County, Central District of Illinois, Springfield Division, Case No. 18-1100, relating to Rusher's detention at the Sangamon County Jail. See Olson v. Champaign Cnty., Ill., 784 F.3d 1093, 1096 n.1 (7th Cir. 2015) (a court may take judicial notice of documents in the public record when ruling on a motion to dismiss under Rule 12(b)(6)). That complaint alleges that Rusher was accused of battery while a patient at McFarland, arrested, and taken to the Sangamon County Jail. While there, Rusher committed suicide and died on March 30, 2017.

(the State Defendants) violated the ADA and the Rehabilitation Act by failing to accommodate Rusher's disability.

For the ADA and Rehabilitation Act claims, Plaintiff alleges that the State Defendants failed to provide a reasonable accommodation for Rusher's mental illness and discriminated against her for her mental illness.  Specifically, Plaintiff alleges that Rusher suffered from a mental impairment that substantially limited one or more major life activities, including, but not limited to thinking, interacting with others, and controlling her behavior. As a result of Rusher's mental disabilities, she required inpatient psychiatric therapy.

Plaintiff alleges that the State Defendants failed to reasonably accommodate Rusher's disability by failing to provide her access to inpatient intensive psychiatric treatment. Due to this failure, the State Defendants deprived Rusher of access to services, programs, and activities, including education, programming, recreation, exercise, human interaction, and mental health treatment and services.  In addition, the State Defendants allow prisoners with physical injuries or illness to receive outside hospitalization but failed to do so for Rusher because of her mental disability.  As a

result of the State Defendants' failures, Rusher suffered extreme mental pain and anguish and physical harm.

Plaintiff seeks compensatory, punitive, and nominal damages. She also seeks costs and attorney's fees.

## IV. ANALYSIS

The State Defendants move to dismiss Counts II and III on two grounds. The State Defendants assert that: (1) allegations of inadequate treatment for mental health conditions do not give rise to a viable claim under the ADA or the Rehabilitation Act; and (2) "access to human contact" is not a program or service under the ADA or Rehabilitation Act. The State Defendants also move to dismiss Plaintiff's request for punitive damages under the ADA and Rehabilitation Act.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title II of the ADA applies to state prisons. Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998).

The Rehabilitation Act similarly provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . . " 29 U.S.C. § 794(a). The State Defendants do not dispute that state prisons receive federal funds. Mem. at 4-5 (d/e 16).

Other than some minor differences not relevant here, the ADA and the Rehabilitation Act are coextensive. CTL ex rel. Trebatoski v. Ashland Sch. Dist., 743 F.3d 524, 528 (7th Cir. 2014); see also Washington v. Ind. High Sch. Athletic Ass'n, Inc., 181 F.3d 840, 846 n.6 (7th Cir. 1999) (noting that the chief differences between the ADA and the Rehabilitation Act are that the Rehabilitation Act only applies to entities that receive federal funding and requires that the exclusion be solely by reason of disability). Moreover, "precedent under one statute typically applies to the other." Washington, 181 F.3d at 846 n.6.

The parties treat the ADA and the Rehabilitation Act claims together. To state a claim under the ADA and the Rehabilitation Act, Plaintiff must allege that (1) Rusher is a qualified person with a

disability, (2) the State Defendants excluded Rusher from participating in or denied her the benefits of a public entity's services, programs, or activities or otherwise discriminated against her; and (3) the exclusion, denial, or discrimination was by reason of or because of her disability. See Wagoner v. Lemmon, 778 F.3d 586, 592 (7th Cir. 2015) (identifying separately the elements for a Title II and Rehabilitation Act claim but describing the elements as "functionally identical"); Jaros v. Ill. Dep't of Corr., 684 F.3d 667, 672 (7th Cir. 2012).[2] A refusal to reasonably accommodate a disability is "tantamount to denying access." Jaros, 694 F.3d at 671 (also noting that the Supreme Court has found a duty to accommodate in the Rehabilitation Act).

---

[2] In Jaros, the Seventh Circuit "dispense[d] with the ADA and the thorny question of sovereign immunity" and just considered the claim under the Rehabilitation Act because the plaintiff could only have one recovery. Jaros, 684 F.3d at 672. The "thorny question of sovereign immunity" alludes to fact that Title II of the ADA abrogates state sovereign immunity only for conduct that actually violates the Constitution. United States v. Georgia, 546 U.S. 151, 159 (2006); see, e.g., Cunningham v. Falmier, No. 17-cv-126-SMY, 2017 WL 1212067, at *4 (S.D. Ill. Apr. 3, 2017) (because the denial of telephone privileges did not independently violate the Constitution, the plaintiff could not pursue a claim for damages against the state under the ADA). Sovereign immunity does not bar a Rehabilitation Act claim because Illinois waived its immunity from suits for damages under the Rehabilitation Act as a condition of receiving federal funds. Jaros, 684 F.3d at 672 n.5.

The State Defendants first argue that Plaintiff cannot bring a claim for inadequate mental health treatment under the ADA and the Rehabilitation Act. The State Defendants assert that, because Plaintiff alleged that Rusher received group therapy, met with psychiatrists on a weekly basis, and received medication, Plaintiff's claim is nothing more than a disagreement with Rusher's course of mental health treatment.

The cases cited by the State Defendants involved complaints that only alleged inadequate medical treatment and did not allege discrimination or a failure to make a reasonable accommodation. For example, in <u>Bryant v. Madigan</u>, the Seventh Circuit held that that ADA is not violated by a prison failing to attend to the needs of its disabled prisoners. <u>Bryant</u>, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice."). The Seventh Circuit noted that the plaintiff did not allege that he was excluded from some service, program, or activity but only complained about incompetent treatment for his paraplegia. <u>Id.</u>

Similarly, in <u>In re Estate of Crandall v. Godinez</u>, No. 14-cv-1401, 2015 WL 1539017 (C.D. Ill. Mar. 31, 2015), the court held that the plaintiff had not pleaded an ADA claim because he only

challenged the adequacy of the medical services the decedent received. The plaintiff did not allege that the decedent was subject to discrimination or failed to receive services that other inmates received. Id. at *6. The court drew a distinction between a claim that a prisoner was not properly treated for his mental illness—which did not state a claim under the ADA—and a claim that the prisoner was denied access to medical services—which would state a claim. In addition, the court found that the plaintiff had not alleged that the decedent was placed in segregation because of his disability or for reasons related to his disability and instead alleged that the defendant had a legitimate, not-discriminatory reason for the placement. Id. at 7 (noting the complaint alleged the decedent was placed in segregation because of an investigation regarding theft of another prisoner's funds). Id.; see also Corbin v. Indiana, No. 3:16CV602-PPS/MGG, 2018 WL 1920711, at *4 (N.D. Ind. Apr. 23, 2018) (finding the plaintiff stated a claim where he alleged he was placed in segregated housing because of his disability, that he was denied a service covered by the ADA and Rehabilitation Act due to that segregation, and that the States' conduct was intentional, willful, and wanton).

In this case, Plaintiff alleges that the State Defendants discriminated against Rusher by denying her access to hospitalization outside of the prison but allowed prisoners with physical injuries or illnesses to receive outside hospitalization. Compl. ¶¶ 25(c), 52, 53, 61. Plaintiff also alleges that the State Defendants placed her in solitary confinement because of her mental disability, which removed her from access to services, programs, and activities. Id. ¶¶ 54, 55, 64. This is sufficient to state a claim under the ADA and the Rehabilitation Act.

The State Defendants also move to dismiss Counts II and III on the ground that "access to human interaction" is not a service, program, or activity under the ADA or Rehabilitation Act. The Court will not dismiss Counts II and III on this ground. Plaintiff alleges that Rusher was denied a long list of activities, programs, and services, including education, programming, recreation, exercise, and mental health treatment and services. Therefore, Counts II and III state a claim even if access to human interaction is not an activity, program, or service—an issue the Court need not decide at this time.

Finally, the State Defendants assert that Plaintiff is not entitled to punitive damages under the ADA or the Rehabilitation Act. Plaintiff asserts that she does not seek punitive damages under the ADA and Rehabilitation Act and, therefore, this portion of the State Defendants' motion is moot. In light of Plaintiff's clarification that she does not seek punitive damages under the ADA and the Rehabilitation Act, the Court denies this portion of the motion as moot.

## V. CONCLUSION

For the reasons stated, the Motion to Dismiss Counts II and III of Plaintiff's Complaint (d/e 15) filed by Defendants John R. Baldwin, Bruce Rauner, Illinois Department of Corrections, and State of Illinois is DENIED. These defendants shall file an amended answer on or before August 20, 2018.

**ENTERED: August 3, 2018**

**FOR THE COURT:**

    *s/Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**