E-FILED
Tuesday, 28 August, 2018  09:52:44 AM
Clerk, U.S. District Court, ILCD

043595/19344/JNR

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

KELLI ANDREWS as Administrator of the
Estate of Tiffany Ann Rusher, deceased,

        Plaintiff,

v.

BRUCE RAUNER, STATE OF ILLINOIS,
JOHN R. BALDWIN, JEFF SIM, HE YUAN,
BRIAN RICHARDSON, ILLINOIS
DEPARTMENT OF CORRECTIONS and
WEXFORD HEALTH SOURCES, INC.,

        Defendants.

No. 18-cv-1101

Judge Michael M. Mihm

## ANSWER TO PLAINTIFF'S COMPLAINT WITH AFFIRMATIVE DEFENSES

COME NOW the defendants, He Yuan, by his counsel, CASSIDAY SCHADE LLP, and hereby answers the complaint.  In support thereof, the following statements are made.

## I.      NATURE OF THE ACTION

1.      In 2013, Tiffany Rusher began serving a five-year sentence at Logan Correctional Center.  As the result of a disciplinary infraction, she was placed in solitary confinement.  While in solitary, Tiffany's mental health deteriorated so badly that she began to engage in serious incidents of self-harm, including suicide attempts.  Rather than providing the treatment she needed to get better, the defendants responded by repeatedly strapping her to a bed and placing her in an isolation cell.  Instead of helping Tiffany, this exacerbated her condition—as the defendants knew it would.  Then, for the last eight months of her sentence, Tiffany was kept in complete isolation, stripped of all property and clothing, given nothing but a suicide smock (which doubled as a blanket),

with a guard literally staring at her 24 hours a day, 7 days a week.  These months in isolation devastated Tiffany's mental health.

**ANSWER:**

Defendant, Dr. He Yuan, has insufficient knowledge to admit or deny where or when Tiffany Rusher began serving her sentence and whether she was placed in segregation as a result of a disciplinary infraction. Defendant admits Tiffany Rusher engaged in serious acts of self-harm, including attempting suicide, and therefore was kept on constant watch for her safety for approximately eight months.  Defendant denies he did not treat Tiffany Rusher, denies the treatment provided to her was inappropriate, and denies he knew the treatment provided to her would exacerbate her condition.  Defendant denies the remaining allegations contained in ¶1 of the complaint.

2.     Tiffany should have been placed in an inpatient psychiatric hospital, and indeed, at any point during her confinement the defendants had the ability to transfer her to such a facility.  The defendants did not do this, however.  Instead, they waited until her criminal sentence was over, in May 2016.  Then, knowing how badly they had damaged her, the defendants had Tiffany transferred directly from Logan to a state mental hospital, where she should have been all along.

**ANSWER:**

Defendant, Dr. He Yuan, admits Tiffany Rusher was not placed at an in-patient psychiatric hospital while she was incarcerated and admit Tiffany Rusher was transferred from Logan Correctional Center to a state mental health facility after her term of incarceration.  Defendant denies the remaining allegations contained in ¶2 of the complaint.

3.     This action seeks compensation for the months of torture that the defendants inflicted on Tiffany before they finally sent her to a hospital for treatment. Tiffany's mother Kelli Andrews, who is the administrator of Tiffany's estate, asserts the following claims to redress the egregious abuse that the defendants inflicted upon her daughter:

2

**ANSWER:**

Defendant, Dr. He Yuan, has insufficient knowledge to admit or deny whether Kelli Andrews is the mother of Tiffany Rusher; whether Kelli Andrews is the administrator of Tiffany's estate; or what claims Kelli Andrews brings.  Defendant denies the remaining allegations contained in ¶3 of the complaint.

4.      ***Count One***—Eighth Amendment.  By placing Tiffany in extended solitary confinement rather than providing effective treatment for her mental illness, the defendants inflicted cruel and unusual punishment on Tiffany, and exhibited deliberate indifference to Tiffany's serious medical needs.  This caused extreme mental anguish, suffering, and multiple physical injuries, in violation of Tiffany's right to be free from cruel and unusual punishment under the Eighth Amendment to the United States constitution.

**ANSWER:**

Defendant, Dr. He Yuan, denies the allegations contained in ¶4 of the complaint.

5.      ***Counts Two and Three***—Americans with Disabilities Act and Rehabilitation Act.  The defendants also discriminated against Tiffany because of her mental illness, in violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA").  Tiffany's severe mental illnesses were disabilities protected by the ADA and the RA.  While the defendants have policies to ensure that people confined to IDOC who have conventional medical needs (such as physical injuries or illnesses) receive the medical treatment they need, the defendants did not provide equivalent treatment for Tiffany's mental condition.  Instead, they effectively decided that she should be tortured until her sentence was completed.

**ANSWER:**

Defendant, Dr. He Yuan, admits policies exist for the treatment of inmate medical

needs.  Defendant denies the remaining allegations of ¶5 of the complaint.  To the extent plaintiff alleges the Americans with Disabilities Act and the Rehabilitation Act apply to Dr. He Yuan, defendant specifically denies the allegation.

6.      In further violation of the ADA and the RA, the defendants failed to provide reasonable accommodations for Tiffany's disability.  The defendants provide IDOC prisoners with a variety of programs and services.  Among these is furnishing the basic human need of interaction with other persons.  With reasonable accommodations to her disability the defendants could have provided Tiffany with these programs and services, but they chose not to.  Instead they placed her in extreme and extended solitary confinement, with the devastating consequences described in this Complaint.

**ANSWER:**

Defendant, Dr. He Yuan, admits he provides inmates within the Illinois Department of Corrections with programs and services.  Defendant denies the remaining allegations contained in ¶6 of the complaint.

7.      Tiffany had the right to be free from cruel and unusual punishment and she had the right not to be mistreated because of her disability.  By this action, Tiffany's mother seeks to vindicate those rights and to have the defendants answer for the way they treated a vulnerable young woman, first by inflicting terrific damage on her by placing her in solitary confinement, and then by failing to treat the devastating illness that they themselves had both caused and exacerbated.

**ANSWER:**

Defendant, Dr. He Yuan, admits the Eighth Amendment of the Constitution of the United States applied to Tiffany Rusher while she was incarcerated.  Defendant has insufficient knowledge to admit or deny the motivations of plaintiff. Defendant denies the remaining allegations contained in ¶7 of the complaint.

## II.       JURISDICTION AND VENUE

8.      The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a), as

Plaintiff's causes of action are brought under the Eighth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act, and the Rehabilitation Act.

**ANSWER:**

Defendant, Dr. He Yuan, admits this Court has jurisdiction pursuant to 28 U.S.C. §§1331 and 1342(a).  Defendant denies plaintiff can maintain an action against Dr. Yuan for an alleged violations of the Americans with Disabilities Act and the Rehabilitation Act.

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as one or more of the Defendants resides in the Central District of Illinois and the events giving rise to the claims asserted in this lawsuit arose in this judicial district.

**ANSWER:**

Defendant, Dr. He Yuan, admits the allegations of ¶9 of the complaint.

### III.        PARTIES

10.     Kelli Andrews is Tiffany Rusher's mother, and is the administrator of Tiffany's estate pursuant to an order entered by the Circuit Court for the Seventh Judicial Circuit of Illinois, Sangamon County.  Tiffany Rusher is deceased.  Tiffany was confined at Logan Correctional Center from 2013 until May 2016.

**ANSWER:**

Defendant, Dr. He Yuan, admits Tiffany Rusher was released from Logan Correctional Center in May 2016.  Defendant has insufficient knowledge to admit or deny the remaining allegations contained in ¶10 of the complaint.

11.     Defendant Bruce Rauner is the Governor of Illinois, and he was the Governor of Illinois during the entire time that Tiffany was in extended solitary confinement in 2015 and 2016.  He is sued in his official and individual capacities. Governor Rauner oversees both the Illinois Department of Corrections and the Illinois

Department of Human Services.  Upon information and belief, Governor Rauner had actual knowledge that several severely mentally ill prisoners, among them Tiffany, were in critical need of inpatient psychiatric treatment that was unavailable at IDOC facilities. At all relevant times Governor Rauner had the power to secure such treatment by ordering Defendant Baldwin to transfer these individuals to mental health facilities operated by the Illinois Department of Human Services.  Despite knowing that these prisoners were in need of such a transfer, however, Governor Rauner did not seek it.

**ANSWER:**

Defendant, Dr. He Yuan, admits Bruce Rauner is the Governor of the State of Illinois.  Defendant has insufficient knowledge to admit or deny the remaining allegations contained in ¶11 of the complaint.

12.     Defendant John R. Baldwin is the acting director of the Illinois Department of Corrections ("IDOC").   Director Baldwin is sued in his official and individual capacities.   Director Baldwin had actual knowledge that Tiffany and several other severely mentally ill people confined to the IDOC needed inpatient psychiatric treatment that was unavailable at IDOC facilities, and at all relevant times had had the statutory power to secure the transfer these individuals to mental health facilities operated by the Illinois Department of Human Services.  Despite knowing that these individuals were in need of such a transfer, however, Defendant Baldwin did not seek it.

**ANSWER:**

Defendant, Dr. He Yuan, admits John R. Baldwin is the Acting Director of the Illinois Department of Corrections.   Defendant has insufficient knowledge to admit or deny the remaining allegations contained in ¶12 of the complaint.

13.     Defendant Jeff Sim was the Central Regional Psychologist Supervisor of IDOC.  Supervisor Sim is sued in his individual capacity.  At all relevant times, Sim was


directly involved in Tiffany's care and personally aware of her situation, and had actual knowledge that Tiffany needed inpatient psychiatric treatment that was unavailable at IDOC facilities.  At all relevant times Sim had the power to secure her transfer to a mental health facility operated by the Illinois Department of Human Services or any other hospital providing in patient mental health treatment.  Despite knowing that Tiffany was in need of such a transfer, however, Defendant Sim did not seek it.

**ANSWER:**

Defendant, Dr. He Yuan, admits Jeff Sim was the Central Regional Psychologist Supervisor of the Illinois Department of Corrections. Defendant has insufficient knowledge to admit or deny the remaining allegations contained in ¶13 of the complaint.

14.    Defendant State of Illinois operates the Illinois Department of Corrections, where Tiffany was housed.  The State of Illinois also operates the mental health facilities of the Illinois Department of Human Services.  Tiffany could have been transferred to one of those facilities instead of being placed in extended solitary confinement at Logan Correctional Center.  The State of Illinois receives federal funding.

**ANSWER:**

Defendant, Dr. He Yuan, admits the State of Illinois has administrative agencies designated as the Illinois Department of Corrections, which, *inter alia*, operates prison facilities, and the Illinois Department of Human Services, which, *inter alia*, operates mental health facilities.  Defendant has insufficient knowledge to admit or deny the remaining allegations contained in ¶14 of the complaint.

15.    Defendant Wexford Health Sources, Inc. ("Wexford") is a private company that is under contract to provide medical care to all persons who are incarcerated in the IDOC.  This care includes the provision of "[c]omprehensive and specialized mental

health services" including "specialty and emergency care that cannot be provided on site."  Despite its contractual obligations, however, by policy and practice Wexford did not provide on-site mental health services necessary to meet the needs of someone with severe mental illnesses like Tiffany, nor did it transfer the people who needed such care to appropriate outside mental health facilities which offered the higher level of care Tiffany required.

**ANSWER:**

Defendant, Dr. He Yuan, admits Wexford is a private company which contracts with the Illinois Department of Corrections to provide medical care to inmates incarcerated in the Illinois Department of Corrections.  Defendant denies plaintiff has fully or accurately set out Defendant Wexford's duties under its contract.  Defendant denies the remaining allegations contained in ¶15 of the complaint.

16.    Defendant Dr. He Yuan was at the times relevant to this complaint the Chief Psychiatrist at Logan Correctional Center.  At all relevant times he was employed by Defendant Wexford.  He is sued in his individual capacity.  Dr. Yuan was responsible for Tiffany's psychiatric care and was aware that she needed inpatient psychiatric treatment that was unavailable at IDOC facilities.  At all relevant times, Dr. Yuan had the power to seek Tiffany's referral to mental health facilities outside of the IDOC.  Despite knowing that these Tiffany was in need of such a referral, however, Defendant Dr. Yuan did not arrange for the care Tiffany needed.

**ANSWER:**

Defendant, Dr. He Yuan, admits he was a psychiatrist serving inmates at Logan Correctional Center; was employed by Wexford Health Sources, Inc.; and provided care to Tiffany Rusher at various times during her incarceration.  Defendant denies the remaining allegations contained in ¶16 of the complaint.

17.    Defendant Brian Richardson is a mental health professional at Logan

Correctional Center.  At all relevant times, he was employed by Defendant Wexford.  He is sued in his individual capacity.  Richardson personally provided mental health care to Tiffany.  Along with Dr. Yuan, Richardson was responsible for Tiffany's mental health care and was aware that she needed inpatient psychiatric treatment that was unavailable at IDOC facilities.  At all relevant times, Richardson had the power seek Tiffany's referral to mental health facilities outside of the IDOC.  Despite knowing that these Tiffany was in need of such a referral, however, Defendant Richardson did arrange for the care Tiffany required.

**ANSWER:**

Defendant, Dr. He Yuan, admits Brian Richardson is a Clinical Psychologist at Logan Correctional Center; is employed by Wexford Health Sources, Inc.; and provided care to Tiffany Rusher at various times during her incarceration.  Defendant denies the remaining allegations contained in ¶17 of the complaint.

## IV.        FACTS

18.    Tiffany Rusher entered the custody of the Illinois Department of Corrections in early 2013, and she was transferred to Logan Correctional Center in March 2013.  On information and belief, at the time she entered IDOC Tiffany had not been diagnosed with a mental illness.

**ANSWER:**

Defendant, Dr. He Yuan, has insufficient knowledge to admit or deny the allegations contained in ¶18 of the complaint.

19.    Later in 2013, Tiffany was placed in solitary confinement as the result of a disciplinary infraction.  In solitary confinement her mental health deteriorated, and she quickly began trying to harm herself.  In October 2013 she tried to strangle herself.  In December 2013 she swallowed at least five batteries.  In January 2014 she swallowed a

pen. By February 2014 she asked to be placed in restraints because she wanted to hurt herself, and in May 2015 she attempted to strangle herself with a piece of elastic. During this time Tiffany cycled between the prison's general population and stints in solitary confinement, where she would be placed as punishment for these acts of self-harm.

**ANSWER:**

Defendant, Dr. He Yuan, admits Tiffany Rusher did, from time to time, attempt to commit suicide while at Logan Correctional Center. Defendant has insufficient knowledge to admit or deny the remaining allegations contained in ¶19 of the complaint.

20.    By May 2014 prison staff had diagnosed Tiffany with a bipolar-type schizoaffective disorder, a borderline personality disorder, and post-traumatic stress disorder. Medical professionals who evaluated her also determined that she was at a continued risk for harming herself, noting that in order to help Tiffany cope with her mental health illnesses it was important for her to be given "out of cell time" and be allowed to engage in activities like socializing and writing. During this time Tiffany was specifically provided with therapy and group activity in order to address the mental illnesses with which she had been diagnosed. At the same time, Tiffany was repeatedly placed in solitary confinement when she tried to hurt herself, which directly undermined the limited mental health care that she had been receiving.

**ANSWER:**

Defendant, Dr. He Yuan, admits mental health professionals diagnosed Tiffany Rusher with mental illnesses; admits Tiffany Rusher was at a continued risk for harming herself; and admits Tiffany Rusher was provided with appropriate services to address the mental health concerns. Defendant has insufficient knowledge to admit or deny whether Tiffany Rusher was repeatedly placed in solitary confinement. Defendant denies the remaining allegations contained in ¶20 of the complaint.

21.    In September 2015, after another suicide attempt, Logan medical staff ordered that Tiffany be placed on "constant watch," in a "crisis cell" within Logan's Medical Housing Unit ("MHU").   The MHU crisis cell where Tiffany was placed is a solitary-confinement cell that had been stripped bare except for a metal prison toilet and a raised cement slab for a bed.   Before being placed in the crisis cell, Tiffany was stripped naked and all her personal property was taken away.   This included anything, like books or magazines, that she could have used to occupy her time.   The only article of clothing she was permitted was an anti-suicide "smock"—a single piece of thick, woven nylon that cannot be folded or fashioned into a noose, with holes for the head and arms.   A guard was stationed outside of Tiffany's cell, monitoring her constantly, 24 hours a day.   And on information and belief, to make monitoring more effective the lights in Tiffany's cell were never turned off.

**<u>ANSWER</u>:**

Defendant, Dr. He Yuan, admits in September 2015, Tiffany Rusher was placed on constant watch in a crisis cell in the Medical Housing Unit at Logan Correctional Center.   Defendant denies the crisis cell is solitary confinement.    Defendant admits the crisis cell contains a metal prison toilet and a raised cement slab for a bed; admits Tiffany Rusher was placed in a smock, which is a single piece of thick, woven nylon that cannot be folded or fashioned into a noose, with holes for the head and arms; admits Tiffany Rusher had personal property removed from her person to attempt to prevent her from self-harming; and admits security was stationed outside of her cell to monitor her constantly.   Defendant has insufficient knowledge to admit or deny the remaining allegations contained in ¶ 21 of the complaint.

22.    This type of severe isolation is referred to as "constant" watch. It is an accepted tool for mental health treatment, but it is meant for short periods of confinement only—typically for a few hours—so that a person in a mental health crisis

can be evaluated, a treatment plan can be developed, and the person can thereafter be hospitalized or returned to some form of residential or outpatient care.  In the most extreme circumstances it is acceptable to keep a person in "crisis" confinement for a few days, at most.  Such extended confinement typically occurs where the person's psychotropic medication regimen has been altered significantly and caregivers need to assess the results.

**ANSWER:**

Defendant, Dr. He Yuan, admits constant watch over a suicidal patient is an accepted tool for mental health treatment and such treatment is necessary for caregivers to assess the patient.  Defendant denies the remaining allegations contained in ¶22 of the complaint.

23.    Under all accepted medical standards, however, longer periods of crisis confinement are strictly forbidden, because it is universally recognized that isolation and solitary confinement for any significant period of time is likely to make a person suffering from mental illness even worse, creating a substantial and increased risk of harm to the patient.  For example, the National Commission on Correctional Health Care Standards for Mental Health Services in Correctional Facilities, standard MH-E-07, states: "Inmates who are seriously mentally ill should not be confined under conditions of extreme isolation."  The American Bar Association Treatment of Prisoner Standards, 23:6-11, similarly provides: "Prisoners diagnosed with serious mental illness should not be housed in settings that exacerbate their mental illness or suicide risk, particularly in settings involving sensory deprivation or isolation."  This is to say nothing of the conditions of the bare crisis cell where Tiffany was kept, where she was not only kept alone, but was deprived of anything that she could have used to pass the time.  Such stimulus deprivation compounds the effects of solitary confinement.

**ANSWER:**

Defendant, Dr. He Yuan, admits plaintiff has quoted portions of the National Commission on Correctional Health Care Standards for Mental Health Services in Correctional Facilities and the American Bar Association Treatment of Prisoner Standards, *albeit*, out of context. Defendant admits Tiffany Rusher was placed in a crisis cell from time-to-time for her own protection. Defendant denies the remaining allegations contained in ¶23 of the complaint.

24.     Shortly after placing Tiffany in a crisis cell, Logan medical staff examined her and confirmed that she suffered from an acute mental health crisis and was at severe risk of self-harm. They also identified her as one of only a few dozen patients within the entire IDOC whose mental illnesses were so acute and dangerous that they required full inpatient level mental healthcare.

**ANSWER:**

Defendant, Dr. He Yuan, admits Tiffany Rusher was placed in a crisis cell from time-to-time for her own protection. Defendant admits the condition of Tiffany Rusher was, on occasion, acute and dangerous and required constant monitoring. Defendant has insufficient knowledge to admit or deny the remaining allegations contained in ¶24 of the complaint.

25.     There are no facilities or services within the IDOC for providing such care. But that should not have prevented Tiffany from receiving the care she needed. The defendants were capable of ensuring that Tiffany received appropriate mental healthcare outside the IDOC. Nevertheless, they failed to do so:

(a)     State law empowers the director of the IDOC to have prisoners needing intensive psychiatric care to be transferred from the IDOC to the custody of the Illinois Department of Human Services. *See* 730 ILCS 5/3-8-5. The Department of Human Services operates multiple mental health centers for treating such people. This includes the Andrew McFarland Mental Health Center ("McFarland") in Springfield, Illinois, where Tiffany was eventually transferred after her sentence of incarceration was completed. Defendants Baldwin, Sim, and (on information and belief) Rauner were personally aware that there were a handful of people confined to the IDOC, which included Tiffany, who could not receive appropriate psychiatric care within the IDOC and therefore should have

been transferred to the custody of the Department of Human Services.  Attorneys representing Defendant Baldwin and the IDOC admitted as much during a court hearing in *Rasho v. Baldwin*, 07-cv-1298 (C.D. Ill. (Mihm, J.)), an ongoing injunctive class action against Defendant Baldwin concerning the care of mentally ill people confined to the IDOC.  Despite this knowledge, however, neither Defendant Baldwin or Defendant Sim tried to have Tiffany transferred to a Department of Human Services facility before the completion of her sentence, and Defendant Rauner did not order Baldwin or Sim to effect such a transfer.  As a result, Tiffany unnecessarily endured months of solitary confinement in the Logan crisis cell.

(b)     Defendants Yuan and Richardson provided care for Tiffany.  They knew about her acute mental health condition, and knew that she needed inpatient psychiatric care that was unavailable within the IDOC.  They could have sought Tiffany's referral to an inpatient psychiatric facility through the "collegial review" process operated by Wexford, their employer.  They did not do so, however.

(c)     Defendant Wexford was capable of having Tiffany transferred out of Logan for inpatient mental health treatment.  Wexford was and is under contract with the State of Illinois to provide both medical and mental health care to all people confined to the IDOC.  This included the provision of "[c]omprehensive and specialized mental health services" for prisoners, including off-site and hospitalization services as necessary to treat the medical and mental health needs of people confined to IDOC.  (Indeed, pursuant to this contract Wexford arranges every day for prisoners suffering from injuries and "physical" illnesses, like cancer, to be transported outside of IDOC prisons to medical facilities where they can receive the medical care they need.)  Wexford also employed doctors and mental health professionals to assess the mental condition of people confined to IDOC.  Its employees and agents examined Tiffany and concluded that she was suffering from acute mental distress that required hospitalization.  By policy and practice, however, Wexford had never developed such a hospitalization capacity within the IDOC's facilities, so this meant that Tiffany required off-site hospitalization.  On information and belief, however, Wexford also had a policy and practice of ignoring its obligation to provide such off-site hospitalization for seriously mentally ill prisoners, and did not seek to transfer any prisoners—including Tiffany—for the off-site mental healthcare that they needed.  As a result of this policy and practice, Tiffany remained in solitary confinement in a crisis cell, suffering the injuries described herein.

**ANSWER:**

Defendant, Dr. He Yuan, denies Tiffany Rusher was provided inappropriate care as alleged in ¶25 of the complaint.

a.  Defendant, Dr. He Yuan, denies he had the power to transfer Tiffany Rusher to a facility operated by the Illinois Department of Human Services; admit the provisions of 730 ILCS 5/3-8-5; admits the Department of Human Services operates some mental health facilities throughout the State of Illinois, including McFarland Mental Health Center, where Tiffany Rusher was admitted after her term of incarceration from the Illinois Department of Corrections.  Defendant has insufficient knowledge to admit or deny the remaining allegations contained in ¶25(a) of the complaint.

b.  Defendant, Dr. He Yuan, admits he and Brian Richardson provided care to Tiffany Rusher from time to time and knew some aspects of her mental health condition.  Defendant denies the remaining allegations contained in ¶25(b) of the complaint.

c.  Defendant, Dr. He Yuan, admits Wexford contracts with the State of Illinois to provide medical care and mental health care prison inmates and employs some providers and mental health workers to assess the conditions of inmates. Defendant admits on occasion, Wexford providers refer patients to medical specialists outside of prisons. Defendant denies the remaining allegations contained in ¶25(c) of the complaint.

26.   Indeed, instead of trying to secure effective mental healthcare for Tiffany, for all practical purposes the defendants chose a course of conduct which placed Tiffany at an even graver risk of harm.  Instead of providing her with the treatment she desperately needed, defendants chose to keep her in isolation and monitor her condition, carefully documenting her descent into madness.  A staff member would come to Tiffany's cell once a day and ask Tiffany rote questions (such as, "Do you want to harm yourself today?") through the cell door.  Other than this "appointment," Tiffany was interviewed once per week for 30 minutes by a psychiatrist for purposes of adjusting the levels of her various medications.  Otherwise, no effort was made to provide Tiffany with the intensive psychiatric and psychological help that she required.

**ANSWER:**

Defendant, Dr. He Yuan, admits Tiffany Rusher was monitored and her condition was documented.  Defendant admits Tiffany Rusher was contacted by mental health staff and her psychotropic medications were monitored and adjusted when appropriate.  Defendant denies the remaining allegations contained in ¶26 of the complaint.

27.    Eventually, in response to pressure from the *Rasho* class action lawsuit, Tiffany would occasionally be allowed to leave the crisis cell for a 30-minute "group therapy" session, which occurred no more than once per week.  This was really a just a gesture at providing therapy, however, and it did not remotely resemble the intensive care that Tiffany actually needed.  The short sessions amounted to an infrequent and irregular interruption to the days and weeks on end that Tiffany was forced to spend alone in a bare cell, and to make matters worse, when she was allowed to attend the sessions, she was rarely, if ever, allowed to speak.  What is more, prison staff treated the therapy sessions as a privilege rather than as healthcare.  If Tiffany attempted to harm herself, the staff would cancel the sessions as punishment.

**ANSWER:**

Defendant, Dr. He Yuan, admits Tiffany Rusher was provided with treatment.  Defendant denies the remaining allegations contained in ¶27 of the complaint.

28.    Tiffany's placement in the bare, solitary crisis cell had a predictable and devastating impact on her mental condition.  Suffering from anguish and further decompensating, she made multiple new attempts at suicide, and in the crisis cell she cut herself, bit herself, repeatedly banged her head against a wall, and repeatedly swallowed inedible objects.

**ANSWER:**

Defendant, Dr. He Yuan, admits Tiffany Rusher attempted suicide on occasions by asphyxiation and other means.   Defendant denies the remaining allegations contained in ¶28 of the complaint.

29.    It was clear, in short, that the extended isolation in a crisis cell was not curing Tiffany and was instead harming her—something that any mental health professional would have known already.   And it was clear that Tiffany remained in desperate need of inpatient mental health treatment.   This should have caused the defendants to remove Tiffany from solitary confinement and secure actual mental health treatment for her, but they did not do so.   Instead, in response to her attempts at self-harm, they allowed even more restrictions to be placed on her.   For example, after Tiffany attempted to strangle herself by swallowing objects, the toilet paper was removed from her cell.   Thereafter, when Tiffany defecated, she had to ask a correctional officer for pieces of toilet paper.   Tiffany had to allow the correctional officer to watch her wipe herself, and then demonstrate to the correctional officer that she had flushed the paper down the toilet.   A multitude of similarly humiliating and dehumanizing restrictions were placed on Tiffany, including restricting her to soft foods, requiring her to sleep with her hands visible at all times, and even providing a detailed protocol for changing her menstruation sanitary pads so that guards could observe every step of this most intimate of activities.

**ANSWER:**

Defendant, Dr. He Yuan, admits measures were taken to eliminate the opportunities for Tiffany Rusher to attempt suicide, which included personal hygiene circumstances.   Defendant denies the remaining allegations contained in ¶29 of the complaint.

30.     The defendants, in short, knew that allowing Tiffany to be placed in solitary confinement in a crisis cell for any meaningful length of time would be toxic to her mental health and would cause her to suffer both mental anguish and—when she attempted to harm herself as a result of that anguish—intense physical pain.  They also had the ability to secure appropriate treatment for Tiffany's acute and devastating mental condition.  But even though they knew Tiffany would be devastated by solitary confinement, and even though they could have provided her with appropriate care, the defendants allowed Tiffany to remain in solitary confinement anyway.   In effect the defendants chose not to treat Tiffany but instead to incapacitate her for the remainder of her prison sentence, even though doing so amounted to torture.

**ANSWER:**

Defendant, Dr. He Yuan, denies the allegations contained in ¶30 of the complaint.

31.     Finally, in May 2016, Tiffany's term of incarceration for her underlying criminal conviction ended.  However, defendants knew what damage they had inflicted on Tiffany, and knew that she was a danger to herself.  They therefore took steps to have her involuntarily committed to a state psychiatric hospital, where she should have been all along.   Tiffany did not oppose the state's petition, and thus her admission became "voluntary" under state law.  With that, she was transferred directly from the Logan crisis cell to the McFarland mental health hospital operated by the Illinois Department of Human Services.

**ANSWER:**

Defendant, Dr. He Yuan, admits the term of incarceration for Tiffany Rusher ended in May 2016.   Defendant admits Tiffany Rusher was voluntarily admitted to McFarland Mental Health Center, a mental health

facility operated by the Illinois Department of Human Services, after her term of incarceration.  Defendant denies the remaining allegations contained in ¶31 of the complaint.

32.     At McFarland, Tiffany was placed in a group setting and she received the intensive psychological and psychiatric care that she had always needed.  As a result her mental health condition improved, and she was able to function in a group setting. She was not placed in solitary confinement, and was not subject to the psychologically devastating conditions of solitary confinement.  In short, Tiffany received the treatment that the defendants should have provided for her, instead of placing her in solitary confinement for over eight months and causing the injuries and damages described herein.

**ANSWER:**

Defendant, Dr. He Yuan, has insufficient  knowledge to admit or deny the allegations contained in ¶32 of the complaint.

**COUNT I: Eighth Amendment to the United States Constitution**
**Against:** Rauner (individual capacity), Baldwin (individual capacity), Sim (individual capacity), Yuan (individual capacity), Richardson (individual capacity), and Wexford

33.     Each paragraph of this complaint is incorporated as if fully restated here.

**ANSWER:**

Defendant, Dr. He Yuan, repeats his answers to ¶¶1-32 of the complaint as if fully set forth in this Count.

34.     Tiffany suffered from multiple severe mental illnesses that were serious medical conditions and placed Tiffany at serious risk of harm and in need of intense medical treatment.

**ANSWER:**

Defendant, Dr. He Yuan, admits Tiffany Rusher had mental illnesses which required treatment.  Defendant denies the remaining allegations contained in ¶34 of the complaint.

35.     By placing Tiffany repeatedly into solitary confinement, defendants caused or aggravated Tiffany's mental illness.

**ANSWER:**

Defendant, Dr. He Yuan, denies the allegations contained in ¶35 of the complaint.

36.     The defendants knew that Tiffany's serious medical needs could not be treated within Logan, and that the isolation of a crisis cell would exacerbate her condition and cause her further damage.

**ANSWER:**

Defendant, Dr. He Yuan, denies the allegations contained in ¶36 of the complaint.

37.     Despite what they knew, the defendants failed to transfer Tiffany out of Logan to a facility where she could receive care for her serious mental health condition. Instead, they allowed her to remain isolated in solitary confinement.

**ANSWER:**

Defendant, Dr. He Yuan, denies the allegations contained in ¶37 of the complaint.

38.     In so doing, the defendants were deliberately indifferent to Tiffany's serious medical needs.

**ANSWER:**

Defendant, Dr. He Yuan, denies the allegations contained in ¶38 of the complaint.

39.     As a result of the defendants' failure to secure proper treatment for Tiffany and their decision instead that she be incapacitated in a crisis cell, Tiffany suffered physical pain and acute mental anguish.

**ANSWER:**

Defendant, Dr. He Yuan, denies the allegations contained in ¶39 of the complaint.

40.    Defendants' repeated placement of Tiffany in solitary constituted the infliction of cruel and unusual punishment in violation of the Eighth Amendment.

**ANSWER:**

Defendant, Dr. He Yuan, denies the allegations contained in ¶40 of the complaint.

41.    Defendants' deliberate indifference to Tiffany's medical needs violated Tiffany's rights to be free from cruel and unusual punishment under the Eighth Amendment.

**ANSWER:**

Defendant, Dr. He Yuan, denies the allegations contained in ¶41 of the complaint.

42.    As a direct and proximate result of Defendants' actions, Tiffany suffered the mental and physical injuries described herein.

**ANSWER:**

Defendant, Dr. He Yuan, denies the allegations contained in ¶42 of the complaint.

**COUNT II: Americans with Disabilities Act**
**Against:** Rauner (official capacity), the State of Illinois, Baldwin (official capacity), the Illinois Department of Corrections

**ANSWER:**

Count II is not directed at defendant, Dr. He Yuan.  As such, he makes no response to the allegations contained in ¶¶43-57.

**COUNT III: Rehabilitation Act of 1973**
**Against:** Rauner (official capacity), the State of Illinois, Baldwin (official capacity), and the Illinois Department of Corrections

**ANSWER:**

Count III is not directed at defendant, Dr. He Yuan.  As such, he makes no response to the allegations contained in ¶¶58-65.

WHEREFORE, defendant, Dr. He Yuan, respectfully requests judgment be entered in his favor and against plaintiff.

**DEFENDANTS DEMAND A TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, defendants, Dr. He Yuan hereby demands a trial by jury in this action of all issues so triable.

**AFFIRMATIVE DEFENSES**

1.      At all times relevant herein, defendant, Dr. He Yuan, acted in good faith in the performance of his official duties and without violating the clearly established statutory or constitutional rights of Tiffany Rusher of which a reasonable person would have known. Defendant is, therefore, protected from suit by the doctrine of qualified immunity.[1]

2.      At all times relevant herein, defendant, Dr. He Yuan, acted in good faith and in conformity with existing precedent.  He is, therefore, entitled to good faith immunity from damages.  *Wyatt v. Cole*, 504 U.S. 158, 169 (1992).

3.      To the extent plaintiff's decedent is a member of the class action in *Rasho v. Baldwin* (USDC C.D. Ill. 07-1298) and defendant has complied with the Court's orders, this action is precluded.

---

[1]Defendant acknowledges in *Estate of Clark v. Walker*, 865 F.3d 544, 550-51 (7th Cir. 2017), the Seventh Circuit rejected qualified immunity for contractual government employees.  Defendant asserts this defense to preserve it for appeal.

4.      To the extent plaintiff's claims for relief accrued more than two years prior to initiation of this case, they are barred by the applicable statute of limitations.

**DEFENDANT DEMANDS A TRIAL BY JURY AS TO HIS AFFIRMATIVE DEFENSES**

WHEREFORE, for the above reasons, defendant, Dr. He Yuan, respectfully requests this honorable Court grant judgment in his favor and against plaintiff and award all appropriate remedies to defendant, including cost of suit.

Respectfully submitted,

DR. HE YUAN,
        Defendant,

CASSIDAY SCHADE LLP,

        Attorneys for Defendant

By:  /s/ Karen L. McNaught

Karen L. McNaught, #6200462
CASSIDAY SCHADE LLP
111 North Sixth Street, 2nd Floor
Springfield, IL 62701
(217) 572-1714
(217) 572-1613 (Fax)
kmcnaught@cassiday.com

## **CERTIFICATE OF SERVICE**

Under penalties as provided by law pursuant to 735 ILCS 5/1-109, I certify I caused to be electronically filed on August 28, 2018, the foregoing Answer and Affirmative Defenses with the Clerk of the Court using the CM/ECF system, which sends a "Notice of E-Filing" to the following:

Alexis G. Chardon
Stephen H. Weil
Weil & Chardon LLC
333 South Wabash Avenue, Suite 2700
Chicago, IL 60604
ali@weilchardon.com
steve@weilchardon.com

Emmanuel Andre
Northside Transformative Law Center
1543 West Morse Avenue, Suite 300
Chicago, IL 60626
eandre@northsidetlc.com

Nicole Rae Schult
Alan Mills
Uptown People's Law Center
4413 North Sheridan
Chicago, IL 60640
nicole@uplcchicago.org
alan@uplcchicago.org

Jeremy C. Tyrrell
Assistant Attorney General
500 S. Second Street
Springfield, IL  62701
jtyrrell@atg.state.il.us

/s Karen L. McNaught

Karen L. McNaught, #6200462
CASSIDAY SCHADE LLP
111 North Sixth Street, 2nd Floor
Springfield, IL 62701
(217) 572-1714
kmcnaught@cassiday.com

8928297 KMCNAUGH;KMCNAUGH