IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| Kelli Andrews, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 18-cv-1101-SEM-TSH |
| Bruce Rauner *et al.*, | ) ) ) |
| Defendants. | ) ) |

**PLAINTIFF'S MOTION FOR ENTRY OF A CONFIDENTIALITY ORDER**

Pursuant to Federal Rule of Civil Procedure 16, by her undersigned attorneys, Plaintiff moves for the entry of a confidentiality order in this case. Plaintiff's Proposed Confidentiality Order ("Proposed CO") is attached hereto as **Exhibit 1**.

## BACKGROUND

Plaintiff brings this motion after the parties were unable to reach an agreement on the terms of the Proposed CO. The Proposed CO is modeled on the model protective order of the Northern District of Illinois. Plaintiff seeks entry of the Proposed CO in order to allow the Defendants to disclose information in response to discovery that may include information of third-party prisoners, who were placed in similar conditions as the decedent in this case, Tiffany Rusher. The Court will recall that Plaintiff first addressed the impact of a confidentiality order in the parties' initial status report (ECF 32), where Plaintiff explained that a confidentiality order would allow the Defendants to produce ESI without making redactions, thus addressing the Defendants' arguments that production of ESI would be unduly burdensome. (*See* ECF 32 at 4.)

Following the initial status conference, Plaintiff's counsel transmitted the Proposed CO to the Defendants. After a meet-and-confer, the Defendants object to the entry of the Proposed CO, on grounds that even if it were entered, multiple laws would still bar the disclosure of the health

1

information of third-party prisoners.  The Defendants' arguments are set out in the parties' correspondence, attached hereto as **Exhibit 2**. (*See* Ex. 2 at 6-8.)  Plaintiff responded to these arguments, explaining why each of them is incorrect.  (*See id.* at 4-5.)  The Defendants did not offer counter-arguments in reply, but nevertheless maintained their objections.  (*See id.* at 2-3.)

## ARGUMENT

Each of the arguments that Defendants make against entry of the Proposed CO either misunderstands the law or the facts at issue in this case.  None of the Defendants' arguments actually counsels against entry of the Proposed CO, which will safeguard the privacy interests of third-party detainees by prohibiting the use of disclosed information for any purpose other than this litigation.  Herein, Plaintiff briefly addresses each of the Defendants' arguments:

### 1. Health Insurance Portability and Accountability Act of 1996 (HIPAA).

In the parties Rule 26(f) Report (ECF 32), the Defendants took the position that they would be prohibited from producing third-party medical information because of HIPAA's restrictions on the disclosure of third-party medical information.  (*See* ECF 32 at 3.)  But as Plaintiff explained in that same report, HIPAA's enabling regulations create an exception to these restrictions if the disclosures of healthcare information are made pursuant to discovery that is governed by a protective order that meets certain criteria.  (*See* ECF 32 at 4 (citing 45 C.F.R. § 164.512).) As Plaintiff has explained to the Defendants (*see* Ex. 2 at 10), the Proposed CO meets the criteria set out in Section 164.152.

HIPAA, which is enforced through enabling regulations, has two familiar requirements, which the Defendants claim are the basis for the redactions:

- *Notification*.  Under 45 C.F.R. § 164.510, a covered entity must notify the individual whose health information is to be disclosed and give them an "opportunity to agree to or prohibit or restrict the use or disclosure"

- *Authorization.* Under 45 C.F.R. § 164.508, "a covered entity may not use or disclose protected health information without a[ valid] authorization" from the individual.

The Defendants' position is that, because the other prisoners have not been notified, and because they have not given a valid authorization to disclose, these regulations forbid disclosure of their names.

As Plaintiff has repeatedly pointed out, however, HIPAA's enabling regulations also contain an exception to HIPAA's notification and authorization requirements in the case of subpoenas or discovery that are governed by an appropriate protective order—like the one that governs this case. Specifically, Section 164.512 provides,

> A covered entity may use or disclose protected health information without the written authorization of the individual, as described in § 164.508, or the opportunity for the individual to agree or object as described in § 164.510, in the situations covered by this section, subject to the applicable requirements of this section.

45 C.F.R. § 164.512. Among the "situations" covered by Section 164.512 is disclosure of protected health information "[i]n response to a subpoena, discovery request, or other lawful process" § 164.512(e)(1)(ii). In such a situation, the covered entity may disclose protected information if it receives assurance *either* that the person in question has "been given notice of the request," "*or*" that the requesting party has secured "a qualified protective order." §§ 164.512(e)(1)(ii)(A) and (B). In turn, a "qualified protective order" is one that:

> (A) Prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; and
>
> (B) Requires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.

45 C.F.R. §§ 164.512(e)(1)(v)(A) and (B).

The Proposed CO satisfies these criteria:

3

- the Proposed CO defines "Confidential Information" to include "medical or mental health information" (Ex. 1 ¶ 2 (d));
- the Proposed CO provides that Confidential Information "shall not be used or disclosed . . . for any purpose whatsoever other than this litigation" (*Id.* ¶ 5 (a)); and
- the Proposed CO requires destruction or return of Confidential Information upon conclusion of the litigation. (*Id.* ¶¶ 14 (b) and (c).)

In short, the Proposed CO is a "qualified protective order" under Section 164.512(e)(1)(v). And as such, Section 164.512 provides that HIPAA's notice and waiver requirements—the basis for the Defendants' objection—do not apply. *See Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 936 n.4 (7th Cir. 2004) (explaining that "HIPPA does not require notice . . . where there is a protective order in place, 45 C.F.R. § 164.512(e)(1)(ii)(B).").

In short, with the entry of the Proposed CO, HIPAA will not prohibit the disclosure of other inmates' information. Instead, the confidentiality of that information will be safeguarded by the Proposed CO, which provides the information may be used only for this case, and requires its destruction after the conclusion of the case.

2. **The Illinois Mental Health and Developmental Disabilities Act ("IMHDA").**

After Plaintiff explained the operation of Section 164.512, the Defendants adopted a fallback position: they now argue that HIPAA does not prohibit states from adopting more stringent regulations of healthcare information, and that the Illinois Mental Health and Disabilities Act, 740 ILCS 110/1 *et seq*. ("IMHDA") contains such stringent provisions that would not permit disclosure under the Proposed CO. (*See* Ex. 2 at 7.)

The Defendants are correct that HIPAA does not pre-empt states from enacting more stringent health information laws—and Plaintiff assumes *arguendo* that IMHDA's regulations are indeed more stringent than HIPAA's and would prohibit disclosure under the Proposed CO. That is irrelevant, however. As Plaintiff explained to the Defendants, this case involves

primarily federal claims, brought in federal court. As such, Federal Rule of Evidence 501 dictates that state-law privileges such as the IMHDA do not govern—only federal privileges do. Indeed courts in this circuit have repeatedly held that the IMHDA in particular does not control discovery in federal cases. *See Northwestern Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 925 (7th Cir. 2004) ("Illinois is free to enforce its more stringent medical-records privilege (there is no comparable federal privilege) in suits in state court to enforce state law and, by virtue of an express provision in Fed. R. Evid. 501, in suits in federal court (mainly diversity suits) as well in which state law supplies the rule of decision. But the Illinois privilege does not govern in federal-question suits . . . ."); *Ligas v. Maram*, No. 05-cv-4331, 2007 WL 2316940, at *6 (N.D. Ill. Aug. 10, 2007) ("The Court believes that the [IMHDA] does not apply to the present situation. Federal Rule of Evidence 501 and *Northwestern* govern this situation, and *Northwestern* clearly states that, in a federal question suit such as this one, state privacy and privilege laws do not apply, regardless of whether the state law might be more restrictive than the applicable federal rule."); *Williams v. Blagojevich*, No. 05-cv-4673, 2008 WL 68680, at *2 (N.D. Ill. Jan. 2, 2008) (citing *Northwestern* and *Ligas* to hold that the "[c]onsent requirements of the [IMHDA] are inapplicable to discovery in this case which is based on federal question jurisdiction."). The IMHDA is not a bar to disclosure in this case.

      **3. The psychotherapist-patient privilege.**

Next the Defendants argue that the psychotherapist-patient privilege would bar discovery in this case. (Ex. 2 at 7.) Unlike the IMHDA, the psychotherapist-patient privilege is indeed a recognized federal privilege and does govern federal-question cases, like this one.

The Defendants fail to appreciate, however, that the privilege has a very specific application. The privilege "protect[s] confidential communications between a psychotherapist

and her patient" made "in the course of diagnosis or treatment." *Jaffee v. Redmond*, 518 U.S. 1, 9 (1996). The privilege thus is narrowly drawn; as one court observed, "[i]n its discussion of the contours of the psychotherapist-patient privilege, [*Jaffe*] only contemplated information gleaned during actual psychotherapy sessions conducted, obviously, by a licensed therapist." *United States v. Ghane*, 673 F.3d 771, 782 (8th Cir. 2012).

As such, the privilege does not apply to the bulk of records concerning inmates with mental health issues. It does not apply, for example, to prison intake assessments, *see United States v. Loughner*, 782 F. Supp. 2d 829, 832 (D. Ariz. 2011), nor does it apply to any other "psychological reports [that are] prepared for a court or prison officials to review, read, and use," since there is no expectation of privacy over such information. *United States v. Deleon*, 323 F. Supp. 3d 1273, 1285 n.6 (D.N.M. 2018).

Plaintiff does not intend to request information from any confidential psychotherapy sessions provided to other inmates. Nor does Plaintiff anticipate that her requests will encompass such information. In the unlikely event that they do, the application of the privilege can be addressed at that time. For now, however, the existence of the privilege is not a reason to deny entry of the Proposed CO.

    **4. Eighth and Fourteenth Amendments.**

The Defendants also claim that some cases have stated that there is a possibility for inmates to have a constitutional right under the Eighth or Fourteenth Amendments to medical privacy. (*See* Ex. 2 at 7.) The cases cited by the Defendants, however, all involve situations in which inmates' private medical information is disclosed by prison employees for no legitimate governmental purpose. In this case, any disclosures of medical information by the Defendants would be made to officers of a federal court (*i.e.*, Plaintiff's counsel) pursuant to discovery

6

mandated by that court (*i.e.*, discovery provided for by the Federal Rules of Civil Procedure). Complying with obligations imposed by a federal court is a legitimate governmental imperative. Thus, the cases Defendants cite are inapplicable here.

  5. **Relevance.**

Finally, the Defendants argue that any information concerning other inmates would not be relevant to this case. (Ex. 2 at 7.) As an initial matter, it is hard to understand how this position counsels against entry of the Proposed CO. As Plaintiff pointed out in the parties Rule 26(f) report, in the first instance the Proposed CO would address the Defendants' objection that production of ESI would be unduly burdensome, because they would be forced to make awkward redactions of third-party information. (*See* ECF 32 at 4.) Even if third-party information were irrelevant to the case, entry of the Proposed CO would be justified on those grounds alone, since it allows the Defendants to produce ESI—which, as Plaintiff explained, is important for allowing her to sort and filter administrative data in order to develop a better understanding of Ms. Rusher's treatment in the IDOC. (*See id.*)

In all events, though, information about third-party prisoners is relevant to this case. Plaintiff has alleged *Monell* policy-and-practice claims against Defendant Wexford (*see* ECF 1 ¶¶ 15, 25), for which the treatment of other prisoners in addition to Ms. Rusher is highly relevant. Plaintiff alleges similar broad-based discrimination against mentally disabled prisoners by the IDOC defendants (*see id.* ¶ 25), and evidence about how other prisoners were treated is relevant to those claims as well. Additionally, the identities of other prisoners who were housed in conditions similar to Ms. Rusher's is relevant for the simple reason that Plaintiff will seek to identify witnesses, not drawing their paychecks from the Defendants, who can testify about the

7

conditions they experienced and how the Defendants treated Ms. Rusher. That is particularly important here, because Ms. Rusher is dead and cannot offer that testimony herself.

On the other hand, the privacy of these prisoners is safeguarded by the Court's Proposed CO, which would prohibit any party for using the disclosed information for any purpose outside of this litigation, and which would require the parties to destroy the information once the litigation has concluded. Those provisions provide ample protection of the other prisoners' privacy interests in this case.

## Conclusion

For the reasons set forth herein, the Court should enter the Proposed CO.

Date: November 27, 2018				Respectfully submitted,

						/s/ *Stephen H. Weil*

						Stephen H. Weil – steve@weilchardon.com
						Alexis G. Chardon – ali@weilchardon.com
						Weil & Chardon LLC
						333 S. Wabash Ave., Suite 2700
						Chicago, IL 60604
						312-585-7404

						Alan Mills – alan@uplcchicago.org
						Elizabeth Mazur – liz@ uplcchicago.org
						Nicole Schult – Nicole@uplcchicago.org
						Uptown People's Law Center
						4413 North Sheridan Rd.
						Chicago, Illinois 60640
						Tel: (773) 769-1411
						Fax: (773) 769-2224

						*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

    I hereby certify that on November 27, 2018, a true and correct copy of the foregoing was filed electronically. Notice of this filing was sent by operation of the Court's ECF electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

    /s/ Stephen H. Weil