E-FILED
Monday, 13 May, 2019  05:51:14 PM
Clerk, U.S. District Court, ILCD

# Exhibit 8

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

KELLI ANDREWS, as Administrator of the )
Estate of Tiffany Ann Rusher, deceased,  )
                                          )
            Plaintiff,                )
                                          )        No.    18-cv-1101-SEM-TSH
    v.                                    )
                                          )
BRUCE RAUNER et al.,                      )
                                          )
            Defendants.               )

### DEFENDANT BALDWIN'S RESPONSE TO
### PLAINTIFF'S DECEMBER 6, 2018 INTERROGATORIES

Defendant, John Baldwin, in his individual capacity, through his attorney, Kwame Raoul,

Attorney General for the State of Illinois, pursuant to Federal Rule of Civil Procedure 33, responds

to Plaintiff's December 6, 2018 interrogatories subject to objections served separately on February

25, 2019, as follows:

#### Interrogatories

1.     State the name, address and phone number of every person who participated in

answering these interrogatories.

**RESPONSE: Defendant refers Plaintiff to Defendants' Combined Objections to
Plaintiff's December 6, 2018 Interrogatories. Subject to and without waiving said
objections, I answered these interrogatories with the assistance of counsel.**

2.     Identify by name and address all persons who have knowledge of facts that relate

to any of the claims or defenses in this action, including but not limited to all persons who are not

listed in Defendant's Rule 26 Initial Disclosures. If you answer this Interrogatory by incorporating

Documents, please list under oath the identities of any and all additional persons not listed in these

Documents, or, if there are no such additional Persons with knowledge responsive to the

Interrogatory, please so state under oath.

**RESPONSE: Defendant refers Plaintiff to Defendants' Combined Objections to Plaintiff's December 6, 2018 Interrogatories. Subject to and without waiving said objections, Plaintiff is referred to Defendants' Initial Disclosures, any supplements thereto, documents Bates stamped 000001–004733, any documents produced by the parties during discovery, and any documents produced pursuant to subpoena.**

3.      For each Person with knowledge responsive to the previous Interrogatory, please describe with particularity any categories of facts known by each such Person relating to the claims or defenses in this action, including all categories of facts about which the Person may be competent to testify at trial. If this Interrogatory is answered by incorporating Documents, please state under oath whether there are any categories of facts known to any witness relating to the claims or defenses in this action which are not reflected in the Documents upon which you rely; in the event you fail to do so, Plaintiffs will assume the substance of the witnesses' testimony is strictly limited to what is contained in such Documents.

**RESPONSE: Defendant refers Plaintiff to Defendants' Combined Objections to Plaintiff's December 6, 2018 Interrogatories. Subject to and without waiving said objections, Plaintiff is referred to Defendants' Initial Disclosures, any supplements thereto, documents Bates stamped 000001–004733, any documents produced by the parties during discovery, and any documents produced pursuant to subpoena.**

4.      Identify by name and last known address all correctional staff and medical/mental health workers who interacted with Tiffany Rusher from September 1, 2015 through May 31, 2016. For each person identified, provide their job title and the dates and shifts worked. If you are unable to identify the names and last known addresses of each responsive person, then so state under oath.

**RESPONSE: Defendant refers Plaintiff to Defendants' Combined Objections to Plaintiff's December 6, 2018 Interrogatories. Subject to and without waiving said objections, Plaintiff is referred to Plaintiff's combined medical and mental health records, Bates stamped 000017-04297, Defendants' Initial Disclosures, any supplements thereto, documents Bates stamped 000001-004733, any documents produced by the parties during discovery, and any documents produced pursuant to subpoena.**

5.      Identify by name and last known address of all correctional staff and medical/mental health providers who had any responsibility for monitoring Tiffany Rusher from September 1, 2015 through May 31, 2016. For each person identified, provide their job title and the dates and shifts worked. If you are unable to identify the names and last known addresses of each responsive person, then so state under oath.

> **RESPONSE: Defendant refers Plaintiff to Defendants' Combined Objections to Plaintiff's December 6, 2018 Interrogatories. Subject to and without waiving said objections, Plaintiff is referred to Plaintiff's combined medical and mental health records, Bates stamped 000017-04297, Defendants' Initial Disclosures, any supplements thereto, documents Bates stamped 000001-004733, any documents produced by the parties during discovery, and any documents produced pursuant to subpoena.**

6.      Identify by name and last known address all persons responsible for providing mental health care at Logan Correctional Center at any time from September 1, 2015 through May 31, 2016. If you are unable to identify the names and last known addresses of each responsive person, then so state under oath.

> **RESPONSE: Defendant refers Plaintiff to Defendants' Combined Objections to Plaintiff's December 6, 2018 Interrogatories. Subject to and without waiving said objections, Plaintiff is referred to Plaintiff's combined medical and mental health records, Bates stamped 000017-04297, Defendants' Initial Disclosures, any supplements thereto, documents Bates stamped 000001-004733, any documents produced by the parties during discovery, and any documents produced pursuant to subpoena.**

7.      For any Document requested in Plaintiff's discovery requests that has been lost, discarded, destroyed, altered, or defaced, please identify each such Document as completely as possible and state the approximate date it was lost, discarded, destroyed, altered, or defaced; the circumstances and manner in which it was lost, discarded, destroyed, altered, or defaced, including the identities of all Persons involved; the reasons for disposing of the Document; the identity of

any persons with knowledge of its content; and the identity of the last person known to have seen it.

> **RESPONSE: Defendant refers Plaintiff to Defendants' Combined Objections to Plaintiff's December 6, 2018 Interrogatories. Subject to and without waiving said objections, I am currently unaware of any relevant documents which have been lost, discarded, destroyed, altered, or defaced.**

8.    Please state whether any Defendant or the employee or agent of any Defendant acted inconsistently with any of the policies and practices of the Logan Correctional Center, the Illinois Department of Corrections, or Wexford at any time during the events described in the complaint. If the answer is in the affirmative, please identify: (a) particular policy or practice that was violated; (b) the individual(s) who violated each such policy or practice; and (c) any discipline that resulted from that violation.

> **RESPONSE: Defendant refers Plaintiff to Defendants' Combined Objections to Plaintiff's December 6, 2018 Interrogatories. Subject to and without waiving said objections, I am not currently aware of any individual acting inconsistently with any policies, practices, or customs at Logan Correctional Center as it concerns the medical or mental health treatment of Tiffany Rusher during her incarceration at Logan Correctional Center.**

9.    For any Affirmative Defenses pled in this matter, please describe the entire factual basis or bases supporting those defenses. The information sought by this Interrogatory is not a mere recitation of the statutory sections invoked. Plaintiff requests that you provide a detailed description of every fact and legal basis on which the defense is asserted so that Plaintiff may have the opportunity to investigate by way of additional discovery requests. For instance, if there is any physical, documentary, or testimonial evidence which supports any such defense, please identify it specifically.

> **RESPONSE: Defendant refers Plaintiff to Defendants' Combined Objections to Plaintiff's December 6, 2018 Interrogatories. Subject to and without waiving said objections:**

4

**Defendant is entitled to qualified immunity because Defendant acted in good faith in the performance of his official duties without violating any of Tiffany Rusher's clearly established rights of which a reasonable person would have been aware.**

**Plaintiff filed this lawsuit more than two years after the events contained therein, which purportedly gave rise to the claims, allegedly occurred. Therefore, any allegations or claims concerning events or actions occurring more than two years prior to Plaintiff filing this lawsuit are barred by the applicable two-year statute of limitations.**

**To the extent Tiffany Rusher, a class member in *Rasho v. Baldwin*, 07-1298 (C.D. Ill.), was provided mental health treatment in accordance with the terms agreed to or court orders in *Rasho v. Baldwin*, 07-1298 (C.D. Ill.), Plaintiff is barred from challenging the terms of the court orders, the terms of the agreements between the parties, or the constitutionality of that treatment she received pursuant to those orders and agreements.**

**Plaintiff filed a lawsuit titled *Andrews v. Sangamon County*, No. 18-cv-01100-SEM-TSH (C.D. Ill.) on March 12, 2018. Plaintiff alleges parties in *Andrews* caused Tiffany Rusher harm and injuries. Plaintiff is barred from recovering for harms and injuries in this lawsuit to the extent the injuries for which Plaintiff seeks to recover in *Andrews* are the same or overlap with the injuries for which Plaintiff seeks to recover in this lawsuit. Plaintiff is not entitled to recover twice for the same harms or injuries. *Duran v. Town of Cicero, Ill.*, 653 F.3d 632, 642 (7th Cir. 2011).**

10.     State the date upon which You first became aware that Tiffany Rusher was in need

of mental health care.

> **RESPONSE: Defendant refers Plaintiff to Defendants' Combined Objections to Plaintiff's December 6, 2018 Interrogatories. Subject to and without waiving said objections, prior to this lawsuit, I do not recall being made aware of Tiffany Rusher's need for mental health care.**

11.     State each action You took to provide Tiffany Rusher with an appropriate level of

mental health care, and the date upon which You took each such action.

> **RESPONSE: Defendant refers Plaintiff to Defendants' Combined Objections to Plaintiff's December 6, 2018 Interrogatories. Subject to and without waiving said objections, prior to this lawsuit, I do not recall being made aware of any of Tiffany Rusher's specific mental health treatment needs or that she was not receiving the appropriate level of mental health care. I was at no time personally involved in providing specific courses of mental health treatment to Tiffany Rusher. As Acting Director of the Illinois Department of Corrections, it is my understanding that Ms. Rusher had access to mental health care while she was incarcerated in the Illinois**

**Department of Corrections. I relied upon the medical and mental health professionals at Logan Correctional Center to provide appropriate mental health care to Ms. Rusher while she was incarcerated at Logan Correctional Center. I also relied upon the staff in the Office of Mental Health Psychiatric Services to ensure offenders in the Illinois Department of Corrections had access to and received appropriate mental health care.**

12.     State each action You took to ensure that Tiffany Rusher was receiving an appropriate level of mental health care from others, the other person or persons who were to provide such care, and the date upon which You took each such action.

**RESPONSE: Defendant refers Plaintiff to Defendants' Combined Objections to Plaintiff's December 6, 2018 Interrogatories. Subject to and without waiving said objections, prior to this lawsuit, I do not recall being made aware of any of Tiffany Rusher's specific mental health treatment needs or that she was not receiving the appropriate level of mental health care. I was at no time personally involved in providing specific courses of mental health treatment to Tiffany Rusher. As Acting Director of the Illinois Department of Corrections, it is my understanding that Ms. Rusher had access to mental health care while she was incarcerated in the Illinois Department of Corrections. I relied upon the medical and mental health professionals at Logan Correctional Center to provide appropriate mental health care to Ms. Rusher while she was incarcerated at Logan Correctional Center. I also relied upon the staff in the Office of Mental Health Psychiatric Services to ensure offenders in the Illinois Department of Corrections has access to and received appropriate mental health care.**

13.     Describe each action You took to ensure that Tiffany Rusher had access to programs, services, and human contact, and the date upon which You took such action.

**RESPONSE: Defendant refers Plaintiff to Defendants' Combined Objections to Plaintiff's December 6, 2018 Interrogatories. Subject to and without waiving said objections, prior to this lawsuit, I do not recall being made aware that Tiffany Rusher was denied access to any programs, services, or human contact while she was incarcerated at Logan Correctional Center.**

14.     Describe all steps which You took in connection with discharge planning for Tiffany Rusher, including without limitation any steps You in connection with commitment proceedings and commitment to a mental health hospital.

**RESPONSE: Defendant refers Plaintiff to Defendants' Combined Objections to Plaintiff's December 6, 2018 Interrogatories. Subject to and without waiving said**

6

**objections, I do not recall being involved in Tiffany Rusher's release from the Illinois Department of Corrections or any commitment proceedings related to Tiffany Rusher.**

15.     State the date on which you became aware that Illinois had no provision to provide hospital level mental health care to prisoners confined in the Illinois Department of Corrections.

**RESPONSE: Defendant refers Plaintiff to Defendants' Combined Objections to Plaintiff's December 6, 2018 Interrogatories.**

16.     State the date on which you became aware that there were prisoners confined in the Illinois Department of Corrections who were in need of hospital level mental health care.

**RESPONSE: Defendant refers Plaintiff to Defendants' Combined Objections to Plaintiff's December 6, 2018 Interrogatories.**

17.     Regarding the previous interrogatory, describe each action You too to make hospital level mental health care available to prisoners confined in the Illinois Department of Corrections who were in need of such care.

**RESPONSE: Defendant refers Plaintiff to Defendants' Combined Objections to Plaintiff's December 6, 2018 Interrogatories.**

18.     State all reasons (if any) that prisoners confined in the Illinois Department of Corrections who were in need of hospital level of mental health care were not transferred to one of the state mental health hospitals operated by the Illinois Department of Human Services.

**RESPONSE: Defendant refers Plaintiff to Defendants' Combined Objections to Plaintiff's December 6, 2018 Interrogatories.**

19.     To Defendants in their individual capacities only, including Wexford: For punitive damage purposes, please state your net financial worth (in dollars). Additionally, please describe how that net worth has been calculated, including Defendant's yearly salary, and list any and all assets of value in excess of $2,500 (including a description of any ownership of real estate, vehicles, stock, mutual funds, etc.), and all liabilities in excess of $2,500.

**OBJECTION: Defendant refers Plaintiff to Defendants' Combined Objections to Plaintiff's December 6, 2018 Interrogatories.**

Respectfully Submitted,

John Baldwin,

Defendant,

Jeremy C. Tyrrell, #6321649
Assistant Attorney General
500 South Second Street
Springfield, Illinois 62701
Telephone:    (217) 782-4555
Facsimile:    (217) 782-8767
Email:  jtyrrell@atg.state.il.us

Kwame Raoul, Attorney General,
State of Illinois,

Attorney for Defendant,

By: _____
        Jeremy C. Tyrrell
        Assistant Attorney General

8

# Exhibit 9

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

KELLI ANDREWS, as Administrator of the       )
Estate of Tiffany Ann Rusher, deceased,       )
                                              )
                    Plaintiff,                )
                                              )        No.    18-cv-1101-SEM-TSH
        v.                                    )
                                              )
BRUCE RAUNER et al.,                          )
                                              )
                    Defendants.               )

## DEFENDANT RAUNER'S RESPONSE TO
## PLAINTIFF'S DECEMBER 6, 2018 INTERROGATORIES

Defendant, Bruce Rauner, through his attorney, Kwame Raoul, Attorney General for the

State of Illinois, pursuant to Federal Rule of Civil Procedure 33, responds to Plaintiff's December

6, 2018 interrogatories subject to objections served separately on February 25, 2019, as follows:

### Interrogatories

1.      State the name, address and phone number of every person who participated in

answering these interrogatories.

**RESPONSE: Defendant refers Plaintiff to Defendants' Combined Objections to
Plaintiff's December 6, 2018 Interrogatories. Subject to and without waiving said
objections, I answered these interrogatories with the assistance of counsel.**

2.      Identify by name and address all persons who have knowledge of facts that relate

to any of the claims or defenses in this action, including but not limited to all persons who are not

listed in Defendant's Rule 26 Initial Disclosures. If you answer this Interrogatory by incorporating

Documents, please list under oath the identities of any and all additional persons not listed in these

Documents, or, if there are no such additional Persons with knowledge responsive to the

Interrogatory, please so state under oath.

**RESPONSE: Defendant refers Plaintiff to Defendants' Combined Objections to
Plaintiff's December 6, 2018 Interrogatories. Subject to and without waiving said**

**objections, Plaintiff is referred to Defendants' Initial Disclosures, any supplements thereto, documents Bates stamped 000001–004733, any documents produced by the parties during discovery, and any documents produced pursuant to subpoena.**

3.     For each Person with knowledge responsive to the previous Interrogatory, please describe with particularity any categories of facts known by each such Person relating to the claims or defenses in this action, including all categories of facts about which the Person may be competent to testify at trial. If this Interrogatory is answered by incorporating Documents, please state under oath whether there are any categories of facts known to any witness relating to the claims or defenses in this action which are not reflected in the Documents upon which you rely; in the event you fail to do so, Plaintiffs will assume the substance of the witnesses' testimony is strictly limited to what is contained in such Documents.

**RESPONSE: Defendant refers Plaintiff to Defendants' Combined Objections to Plaintiff's December 6, 2018 Interrogatories. Subject to and without waiving said objections, Plaintiff is referred to Defendants' Initial Disclosures, any supplements thereto, documents Bates stamped 000001–004733, any documents produced by the parties during discovery, and any documents produced pursuant to subpoena.**

4.     Identify by name and last known address all correctional staff and medical/mental health workers who interacted with Tiffany Rusher from September 1, 2015 through May 31, 2016. For each person identified, provide their job title and the dates and shifts worked. If you are unable to identify the names and last known addresses of each responsive person, then so state under oath.

**RESPONSE: Defendant refers Plaintiff to Defendants' Combined Objections to Plaintiff's December 6, 2018 Interrogatories. Subject to and without waiving said objections, Plaintiff is referred to Plaintiff's combined medical and mental health records, Bates stamped 000017-04297, Defendants' Initial Disclosures, any supplements thereto, documents Bates stamped 000001-004733, any documents produced by the parties during discovery, and any documents produced pursuant to subpoena.**

5.     Identify by name and last known address of all correctional staff and medical/mental health providers who had any responsibility for monitoring Tiffany Rusher from

2

September 1, 2015 through May 31, 2016. For each person identified, provide their job title and the dates and shifts worked. If you are unable to identify the names and last known addresses of each responsive person, then so state under oath.

> **RESPONSE: Defendant refers Plaintiff to Defendants' Combined Objections to Plaintiff's December 6, 2018 Interrogatories. Subject to and without waiving said objections, Plaintiff is referred to Plaintiff's combined medical and mental health records, Bates stamped 000017-04297, Defendants' Initial Disclosures, any supplements thereto, documents Bates stamped 000001-004733, any documents produced by the parties during discovery, and any documents produced pursuant to subpoena..**

6.    Identify by name and last known address all persons responsible for providing mental health care at Logan Correctional Center at any time from September 1, 2015 through May 31, 2016. If you are unable to identify the names and last known addresses of each responsive person, then so state under oath.

> **RESPONSE: Defendant refers Plaintiff to Defendants' Combined Objections to Plaintiff's December 6, 2018 Interrogatories. Subject to and without waiving said objections, Plaintiff is referred to Plaintiff's combined medical and mental health records, Bates stamped 000017-04297, Defendants' Initial Disclosures, any supplements thereto, documents Bates stamped 000001-004733, any documents produced by the parties during discovery, and any documents produced pursuant to subpoena.**

7.    For any Document requested in Plaintiff's discovery requests that has been lost, discarded, destroyed, altered, or defaced, please identify each such Document as completely as possible and state the approximate date it was lost, discarded, destroyed, altered, or defaced; the circumstances and manner in which it was lost, discarded, destroyed, altered, or defaced, including the identities of all Persons involved; the reasons for disposing of the Document; the identity of any persons with knowledge of its content; and the identity of the last person known to have seen it.

> **RESPONSE: Defendant refers Plaintiff to Defendants' Combined Objections to Plaintiff's December 6, 2018 Interrogatories. Subject to and without waiving said**

**objections, I am currently unaware of any relevant documents which have been lost, discarded, destroyed, altered, or defaced.**

8.     Please state whether any Defendant or the employee or agent of any Defendant acted inconsistently with any of the policies and practices of the Logan Correctional Center, the Illinois Department of Corrections, or Wexford at any time during the events described in the complaint. If the answer is in the affirmative, please identify: (a) particular policy or practice that was violated; (b) the individual(s) who violated each such policy or practice; and (c) any discipline that resulted from that violation.

> **RESPONSE: Defendant refers Plaintiff to Defendants' Combined Objections to Plaintiff's December 6, 2018 Interrogatories. Subject to and without waiving said objections, I am not currently aware of any individual acting inconsistently with any policies, practices, or customs at Logan Correctional Center as it concerns the medical or mental health treatment of Tiffany Rusher during her incarceration at Logan Correctional Center.**

9.     For any Affirmative Defenses pled in this matter, please describe the entire factual basis or bases supporting those defenses. The information sought by this Interrogatory is not a mere recitation of the statutory sections invoked. Plaintiff requests that you provide a detailed description of every fact and legal basis on which the defense is asserted so that Plaintiff may have the opportunity to investigate by way of additional discovery requests. For instance, if there is any physical, documentary, or testimonial evidence which supports any such defense, please identify it specifically.

> **RESPONSE: Defendant refers Plaintiff to Defendants' Combined Objections to Plaintiff's December 6, 2018 Interrogatories. Subject to and without waiving said objections:**
>
> **Defendant is entitled to qualified immunity because Defendant acted in good faith in the performance of his official duties without violating any of Tiffany Rusher's clearly established rights of which a reasonable person would have been aware.**
>
> **Plaintiff filed this lawsuit more than two years after the events contained therein, which purportedly gave rise to the claims, allegedly occurred. Therefore, any**

4

allegations or claims concerning events or actions occurring more than two years prior to Plaintiff filing this lawsuit are barred by the applicable two-year statute of limitations.

To the extent Tiffany Rusher, a class member in *Rasho v. Baldwin*, 07-1298 (C.D. Ill.), was provided mental health treatment in accordance with the terms agreed to or court orders in *Rasho v. Baldwin*, 07-1298 (C.D. Ill.), Plaintiff is barred from challenging the terms of the court orders, the terms of the agreements between the parties, or the constitutionality of that treatment she received pursuant to those orders and agreements.

Plaintiff filed a lawsuit titled *Andrews v. Sangamon County*, No. 18-cv-01100-SEM-TSH (C.D. Ill.) on March 12, 2018. Plaintiff alleges parties in *Andrews* caused Tiffany Rusher harm and injuries. Plaintiff is barred from recovering for harms and injuries in this lawsuit to the extent the injuries for which Plaintiff seeks to recover in *Andrews* are the same or overlap with the injuries for which Plaintiff seeks to recover in this lawsuit. Plaintiff is not entitled to recover twice for the same harms or injuries. *Duran v. Town of Cicero, Ill.*, 653 F.3d 632, 642 (7th Cir. 2011).

10.     State the date upon which You first became aware that Tiffany Rusher was in need

of mental health care.

RESPONSE: Defendant refers Plaintiff to Defendants' Combined Objections to Plaintiff's December 6, 2018 Interrogatories. Subject to and without waiving said objections, prior to this lawsuit, I do not recall being made aware of Tiffany Rusher. Furthermore, I do not recall being made aware of Tiffany Rusher's need for mental health care.

11.     State each action You took to provide Tiffany Rusher with an appropriate level of

mental health care, and the date upon which You took each such action.

RESPONSE: Defendant refers Plaintiff to Defendants' Combined Objections to Plaintiff's December 6, 2018 Interrogatories. Subject to and without waiving said objections, prior to this lawsuit, I do not recall being made aware of Tiffany Rusher. Furthermore, I do not recall being made aware of any of Tiffany Rusher's specific mental health treatment needs or that she was not receiving the appropriate level of mental health care. I was at no time personally involved in providing specific courses of mental health treatment to Tiffany Rusher.

12.     State each action You took to ensure that Tiffany Rusher was receiving an

appropriate level of mental health care from others, the other person or persons who were to

provide such care, and the date upon which You took each such action.

**RESPONSE: Defendant refers Plaintiff to Defendants' Combined Objections to Plaintiff's December 6, 2018 Interrogatories. Subject to and without waiving said objections, prior to this lawsuit, I do not recall being made aware of Tiffany Rusher. Furthermore, I do not recall being made aware of Tiffany Rusher's specific mental health treatment needs or that she was not receiving the appropriate level of mental health care. I was at no time personally involved in providing specific courses of mental health treatment to Tiffany Rusher.**

13.     Describe each action You took to ensure that Tiffany Rusher had access to

programs, services, and human contact, and the date upon which You took such action.

**RESPONSE: Defendant refers Plaintiff to Defendants' Combined Objections to Plaintiff's December 6, 2018 Interrogatories. Subject to and without waiving said objections, prior to this lawsuit, I do not recall being made aware of Tiffany Rusher. Furthermore, I do not recall being made aware that Tiffany Rusher was denied access to any programs, services, or human contact while she was incarcerated at Logan Correctional Center.**

14.     Describe all steps which You took in connection with discharge planning for

Tiffany Rusher, including without limitation any steps You in connection with commitment

proceedings and commitment to a mental health hospital.

**RESPONSE: Defendant refers Plaintiff to Defendants' Combined Objections to Plaintiff's December 6, 2018 Interrogatories. Subject to and without waiving said objections, prior to this lawsuit, I do not recall being made aware of Tiffany Rusher. Furthermore, at no time was I personally involved in Tiffany Rusher's release from the Illinois Department of Corrections or any commitment proceedings related to Tiffany Rusher.**

15.     State the date on which you became aware that Illinois had no provision to provide

hospital level mental health care to prisoners confined in the Illinois Department of Corrections.

**RESPONSE: Defendant refers Plaintiff to Defendants' Combined Objections to Plaintiff's December 6, 2018 Interrogatories.**

16.     State the date on which you became aware that there were prisoners confined in the

Illinois Department of Corrections who were in need of hospital level mental health care.

**RESPONSE: Defendant refers Plaintiff to Defendants' Combined Objections to Plaintiff's December 6, 2018 Interrogatories. Subject to and without waiving said objections, prior to this lawsuit, I do not recall being made aware of Tiffany Rusher.**

Furthermore, I do not recall being made aware of Tiffany Rusher's specific mental health treatment needs or that she was not receiving the appropriate level of mental health care. I was at no time personally involved in providing specific courses of mental health treatment to Tiffany Rusher.

17.     Regarding the previous interrogatory, describe each action You too to make

hospital level mental health care available to prisoners confined in the Illinois Department of

Corrections who were in need of such care.

**RESPONSE: Defendant refers Plaintiff to Defendants' Combined Objections to Plaintiff's December 6, 2018 Interrogatories. Subject to and without waiving said objections, prior to this lawsuit, I do not recall being made aware of Tiffany Rusher. Furthermore, I do not recall being made aware of Tiffany Rusher's specific mental health treatment needs or that she was not receiving the appropriate level of mental health care. I was at no time personally involved in providing specific courses of mental health treatment to Tiffany Rusher.**

18.     State all reasons (if any) that prisoners confined in the Illinois Department of

Corrections who were in need of hospital level of mental health care were not transferred to one

of the state mental health hospitals operated by the Illinois Department of Human Services.

**RESPONSE: Defendant refers Plaintiff to Defendants' Combined Objections to Plaintiff's December 6, 2018 Interrogatories. Subject to and without waiving said objections, prior to this lawsuit, I do not recall being made aware of Tiffany Rusher. Furthermore, I do not recall being made aware of Tiffany Rusher's specific mental health treatment needs or that she was not receiving the appropriate level of mental health care. I was at no time personally involved in providing specific courses of mental health treatment to Tiffany Rusher.**

19.     To Defendants in their individual capacities only, including Wexford: For punitive damage purposes, please state your net financial worth (in dollars). Additionally, please describe how that net worth has been calculated, including Defendant's yearly salary, and list any and all assets of value in excess of $2,500 (including a description of any ownership of real estate, vehicles, stock, mutual funds, etc.), and all liabilities in excess of $2,500.

> **OBJECTION: Defendant refers Plaintiff to Defendants' Combined Objections to Plaintiff's December 6, 2018 Interrogatories.**

Respectfully Submitted,

Bruce Rauner,

Defendant,

Jeremy C. Tyrrell, #6321649
Assistant Attorney General
500 South Second Street
Springfield, Illinois 62701
Telephone:     (217) 782-4555
Facsimile:     (217) 782-8767
Email:  jtyrrell@atg.state.il.us

Kwame Raoul, Attorney General,
State of Illinois,

Attorney for Defendant,

By: _____
        Jeremy C. Tyrrell
        Assistant Attorney General

8

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**

KELLI ANDREWS, as Administrator of the )
Estate of Tiffany Ann Rusher, deceased, )
                                        )
                   Plaintiff,           )
                                        )     No.    18-cv-1101-SEM-TSH
v.                                      )
                                        )
BRUCE RAUNER et al.,                    )
                                        )
                   Defendants.          )

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2019, that the foregoing document *Defendant Rauner's Response to Plaintiff's December 6, 2018 Interrogatories* was served upon the following persons by enclosing same in an envelope addressed as indicated with postage fully prepaid and by depositing same in the U.S. Post Office Mail Box:

Alexis G. Chardon & Stephen H. Weil
Weil & Chardon, LLC
333 South Wabash Avenue, Suite 2700
Chicago, IL 60604

Elizabeth N. Mazur, Nicole Rae Schult, &
Alan Mills
Uptown People's Law Center
4413 North Sheridan
Chicago, IL 60640

Emmanuel Andre
Northside Transformative Law Center
1543 West Morse Avenue
Chicago, IL 60626

Karen McNaught
Cassiday, Schade, LLP
111 North 6th Street, Second Floor
Springfield, IL 62701

Alexander Chosid & Charles Vaughn
Wiedner & McAuliffe, Ltd.
8000 Maryland Avenue
Suite 550
St. Louis, MO 63105

Respectfully Submitted,

Jeremy C. Tyrrell #6321649
Assistant Attorney General

9

# Exhibit 10

# Weil & Chardon
## CIVIL LITIGATION ATTORNEYS

333 S. Wabash Avenue, Suite 2700
Chicago, IL 60604

www.weilchardon.com
Phone: (312) 585 - 7404
Fax: (773) 409 - 2745

**VIA EMAIL**

Jeremy Tyrrell
Assistant Attorney General
500 S. Second St.,
Springfield, IL 62701
jtyrrell@atg.state.il.us

March 5, 2019

**Re: *Andrews v. Rauner et al – discovery enforcement.***

Dear Mr. Tyrrell:

I'm writing regarding your clients' responses to our December 5 & 6, 2018 discovery. After asking for a month's extension to gather responsive documents and information you've produced some policies, Tiffany Rusher's medical file, and a handful of other documents, but you flatly refused to respond to most of our discovery requests. Your clients' objections are discussed in detail below. But first some overarching concerns.

It appears that your clients' view of this case differs radically from ours. We contend that this case squarely puts in issue how the Defendants' policies with respect to mentally ill prisoners impacted Tiffany—indeed, we allege as much, and our complaint has survived your motion to dismiss. This means that discovery related to IDOC's policies and practices are at the core of this case, and are clearly appropriate matters for discovery. Throughout, you also interpose boilerplate objections, which do not comply with the federal rules and as such are considered waived, which require that objections be specific. The delay you sought to respond to this discovery has put us significantly behind, and your clients' objections will put us even further behind as we now need to engage in dispute resolution before obtaining clearly relevant information from your clients.

I request that we meet and confer this Friday and decide whether we need to go before the Court.

## DECEMBER 6 INTERROGATORIES.

Your clients (Baldwin, Pritzker, Rauner, IDOC, and State of Illinois) refused to respond to a single one of our interrogatories. That refusal violated your clients' obligations under the Rules, as I explain herein. (Jeff Sim's responses, which you served separately, are addressed herein.)

1

**Interrogatory 1**.  This interrogatory asked you to identify persons who participated in answering the interrogatories.  You refused to respond based on the attorney-client privilege and the work-product doctrine.  The identities of persons who participated in responding to these interrogatories by furnishing information used in the interrogatory responses are not covered by such privileges, and are obviously relevant as they would disclose persons with knowledge of the various subjects covered by the interrogatories.  Therefore, you are obligated to identify such persons.

> *Sim*:  This response is improper to the extent that it incorporates the other Defendants' objections.

**Interrogatory 2**. This interrogatory asked you to identify persons with knowledge of the facts relating to the claims and defenses in this case.  You assert boilerplate vagueness, overbreadth, scope, etc. Interposing this sort of broad boilerplate objections constitutes a waiver of any more specific objections your clients might (or might not) have raised. This isn't an interrogatory asking about the evidence your clients plan to rely upon or all documents supporting each allegation in a case, so your unexplained citation to *Brinson* and *Whitlow* is inappropriate and does create grounds for refusing to answer.  And your objection based on Pub. L. No. 105-277 § 127 is inapposite because this suit was not brought by a prisoner.

This is interrogatory is a well-established tool for parties to use at the outset of a case help narrow and focus the investigation of the case.  Consider, for example, Standard Interrogatory No. 6 promulgated as a model interrogatory by the U.S. District Court for the District of Maryland:

> Identify all persons who are likely to have personal knowledge of any fact alleged in the complaint or in your answer to the complaint, and state the subject matter of the personal knowledge possessed by each such person.

(*See* https://www.mdd.uscourts.gov/sites/mdd/files/LocalRules.pdf at 135).  It also closely tracks Interrogatory 1 of the Mandatory Initial Discovery Pilot Project underway in the Northern District of Illinois.[1]  It is hardly an improper discovery request.

Your clients were either involved with or employed the persons who incarcerated and provided care for Tiffany, and your clients are therefore in the best position to answer this interrogatory.  Your flat refusal to provide any information at all in response to this standard interrogatory has no basis in the law and is clearly frivolous. If your clients persist with this objection we will be seeking sanctions from the Court.

Notwithstanding the foregoing, we propose to address your objections by limiting this interrogatory to identifying persons who have knowledge of *material* facts that relate to the *material* claims or defenses in this action.

> *Sim*:  Response is unacceptable to the extent it repeats the other Defendants' objections.  To the extent Sim confines his answer to referring to documents, (1)

---

[1]  *See* https://www.ilnd.uscourts.gov/_assets/_documents/MIDP%20Standing%20Order%20Dec0118.pdf.

the response is unacceptable because Sim refers to a swath of thousands of documents; (2) the response is unacceptable because in other interrogatory answers (e.g., Interrogatory 11) Sim indicates indicate that he consulted with others regarding Tiffany's care and can identify those persons with more ease than can Plaintiff by reviewing thousands of documents.

**Interrogatory 3**.  This interrogatory flows from Interrogatory 2, and your refusal to answer it is inappropriate for the same reasons.  We are similarly willing to limit this interrogatory to knowledge of all *material* facts.

*Sim*:  Response is unacceptable for the same reasons as Interrogatory 2.

**Interrogatory 4**.  This interrogatory asks your clients to identify who interacted with Tiffany Rusher during several months that she was on crisis watch.  You assert boilerplate objections of overbreadth, etc. and object specifically that there are an unknowable number of persons who interacted with her.  That objection is unsubstantiated.  We have only asked about the period corresponding to when Tiffany was confined to a crisis watch cell—dramatically cutting back on the persons who could have interacted with her.  You have not shown that it is too much for your clients to identify these persons.

*Sim*:  Response is unacceptable for the same reasons as Interrogatory 2 & 3.

**Interrogatory 5**.  This interrogatory asks your clients to identify who had responsibility for monitoring Tiffany Rusher during the months when she was on crisis watch.  For the reasons discussed with respect to Interrogatory 4, your refusal to respond to this interrogatory on grounds of burden is unsubstantiated.

*Sim*:  Response is unacceptable for the same reasons as Interrogatory 2-4.

**Interrogatory 6**.  This interrogatory asks your clients to identify who was responsible for providing mental health care at Logan CC during the months corresponding to the time that Tiffany Rusher was on crisis watch.  You refuse to respond on overbreadth (because, you say, this case concerns claims by Tiffany Rusher).  That is not a legitimate basis for refusing to respond.  Plaintiff's complaint alleges that the Defendants pursued wrongful policies and practices that were imposed on Tiffany and other mentally ill prisoners alike, and these witnesses are likely to have discoverable evidence about such practices.  The interrogatory is also reasonably calculated to identify persons who may have witnessed how Tiffany was treated, because they were in her proximity.  Your overbreadth objection is therefore wrong.

You also respond as to Tiffany Rusher, but object that even identifying responsive information as to her would be unduly burdensome as well.  As with your objections to Interrogatories 4 and 5, this objection is unfounded.  Tiffany was on crisis watch for a defined, period, and the persons who were responsible for providing her care while she was confined to a single location should not be hard to identify.

*Sim*:  Response is unacceptable for the same reasons as Interrogatory 2-5.  Indeed there is every reason to believe that Sim can identify numerous persons

3

responsible for providing mental health care at Logan CC during the time in question more easily than can Plaintiffs by combing through thousands of documents.

**Interrogatory 7**.  This interrogatory asked you to identify any document called for in Plaintiff's discovery requests that had been lost, destroyed, etc.  You refused to respond.  You appear to base this refusal on your objection to the scope of our RFPs.  Those RFP objections will be addressed separately; at a minimum, however, you are obligated to respond as to those categories of documents in the RFPs that you *did* agree to produce.

By way of example only, in response to RFP 9 ("All photographs of Tiffany Rusher") you produced several documents.  If any responsive photograph called for by RFP 9 has been lost, destroyed, etc., this interrogatory asks you to identify such photograph, even if you incorporate your objections to RFPs.

> *Sim*:  This response is improper to the extent that it incorporates the other Defendants' objections.

**Interrogatory 8**.  This interrogatory asked your clients to identify any of their employees or agents who acted inconsistently with Defendants' policies during the events described in the complaint.  Again you refused to respond.  You raise boilerplate objections which, as boilerplate, are waived.  You say this interrogatory "seeks information concerning policies and practices which have no relevance to the claims against Defendants in this case," but that objection is nonsensical:  by its terms, the interrogatory asks *only* about policies and practices that are relevant to the claims and defenses in this case.  Notably, Sim was able to respond to this same interrogatory without difficulty.  Your objection here therefore rings hollow.

You further objected burden grounds, because it would take too much work to identify any violation.  At a minimum, however, if Defendants learned that an agent violated their policies and practices, that person would not be hard to identify:  presumably Defendants address violations of their policies in some manner that they monitor and record.  All such violations can be identified without undue effort.

> *Sim*:  This response is improper to the extent that it incorporates the other Defendants' objections.

**Interrogatory 9**.  This interrogatory asks your clients to identify the factual basis for their affirmative defenses.  You object that responding is unduly burdensome. I presume that before filing defenses you performed the investigation required by Rule 11. You must therefore have identified facts sufficient to support the defenses you pled. There is absolutely no burden in identifying those facts. Of course, if you did ***not*** perform the required Rule 11 enquiry, then this raises a much bigger problem, which we will address with the Court. However, at this point I will assume that you fulfilled your ethical obligations. In any event, this objection is unfounded (you only provide legal citations, and don't explain why the interrogatory would burden *your*

clients) and indeed Sim responded to the same interrogatory.  Your clients are obligated to respond.

> **Sim**:  This response is improper to the extent that it incorporates the other Defendants' objections.

**Interrogatory 10**.  This interrogatory asks each of the defendants to say when they became aware that Tiffany Rusher was in need of mental healthcare.  You refused to respond. You assert boilerplate objections, which are waived.  You object that the interrogatory makes assumptions.  That is not a basis for refusing to respond.  *See, e.g.*, *Garcia v. Clark*, 2012 WL 1232315, at *2 (E.D. Cal. Apr. 12, 2012) ("Assuming facts not in evidence may be the basis for an objection during trial or some other evidentiary hearing. This however, is discovery.").  And in any event answering is simple enough. If your clients never became aware that Tiffany Rusher was in need of mental health care, they can say so.  You also object that the interrogatory is vague, but that is meritless:  the interrogatory is plainly "seeking information on when Defendants became aware that Tiffany Rusher was in need of mental health care," as your objection itself states.  A responding party is obligated to employ common sense in responding to discovery, and your objection reflects an effort to evade that obligation.  The relevant period for this interrogatory is the date upon which your clients developed responsive knowledge.  Your objection otherwise is meritless.

> **Sim**:  This response is improper to the extent that it incorporates the other Defendants' objections.

**Interrogatory 11**.  This interrogatory asks each action your clients took to provide Tiffany Rusher with an appropriate level of mental health care.  You object that this interrogatory assumes that Tiffany was not receiving an appropriate level of care.  That is an improper objection as explained with regard to Interrogatory 10, and is flatly wrong. The interrogatory asks what was done to provide appropriate care. If your clients contend that appropriate care was being provided, then they can simply describe what they did to effect such care.  You do not say what is vague or confusing about the phrase "an appropriate level of mental health care," it simply asks what, if anything, each of your clients did to ensure that Tiffany received a level of care that is appropriate.  That is not inappropriate; Rule 33 is clear that an interrogatory is not objectionable merely because the answer to the interrogatory involves an opinion or contention that relates to a fact.  And it is a non-starter to object on the grounds that this interrogatory calls for a legal conclusion; interrogatories are not objectionable on grounds that they call for an application of law to fact.

> **Sim**:  This interrogatory response is improper to the extent it incorporates the other Defendants' objections.  Further Sim responds that he reviewed the medical records he can identify several meetings in which he participated, but he does not identify either dates or times or the meetings or the specific bates numbers identifying those meetings.  One or the other is required. The answer also appears to admit that the only action Sim took to provide mental health care to Ms. Rusher

5

was attend meetings. If this is in fact the limit of his efforts, then describing those meetings is sufficient. However, if he in fact did things other than attend meetings, then those additional efforts need to be described in his answer.

**Interrogatory 12**.  This interrogatory asked your clients to state what they did to ensure that others were providing Tiffany Rusher with an appropriate level of mental health care.  You refused to respond for the same reasons you refused to respond to Interrogatory 11, and your refusal to respond is inappropriate for the same reasons.

> *Sim*:  Sim's response to this interrogatory is improper for the same reasons that his response to Interrogatory 11 is improper.

**Interrogatory 13**.  This interrogatory asks each of your clients to state what they did to ensure that Tiffany Rusher had access to programs, services, and human contact.  You refuse to respond but your objections are meritless.  You object that the interrogatory assumes facts that have not been established, but as explained above that objection is inappropriate in discovery.  You object that the words "programs," "services," and "human contact" are vague and confusing, but a responding party is obligated to give words their ordinary and common meaning, and each of those words is in common usage.  You make a relevant time period objection, but that is not a basis for refusing to respond to this interrogatory, or any of the others to which you make this objection.  You also claim that this calls for an expert opinion or legal conclusion, but not only are those objections unfounded, they are inappropriate for the reasons described above.  Once again, it speaks of bad faith that you are able to provide responsive information to the same interrogatory for Sim.

> *Sim*:  This response is improper to the extent that it incorporates the other Defendants' objections.

**Interrogatory 14**.  This interrogatory asks what steps each of your clients took with regard to discharge planning.  You refused to answer on grounds that it assumed facts not in evidence, but that objection is invalid as explained above. Further, it is unclear what facts you think are in dispute—Ms. Rusher was obviously discharged from IDOC custody. If your clients did no planning for that discharge, then they should say so. If they did participate in such planning, then surely they can describe what they did. You also object that the interrogatory is vague because it's not clear whether it is referring to discharge planning from IDOC or somewhere else. Again, it is unclear where you think there is confusion. Ms. Rusher was discharged from the IDOC directly from crisis care; therefore, discharge from care and discharge from the IDOC are the exact same event in this case. In any event, discovery requires an answering party to use common sense in responding. Are you really refusing to respond based on this objection?   Yet again, Sim had no trouble providing responsive information to this same interrogatory.  Thus your other clients' refusal to respond smacks of bad faith.

> *Sim*:  This response is improper to the extent that it incorporates the other Defendants' objections.

**Interrogatory 15**.  This interrogatory asks each of your clients when they became aware that Illinois had no provision to provide hospital level mental healthcare to prisoners confined in the IDOC.  You refused to respond.

First you object that the term "hospital level mental health care" is vague.  I'll note that a responding party is obligated to construe the terms in discovery requests reasonably. If you believed these terms were somehow vague or ambiguous in the context of the case, then you should have explained in what way the terms were giving you trouble, interpreted the terms in a reasonable and constructive way, and set out in your responses how you were interpreting them. You don't seem to have done any of this, throughout your responses.

In all events, Plaintiff refers Defendants to the definition of inpatient mental health services that is in the 5/8/2013 *Rasho* agreed order, which Plaintiff produced in this case under *Andrews v. Rauner*, Plaintiff Production 1-7. As we understand it, this is the same essential definition that IDOC used in the memos that it authored on 9/20/13, 12/24/13, 3/7/2014, 4/17/2014, 3/16/2016, which Plaintiff produced in this case under *Andrews v. Rauner*, Plaintiff Production 2-286.  In other words, Defendants should use IDOC's own definition of the term. This should resolve your vagueness objection.  If it still does not, please contact me and explain why you're still having trouble understanding the term.

You also object that this interrogatory assumes facts that have not been established, but that is not a valid basis for an objection as I explain above.  You object to the interrogatory as to time, but it simply asks your clients when they became aware of something.  You also object to the interrogatory as to scope because this case only concerns the care of Tiffany Rusher, but as you know the complaint alleges that the Defendants failed to provide hospital level mental healthcare to IDOC prisoners, and that that failure impacted Tiffany. The interrogatory therefore is appropriate.

> **Sim**:  Your response incorporates other Defendants' objections and is improper for the same reasons.

**Interrogatory 16**.  This interrogatory asks your clients to say when they became aware that there were prisoners confined in the IDOC who were in need of hospital level mental healthcare.  You object that "hospital level mental health care" is vague.  It has the definition set out regarding interrogatory 15.  You object that the interrogatory assumes facts not in evidence. That is not a valid objection.  You object that the interrogatory is "overbroad in time," but whatever you might mean by that objection, this merely asks a defendant when they became aware of something and is therefore entirely appropriate.  And your scope interrogatory as to "other offenders" is inappropriate for the reasons described regarding Interrogatory 15.

> **Sim**:  Your response incorporates other Defendants' objections and is improper for the same reasons.

**Interrogatory 17**.  This interrogatory refers to Interrogatory 16 and asks your clients to state what actions they took to ensure IDOC prisoners in need of hospital level mental health

care received it.  You refused to respond to this interrogatory on the same objections you make to Interrogatory 16.  Those objections are invalid for the same reason.

> *Sim*:  Your response incorporates Defendants' objections and is improper for the same reasons.

**Interrogatory 18**.  This interrogatory asks your clients to explain why IDOC prisoners in need of hospital level mental healthcare were not transferred to one of the state hospitals operated by IDHS.  You refuse to respond because "hospital level mental health care" is vague.  *See* Interrogatory 15.  You object that the interrogatory assumes facts not in evidence.  That is invalid as I have explained.  You object that the interrogatory is vague as to time. This objection makes no sense. The obvious time period is the period when Ms. Rusher was determined to require hospital level of care. Those dates are the subject of a different interrogatory, which your clients also refused to answer. If you think some different time period is more appropriate, we are willing to entertain your suggestions. You object as to scope because this concerns more prisoners than Tiffany, but as you know we allege that Defendants failed to make such transfers to IDOC prisoners as a matter of policy and practice, and that failure impacted Tiffany.

> *Sim*:  Your response incorporates the other Defendants' objections and is improper for the same reasons.

**Interrogatory 19**.  This interrogatory asks individual-capacity defendants to provide financial information for punitive damages.  You object that this interrogatory is premature, and we don't have a problem waiting until after summary judgment is decided.  We should clear up one issue now, though:  you further object that the state employees are likely to be indemnified by the state of Illinois—does the State plan to indemnify its employees for punitive damages as well?  Please clarify.

> *Sim*:  Your response incorporates the other Defendants' objections and is improper for the same reasons.


## DECEMBER 6 REQUESTS FOR PRODUCTION

**Objections to instructions**.  The reference to "otherwise excludable from discovery" refers to documents that are not produced on the basis of objections that are akin or analogous to privilege.  As with claims of privilege, you are required to identify documents that you contend are so excluded so that the court and the discovering party can evaluate your claim.

**Privilege / work product objection**:  In response to multiple RFPs you object on attorney work product and privilege grounds.  If you are withholding documents on the basis of these objections you are required to produce a privilege log.  Please do so.

**Rule 34(b)(2)(C)**.  Your responses to every RFP fail to comply with Rule 34(b)(2)(C), in that they do not state whether any responsive materials are being withheld on the basis of that objection.  I note that with respect to several requests below, but the failure applies to every one

of your responses.  Pursuant to Rule 34(b)(2)(C), please state whether any responsive materials are being withheld on the basis of each objection your clients interpose, and as to each request, specify which part of which request they are being withheld from, and based on what objection. You must amend your responses to comply with those obligations.

**RFP 1**.  Pursuant to Rule 34(b)(2)(C), please specify whether you are withholding any documents on the basis of these objections.  Recall that pursuant to Rule 26(e), you have an obligation to update your responses to this RFP.

**RFP 2**.  Pursuant to Rule 34(b)(2)(C), please specify whether you are withholding any documents on the basis of these objections. Recall that pursuant to Rule 26(e), you have an obligation to update your responses to this RFP.

**RFP 3**.  This RFP asks your clients to produce all documents relating to the detainment of Tiffany Rusher at Logan CC.  You object that it is vague.  That objection is unsupported and meritless.  Tiffany was one of thousands of IDOC prisoners, and document categories relating to each prisoner are standardized and thus should not be hard to locate.  You object that the RFP is disproportionate to the needs of the case but you make no effort to describe any burdens that would be imposed by this request or why it is unlikely to lead to the discovery of admissible evidence.  You object that the request is unlimited by time and scope, but that is nonsense—the time is the time of Tiffany's incarceration, and the scope is her incarceration at Logan CC.

**RFP 3**.  This RFP asks for Tiffany Rusher's medical records.  You begin by asserting boilerplate objections, which are waived.  You have made no effort to establish that requesting records in Illinois' possession will require "scouring" every agency or person employed by the state—and indeed that's implausible. A responding party is required to exercise common sense, and there's no reason to believe that responsive documents are going to be found scattered around state agencies at random. Tiffany's medical history is relevant to the impact that solitary had on her, and the adequacy of care she received.  Pursuant to Rule 34(b)(2)(C), please specify whether you are withholding any documents on the basis of these objections.

**RFP 5**.  This RFP asks your clients to produce all communications pertaining to Tiffany Rusher.  Outside of Tiffany's medical records, you refused to produce a single document.  You raise boilerplate objections, which are waived.  You claim that it is overly broad and unduly burdensome to "scour" every state agency for communications, but that objection is both implausible and unsubstantiated.

You make a relevance objection but it refers only to "Plaintiff's claims in this case that Tiffany Rusher's mental health treatment at Logan [CC] was inadequate."  Our claims are not limited to this allegation, and in all events you have made no showing that requesting communications about Tiffany will be disproportionately burdensome.

You do not appear to have produced (or pointed to) a single email relating to Tiffany, which leads me to believe that you have made no effort to search your client's communications

systems.  We need to meet and confer regarding the search protocols your clients will use to locate documents responsive to this request.

**RFP 7**.  This RFP asked for photographs and floorplans in your clients' possession.  You have flatly refused to respond but your objections are meritless.  Evidence of Tiffany's housing in IDHS is relevant to this case because Plaintiff contrasts Tiffany's conditions at IDHS with those at IDOC.  You claim this request is unduly burdensome but that is entirely unsubstantiated; you do not describe any burden at all.  You claim that this request is duplicative because we have also requested an inspection; requests for an inspection and existing documentary evidence are not the same thing, but in any event the Rules permit discovery that seeks the same information through different discovery tools.

You object that providing us responsive documents would present a security risk—you do not substantiate this objection, but in all events we are willing to enter into a protective order agreement that addresses your client's legitimate security concerns.  We are further willing to limit this request to Logan CC's fire evacuation plan, assuming that adequately shows the locations where Tiffany was housed.  Furthermore this objection does not apply to the IDHS.

**RFP 8**.  This RFP asked for floorplans for any part of Logan CC where Tiffany Rusher was housed.  You refuse to respond based on the same objections you made regarding RFP 7, which are wrong for the same reasons.  Note that this request concerns Logan CC, so your objection referring to IDHS is irrelevant.

**RFP 9**.  This RFP asked you to produce photographs of Tiffany Rusher.  You raise a host of objections, but they are improper—photographs of Tiffany Rusher can reveal the physical impact of her living conditions and are reasonably targeted to lead to the discovery of admissible evidence.  Please specify whether you are withholding any photographs based on these objections.

**RFP 10**.  This RFP asked you to produce all items belonging to Tiffany Rusher.  You respond that you have requested such items from McFarland.  Have you requested them from IDOC as well?

**RFP 11**.  This RFP asked you to produce all documents authored by Tiffany Rusher.  You raise boilerplate objections but then produce documents.  You are obligated to produce responsive documents.  Are you withholding any documents based on your objections?

**RFP 12**.  This asked you for notes or recordings of any interviews pertaining to Tiffany Rusher's incarceration, etc.  You point to documents but you also raise objections.  Are you withholding any documents based on these objections?  If so please identify them.  Are you withholding any documents based on attorney work product or attorney-client privilege?  If so please produce a privilege log.

**RFP 13**.  This RFP asked for videotape of Tiffany Rusher.  You raise boilerplate objections that are waived and inappropriate in any event.  If there is any videotape of Tiffany,

including at her cell, it must be produced.  Among other things, your clients have records specifying where and when Tiffany was housed within Logan CC.  They should be able to link those records to video and CCTV recordings.  Your "scour every state agency" objection is thus flatly inappropriate.

**RFP 14**.  This RFP asks for physical evidence relating to Tiffany Rusher including but not limited to what was requested in RFP 10.  You object that this request might call for evidence that Defendants might use at trial, but that is nonsense. Are you suggesting that evidence that will be used at trial is somehow therefore exempt from discovery? In any event, the issue of whether you intend to use something at trial is irrelevant to the discovery process.   You also assert attorney work product and attorney-client privilege objections.  You must produce a privilege log if you are withholding evidence based on this objection.  You must also identify any evidence that you are withholding based on any of your objections.

**RFPs 15-20, 23-24**.  For each of these RFPs, please specify whether you are withholding any documents based on your objections.  Please produce a privilege log for any documents that you are withholding based on claims of attorney work-product or attorney-client privilege.

**RFP 21**.  This RFP asked your clients for all documents relating to Tiffany Rusher's civil commitment proceedings, including related communications.  You have produced only the pleadings themselves, not any other documents and not any other communications.  That there are no such communications is implausible.  Please amend your response.  Also, you are obligated to produce a privilege log for documents that you claim are privileged.

**RFP 22**.  This RFP asked your clients to produce all documents relating to IDOC's contract with Wexford, or with any other entity or person, relating to the provision of mental health services at Logan CC.  You point to the Wexford contract only. We are well aware of the fact that there are innumerable additional documents—many of which were admitted as evidence in the various *Rasho* hearings. However, there is no indication (either in that case or in your discovery responses) that the evidence introduced in *Rasho* included ***all*** documents related to the contract. As noted before, aside from any other documents, it appears that you have performed no searches of electronically stored documents, as it is inconceivable that there has never been a single email exchanged between any state employee and any Wexford employee relating to compliance with Wexford's contractual obligation to provide mental health care at Logan.

Please state whether you are withholding production of any documents based on your objections to this request.  Further, Wexford's contract is incomplete, as it contains numerous pages that have been inappropriately redacted.  Please produce an un-redacted version or produce a privilege log justifying the redactions.

**RFP 25**.  This RFP asks your clients to produce all documents relating to the provision of hospital level mental healthcare.  You have refused to produce a single document based on boilerplate objections.  Refer to Interrogatory 15 for the definition of hospital level mental healthcare.  We allege that defendants' failure to provide hospital level mental healthcare to

IDOC prisoners who needed it caused Tiffany's injuries, so this request is relevant; your assertions of disproportionality are entirely unsupported.  Also you must produce a privilege log for any documents you are withholding based on claims of attorney client or work product privilege.

**RFP 26**.  This is a request for inspection.  You assert boilerplate objections.  Please specify what you mean by your objection that this request seeks inspection of areas outside the IDOC's control. We also note that the IDOC is not the only defendant you represent. Are all of your clients refusing to permit this inspection?


## DECEMBER 5, 2018 REQUESTS FOR PRODUCTION TO BALDWIN

**Objections to instructions**.  The reference to "otherwise excludable from discovery" refers to documents that are not produced on the basis of objections that are akin or analogous to privilege.  As with claims of privilege, you are required to identify documents that you contend are so excluded so that the court and the discovering party can evaluate your claim.

**Privilege / work product objection**:  In response to multiple RFPs you object on attorney work product and privilege grounds.  If you are withholding documents on the basis of these objections you are required to produce a privilege log.  Please do so.

**Rule 34(b)(2)(C)**.  Your responses to every RFP fail to comply with Rule 34(b)(2)(C), in that they do not state whether any responsive materials are being withheld on the basis of that objection.  I note that with respect to several requests below, the failure applies to every one of your responses.  Pursuant to Rule 34(b)(2)(C), please state whether any responsive materials are being withheld on the basis of these objections, and as to each request, specify which part of which request they are being withheld from, and based on what objection.  You must amend your responses to comply with those obligations.

**RFP 1**.  This RFP asked Baldwin to produce documents concerning Tiffany Rusher that were generated pursuant to the assessment plan set out in the 9/20/13 memorandum.  You raise a variety of objections and point only to Tiffany's medical file.  That is inadequate.  The assessment plan led to the generation of written assessments specified in the plan.  To the extent that assessment generated documents that concerned Tiffany (*e.g.*, if documents were generated identifying Tiffany as a prisoner who required "Inpatient" care, *see* Assessment Plan ¶ 1(b)(iv), Andrews v. Rauner, Plaintiff's Production 9, such a document would be responsive.  You must produce responsive documents.

**RFP 2**.  This RFP asked Baldwin to produce inpatient lists specified in the assessment plan, whether or not those records reference Tiffany Rusher.  You refuse and point only to Tiffany's medical file.  That is inappropriate.  Your refusal to produce responsive information seems to stem from Defendants' refusal to acknowledge that this is a case about their policies and practices that impacted a number of inmates, including Tiffany.  We are entitled to prove up

those policies and the information we seek here is reasonably calculated to do that.  Your claims that producing this information is unduly burdensome are entirely unfounded.  You must produce responsive information.

**RFP 3-6**.  These requests ask Baldwin to produce inpatient LOC lists identified in several IDOC memos to Dr. Patterson and Harold Hirschman.  You refuse (again pointing only to Tiffany's medical file), again based again on Defendants' refusal to acknowledge Plaintiff's allegation that Defendants' policies and practices regarding IDOC prisoners with mental illness impacted Tiffany.  In that light all your objections are invalid, and you have made no effort to substantiate your objection that responding to this RFP will impose any sort of meaningful burden.  You must produce responsive information.

**RFP 7**.  This RFP asked for communications by Gov. Rauner or his agents regarding inpatient LOC.  You refused to produce any responsive documents.  Your primary objection is that this case involves only the treatment of Tiffany Rusher, but as I've explained repeatedly that is incorrect—and indeed flatly ignores the policy allegations we make in the complaint.  You object that Baldwin doesn't have custody of such communications, but Baldwin is responding in his official capacity and as such he stands in for the State of Illinois, which inarguably has custody.  And in any event in the referenced pleading Baldwin's own counsel referred to specific communications, and thus must have those at a minimum.

Best regards,

*/s/ Stephen H. Weil*

Stephen H. Weil

# Exhibit 11



---

## Andrews v. Rauner -- discovery enforcement
1 message

---

**Stephen Weil <steve@weilchardon.com>**                    Thu, Mar 14, 2019 at 12:36 PM
To: "Tyrrell, Jeremy" <jtyrrell@atg.state.il.us>
Cc: Alexis Chardon <ali@weilchardon.com>, Alan Mills <alan@uplcchicago.org>, Liz Mazur <liz@uplcchicago.org>, Nicole Schult <nicole@uplcchicago.org>

Jeremy,

We agreed to talk tomorrow about your clients' discovery responses but I don't believe we set a time.  Does 1:00 pm work?

Below I address your clients' March 11, 2019 responses to Plaintiff's interrogatories.

As an initial matter, your clients' March 11 answers repeatedly refer their February 25, 2019 objections.  I addressed those objections in my March 5 letter.  Your clients' March 11 responses do not acknowledge the clarifications and other matters I raised in the March 5 letter.  Therefore I assume you are standing on all the objections you made on February 25.  If that is incorrect please specify which objections you are withdrawing or modifying, and when they will be modified.

**Interrogatory 2**.  This interrogatory asked your clients to identify persons with knowledge of facts relating to the claims or defenses in the complaint.  Your clients all respond in the same manner as Jeff Sim, referring to large swathes of documents.  They further refer to documents that have not yet been produced.  That is an inappropriate response under Rule 33(d).

It is doubly impermissible because unlike Sims, these parties are policymakers and governmental entities.  The Complaint in this case refers to numerous policy decisions made in the case that impacted numerous inmates, including Tiffany Rusher.  Those persons with knowledge of those policy-level decisions are not going to be found in Ms. Rusher's medical file.  Setting aside your improper Rule 33(d) responses, therefore, your clients' referral to Ms. Rusher's medical file do not constitute a good faith attempt to respond to this interrogatory.

**Interrogatory 3**.  This interrogatory asks about the subject matters known to the persons responsive to Interrogatory 2.  Your clients' responses are identical to their responses to Interrogatory 2 and are inappropriate for the same reasons.

**Interrogatory 4-6**.  Your clients' responses to these interrogatories are the same as Sim's February 25 responses, and are improper for the same reason.  That is particularly so for the official-capacity clients, who have unfettered access to all the information at issue.

**Interrogatory 7**.  Your clients' responses to this interrogatory are inappropriate for the same reasons that Sim's February 25 response was inappropriate.

**Interrogatory 8**.  This asks whether any employee or agent of the Defendants acted inconsistent with policy respecting the allegations in the complaint.  Your clients respond regarding the care of Tiffany Rusher only.  But the Complaint alleges large-scale management-level practices that impacted Ms. Rusher.  See, e.g., paragraph 25 of the complaint.  Your clients responses are therefore incomplete.

**Interrogatory 9**.  Please explain the extent to which your clients are refusing to identify responsive facts based on their February 25 objections.

**Interrogatory 11-13**.  As to the official capacity defendants, if you clients are going argue at trial that they did anything other than the acts listed in their responses to these interrogatories, they must identify such acts now.  Otherwise, as the Rules provide, we will consider these to be their binding answers.

**Interrogatories 15-18**.  Your clients all refused to respond to these interrogatories, based on the objections you made on February 25.  I addressed those objections in my March 5 letter to you.  Since your clients have still refused to respond notwithstanding my March 5 letter, I assume that we are at issue.

**Interrogatory 19**.  We don't have a problem waiting as to defendants Rauner and Baldwin in his individual capacity.  Please clear up the issue raised in my March 5 letter:  does the State plan to indemnify Rauner and Baldwin for punitive damages?

Best regards,

Stephen H. Weil
Weil & Chardon LLC
333 S. Wabash Ave., Suite 2700
Chicago, IL 60604
(o) 312-585-7404
(f)  773-409-2745
(c) 267-240-5585
steve@weilchardon.com
www.weilchardon.com

# Exhibit 12



**Stephen Weil <steve@weilchardon.com>**

---

## RE: Andrews v. Rauner - Discovery enforcement
1 message

---

**Tyrrell, Jeremy** <JTyrrell@atg.state.il.us>                              Fri, Mar 15, 2019 at 1:46 PM
To: Stephen Weil <steve@weilchardon.com>
Cc: Alexis Chardon <ali@weilchardon.com>, Alan Mills <alan@uplcchicago.org>, Liz Mazur <liz@uplcchicago.org>, Nicole Schult <nicole@uplcchicago.org>

> Thanks Steve.
>
>
> I will begin working on a written response to your March 5 letter and March 14 email, and I hope to provide this early next week.
>
>
> Have a good weekend,
>
>
>
> Jeremy Tyrrell
>
> Assistant Attorney General
>
> 500 S. Second St.,
>
> Springfield, IL 62701
>
> Tel:  (217) 785-4555
>
> Fax: (217) 782-8767
>
> jtyrrell@atg.state.il.us
>
>
>
> **From:** Stephen Weil [mailto:steve@weilchardon.com]
> **Sent:** Friday, March 15, 2019 1:40 PM
> **To:** Tyrrell, Jeremy <JTyrrell@atg.state.il.us>
> **Cc:** Alexis Chardon <ali@weilchardon.com>; Alan Mills <alan@uplcchicago.org>; Liz Mazur <liz@uplcchicago.org>; Nicole Schult <nicole@uplcchicago.org>
> **Subject:** Andrews v. Rauner - Discovery enforcement
>
>
> Jeremy,
>
>
> Thanks for speaking this afternoon.

As I noted on the call, regarding your Rule 26(a)(1) disclosures, at trial we would move to exclude any witness your clients call who is only identified in your 26(a)(1) disclosures through your designation, "Individuals identified in all documents during discovery."  The designation is No. 11 on your 11/16/18 initial disclosures, which I'm attaching here for your reference.  Identifying witnesses in this manner is antithetical to the purpose of the Rule 26(a)(1) disclosure requirement.

Stephen H. Weil

Weil & Chardon LLC

333 S. Wabash Ave., Suite 2700

Chicago, IL 60604

(o) 312-585-7404

(f)  773-409-2745

(c) 267-240-5585

steve@weilchardon.com

www.weilchardon.com

# Exhibit 13



Stephen Weil <steve@weilchardon.com>

---

## Re: Andrews v. Rauner - Discovery enforcement
1 message

---

**Stephen Weil** <steve@weilchardon.com>                              Sat, Mar 23, 2019 at 10:24 AM
To: "Tyrrell, Jeremy" <JTyrrell@atg.state.il.us>
Cc: Alexis Chardon <ali@weilchardon.com>, Alan Mills <alan@uplcchicago.org>, Liz Mazur <liz@uplcchicago.org>, Nicole
Schult <nicole@uplcchicago.org>

Jeremy,

I still have not received a response to my enforcement letter.  At this point we are months overdue for multiple discovery
items that your clients have failed to provide.  If you don't provide a response by COB Tuesday I am going to consider our
telephone call to have fulfilled our meet-and-confer obligations, and move to enforce our discovery with the Court.

Best regards,

Steve

Stephen H. Weil
Weil & Chardon LLC
333 S. Wabash Ave., Suite 2700
Chicago, IL 60604
(o) 312-585-7404
(f)  773-409-2745
(c) 267-240-5585
steve@weilchardon.com
www.weilchardon.com


On Fri, Mar 15, 2019 at 1:46 PM Tyrrell, Jeremy <JTyrrell@atg.state.il.us> wrote:

> Thanks Steve.
>
>
> I will begin working on a written response to your March 5 letter and March 14 email, and I hope to provide this
> early next week.
>
>
> Have a good weekend,
>
>
>
> Jeremy Tyrrell
>
> Assistant Attorney General
>
> 500 S. Second St.,
>
> Springfield, IL 62701
>
> Tel:  (217) 785-4555
>
> Fax: (217) 782-8767

jtyrrell@atg.state.il.us

**From:** Stephen Weil [mailto:steve@weilchardon.com]
**Sent:** Friday, March 15, 2019 1:40 PM
**To:** Tyrrell, Jeremy <JTyrrell@atg.state.il.us>
**Cc:** Alexis Chardon <ali@weilchardon.com>; Alan Mills <alan@uplcchicago.org>; Liz Mazur <liz@uplcchicago.org>; Nicole Schult <nicole@uplcchicago.org>
**Subject:** Andrews v. Rauner - Discovery enforcement

Jeremy,

Thanks for speaking this afternoon.

As I noted on the call, regarding your Rule 26(a)(1) disclosures, at trial we would move to exclude any witness your clients call who is only identified in your 26(a)(1) disclosures through your designation, "Individuals identified in all documents during discovery."  The designation is No. 11 on your 11/16/18 initial disclosures, which I'm attaching here for your reference.  Identifying witnesses in this manner is antithetical to the purpose of the Rule 26(a)(1) disclosure requirement.

Stephen H. Weil

Weil & Chardon LLC

333 S. Wabash Ave., Suite 2700

Chicago, IL 60604

(o) 312-585-7404

(f)  773-409-2745

(c) 267-240-5585

steve@weilchardon.com

www.weilchardon.com



**Stephen Weil <steve@weilchardon.com>**

---

## Andrews -- Discovery enforcement
1 message

---

**Stephen Weil** <steve@weilchardon.com>                    Thu, Mar 28, 2019 at 4:58 PM
To: "Tyrrell, Jeremy" <jtyrrell@atg.state.il.us>

Jeremy,

Are you responding to my discovery enforcement letter?

Stephen H. Weil
Weil & Chardon LLC
333 S. Wabash Ave., Suite 2700
Chicago, IL 60604
(o) 312-585-7404
(f)  773-409-2745
(c) 267-240-5585
steve@weilchardon.com
www.weilchardon.com



**Stephen Weil <steve@weilchardon.com>**

---

## Re: Andrews v. Rauner - Discovery enforcement
1 message

---

**Stephen Weil** <steve@weilchardon.com>                           Wed, Apr 24, 2019 at 1:50 PM
To: "Tyrrell, Jeremy" <JTyrrell@atg.state.il.us>
Cc: Alexis Chardon <ali@weilchardon.com>, Alan Mills <alan@uplcchicago.org>, Liz Mazur <liz@uplcchicago.org>, Nicole Schult <nicole@uplcchicago.org>

Jeremy,

I have never received the response you describe in your March 15 email.  I therefore you assume that you are standing on your responses, and that we are at issue.  If that is incorrect please contact me by COB today.

Thanks,

Steve

Stephen H. Weil
Weil & Chardon LLC
333 S. Wabash Ave., Suite 2700
Chicago, IL 60604
(o) 312-585-7404
(f)  773-409-2745
(c) 267-240-5585
steve@weilchardon.com
www.weilchardon.com


On Sat, Mar 23, 2019 at 10:24 AM Stephen Weil <steve@weilchardon.com> wrote:
Jeremy,

I still have not received a response to my enforcement letter.  At this point we are months overdue for multiple discovery items that your clients have failed to provide.  If you don't provide a response by COB Tuesday I am going to consider our telephone call to have fulfilled our meet-and-confer obligations, and move to enforce our discovery with the Court.

Best regards,

Steve

Stephen H. Weil
Weil & Chardon LLC
333 S. Wabash Ave., Suite 2700
Chicago, IL 60604
(o) 312-585-7404
(f)  773-409-2745
(c) 267-240-5585
steve@weilchardon.com
www.weilchardon.com


On Fri, Mar 15, 2019 at 1:46 PM Tyrrell, Jeremy <JTyrrell@atg.state.il.us> wrote:

Thanks Steve.

I will begin working on a written response to your March 5 letter and March 14 email, and I hope to provide this early next week.


Have a good weekend,



Jeremy Tyrrell

Assistant Attorney General

500 S. Second St.,

Springfield, IL 62701

Tel:  (217) 785-4555

Fax: (217) 782-8767

jtyrrell@atg.state.il.us



**From:** Stephen Weil [mailto:steve@weilchardon.com]
**Sent:** Friday, March 15, 2019 1:40 PM
**To:** Tyrrell, Jeremy <JTyrrell@atg.state.il.us>
**Cc:** Alexis Chardon <ali@weilchardon.com>; Alan Mills <alan@uplcchicago.org>; Liz Mazur <liz@uplcchicago.org>; Nicole Schult <nicole@uplcchicago.org>
**Subject:** Andrews v. Rauner - Discovery enforcement


Jeremy,


Thanks for speaking this afternoon.


As I noted on the call, regarding your Rule 26(a)(1) disclosures, at trial we would move to exclude any witness your clients call who is only identified in your 26(a)(1) disclosures through your designation, "Individuals identified in all documents during discovery."  The designation is No. 11 on your 11/16/18 initial disclosures, which I'm attaching here for your reference.  Identifying witnesses in this manner is antithetical to the purpose of the Rule 26(a)(1) disclosure requirement.


Stephen H. Weil

Weil & Chardon LLC

333 S. Wabash Ave., Suite 2700

Chicago, IL 60604

(o) 312-585-7404

(f)  773-409-2745

(c) 267-240-5585

steve@weilchardon.com

www.weilchardon.com

# Exhibit 14



**Illinois
Department of
Corrections**

**Pat Quinn**
Governor

**S. A. Godinez**
Director

James R. Thompson Center
100 W. Randolph Street, Suite 4-200
Chicago, IL 60601

Telephone: (312) 814-3017
TDD: (800) 526-0844

# M E M O R A N D U M

DATE:     September 20, 2013

TO:       Dr. Raymond Patterson
          Harold Hirschman

FROM:     William Barnes

SUBJECT: IDOC Facility and Staffing Assessment Plan

---

The following is an outline of the assessment which the Illinois Department of Corrections (IDOC) proposes to undertake, as required by the May 8, 2013 Agreed Order in *Rasho v. Walker*. The purpose of the assessment is twofold:  First, to determine current mental health staffing levels at each facility and identify future staffing levels that will satisfy the IDOC's constitutional responsibility for providing mental health care to Seriously Mentally Ill (SMI) offenders.  Second, to determine current mental health bed and treatment space at each IDOC facility in an effort to determine future bed and treatment space allocations that will satisfy the IDOC's constitutional duty to provide mental health care to SMI offenders.  Following approval by the monitor, IDOC will undertake the steps outlined below over a six-month period, and present the monitor with a general staffing and facility proposal related to SMI offenders. Following Monitor approval of the IDOC's solution, the proposal will be formalized in a Consent Decree.  The steps identified by IDOC as necessary to determining constitutionally adequate mental health staffing, bed and treatment space as it relates to the SMI offender are as follow:

1. Identify the Seriously Mentally Ill (SMI) Population within Illinois Department of Corrections' (IDOC's) General Population.
   a. Determine the number of SMI Offenders using the May 8, 2013 Agree Order's definition of SMI.
   b. Identify the number, gender and location of SMI Offenders requiring the following levels of care.
      i. <u>Outpatient</u> – defined as the least intensive level of treatment and representing the majority of care delivered by IDOC Mental Health Services.  Psychiatric medication management, individual psychotherapy,

case management sessions and group therapy sessions are some of the more common intervention options that may be delivered at this level of care.

ii. <u>Crisis Care</u> – defined as the level of care appropriate for Offenders who present a danger to self or others and require temporary clinical intervention for stabilization and/or diagnostic purposes.   Crisis Care provides short-term, 24-hour supervised, structured living arrangements in a crisis designated area.  This level of care is used for short-term crisis stabilization, usually less than 10 days or as considered clinically necessary by the Offender's treatment team.

iii. <u>Residential</u> – defined as the level of care appropriate for Offenders who, based on clear clinical evidence, have a serious mental illness associated with significant functional impairments rendering the Offender unable to successfully reside in a non-specialized general population housing unit. Residential level of care includes placement in a Residential Treatment Unit (RTU) setting that houses Offenders requiring a similar level of care and provides enhanced mental health treatment. Such enhanced mental health treatment includes a minimal amount per week of out-of-cell time either as defined in the IDOC Administrative Directive governing levels of care or as considered clinically necessary by the Offender's treatment team.   The out-of-cell time consists of both structured therapeutic activities, generally in a group setting, and  unstructured recreational time equal to or greater than what is offered to non-RTU Offenders with the same custody classification.

iv. <u>Inpatient</u> – defined as the level of care which provides the most intensive level of treatment, involving an individual plan of active psychiatric treatment that includes 24-hour access to a full range of psychiatric and mental health staffing.

2. Determine Existing IDOC Capacity to Provide SMI Offenders with Appropriate Levels of Care.

   a.  Assess current staffing levels at IDOC facilities housing SMI Offenders.

      i.  Clinical/Support/Programming Staff

         1.  Identify current mental health staffing levels at IDOC facilities housing SMI Offenders.

      ii.  Security Staffing

         1.  Identify current security staffing levels at IDOC facilities housing SMI Offenders.

   b.  Survey programming space at IDOC facilities housing SMI Offenders.

3. Pending final Approval by Governor's Office of Management and Budget (GOMB) and Governor's Office, accept as preliminarily valid the staffing proposal articulated in March 6, 2012 Final Report authored by Fred Cohen (Cohen Report) as well as the

Andrews v. Rauner, Plaintiff's Production 9

staffing proposal's assumptions that the IDOC's (1) male SMI population accounts for 15% of its male IDOC mental health caseload; and (2) female IDOC SMI population accounts for 30% of the female IDOC mental health caseload.

    a. Determine fiscal impact of additional staffing numbers required by Cohen Report.

    b. Initiate good faith efforts to secure necessary funding to achieve such staffing levels in a phased approach to be set forth in any future Consent Decree.

        i. Propose additional staffing numbers required by Cohen Report to IDOC Executive Staff, Governor's Office of Management and Budget (GOMB) and Governor's Office for approval.

    c. Continue its good faith effort to fill unstaffed mental health positions, as required by the May 8, 2013 Agreed Order.

4. Identify and Propose Solutions for Providing Adequate Care and Treatment to IDOC SMI Offenders.

    a. <u>Outpatient Care</u>

        i. Consider total number of IDOC SMI Offenders requiring outpatient care.

        ii. Consider current geographic location of SMI Offender population requiring outpatient care.

        iii. Consider need for and/or feasibility of grouping outpatient SMI Offenders in regional IDOC facilities.

            1. If deemed feasible and necessary, consider specific locations for facilities housing outpatient offenders.

                a. Geographic concerns:

                    i. Must serve the entire State.

                    ii. Must have proximity to larger urban center(s) to facilitate mental health staffing.

                b. Physical plant concerns:

                    i. Must have suitable housing for SMI population.

                    ii. Must have adequate space for required programming.

            2. If deemed feasible and necessary, consider physical upgrades required at facilities housing outpatient offenders and calculate fiscal impact of same.

                a. Adequate programming space as defined by:

                    i. Confidentiality concerns.

                    ii. Sufficient space to accommodate individual psychotherapy, case management sessions, group therapy sessions or other programming required by individual offender treatment plans.

                b. Offices for administrative and clinical staff.

            3. If deemed feasible and necessary, determine increased mental health staffing needs (if any) for regional outpatient centers using

staffing proposals (and related assumptions) articulated in Cohen Report and calculate the fiscal impact of same.

4. If deemed feasible and necessary, determine increased security staffing specific to each facility housing outpatient offenders, and calculate the fiscal impact of same.

5. If deemed feasible and necessary, propose geographic grouping of Outpatient Offenders to IDOC Executive Staff, Governor's Office of Management and Budget (GOMB) and Governor's Office for approval.

iv. If geographic grouping of SMI Offenders requiring outpatient care is not determined to be feasible and/or necessary, the IDOC will:

1. Determine adequacy of confidential counseling and programming space available to outpatient offenders at their parent facilities and, where necessary, identify existing space to be repurposed for confidential counseling and programming space and calculate fiscal impact of same.

2. Determine increased mental health staffing needs at outpatient offender parent facilities using staffing proposals (and related assumptions) articulated in Cohen Report and calculate fiscal impact of same.

3. Determine increased security staffing needs at outpatient offender parent facilities, and calculate fiscal impact of same.

4. Propose costs associated with treating outpatient offenders at their parent facilities to IDOC Executive Staff, Governor's Office of Management and Budget (GOMB) and Governor's Office for approval.

b. Crisis-Level Care

i. Survey existing crisis cells in all IDOC facilities

1. Consider crisis cell location within each facility (segregation vs. non-segregation).

2. Consider suicide resistance presented by existing crisis cells.

ii. Establish minimum standards for suicide resistance of crisis cells (existing and new).

iii. Initiate efforts to relocate crisis cells located in segregation to non-segregation areas in the facility.

iv. Initiate efforts to retrofit existing and relocated crisis cells to meet minimum suicide resistance requirements established by IDOC.

c. Residential Level of Care

i. Consider total number of IDOC SMI Offenders requiring residential level of care.

ii. Consider current geographic location of SMI Offender population requiring residential levels of care.

    iii. Consider feasibility of grouping SMI Offenders requiring residential levels of care in residential treatment units (RTUs) where all or a portion of the offender population will receive residential levels of care.  If deemed feasible, the IDOC will consider the following:

        1. Specific locations for regionally-located RTUs will be vetted based on the following geographic concerns:
           a. The RTU program must serve the entire Department.
           b. Each RTU should be in proximity to larger urban center(s) to facilitate mental health staffing.
        2. Specific locations for regionally-located RTUs will be vetted based on the following physical plant concerns:
           a. Each location must have suitable housing for SMI population.
           b. Each location must have sufficient space for increased programming required by residential level of care.
        3. Determine physical upgrades required at RTUs to house SMI Offender population and calculate fiscal impact of same.
           a. Programming space.
           b. Offices for administrative and clinical staff.
        4. Determine increased mental health staffing needs (if any) for RTUs using staffing proposals (and related assumptions) articulated in Cohen Report and calculate fiscal impact of same.
        5. Determine increased security staffing needs (if any) for RTUs and calculate fiscal impact of same.
        6. Propose creation of RTUs to IDOC Executive Staff, Governor's Office of Management and Budget (GOMB) and Governor's Office for approval.

    iv. If creation of RTUs is not determined to be necessary and/or feasible, consider alternative solutions to provide residential levels of care in IDOC facilities.

d. Inpatient Care

    i. Determine total SMI population requiring Inpatient care.

    ii. Determine location of SMI population within IDOC requiring Inpatient Care.

    iii. Explore options for outsourcing Inpatient-level care to entity or agency other than IDOC.

        1. Identify potential locations and providers.
        2. Determine fiscal impact of potential options for outsourced Inpatient-level care.
        3. Propose options for outsourced Inpatient-level care to IDOC Executive Staff, Governor's Office of Management and Budget (GOMB) and Governor's Office for approval.

Andrews v. Rauner, Plaintiff's Production 12