IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Kelli Andrews, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 18-cv-1101-SEM-TSH |
| | ) | |
| Bruce Rauner *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S PROPOSED REPLY IN SUPPORT OF MOTION TO COMPEL**

Plaintiff, through her undersigned counsel, submits this reply in support of her Motion to Compel (ECF 50) and in reply to the Government Defendants' Response in opposition (ECF 55) to same.

Defendants' Response is galling. Defense counsel nowhere tries to justify or explain why he failed to meet-and-confer in with Plaintiff's counsel regarding the discovery that is now dispute. To the contrary, defense counsel seeks to leverage his failure to cooperate, repeatedly asserting objections that could have, and should have, been resolved in the course of any normal meet-and-confer process. That tactic is flatly improper, and the Court should not countenance it here. Plaintiff briefly responds to defense counsel's most egregious arguments:

**The *Rasho* litigation does not foreclose Plaintiff's claims**. In their Response, the Defendants argue that because the *Rasho* litigation is ongoing, Plaintiffs are foreclosed from seeking discovery to show that Tiffany Rusher was injured by top-level management decisions about how to treat mentally ill IDOC inmates. (*See, e.g.*, ECF 50 at 4 ("Whether the [IDOC] provided adequate mental health [care] to its offender population is an issue for the *Rasho* litigation . . . ."); *id.* at 6 (opposing discovery into Governor Rauner's communications about lack of inpatient care for mentally ill IDOC inmates on the grounds that "the request improperly

1

seeks documents unrelated to this case; the pertinent issue is the care that Tiffany Rusher received or did not receive.").)

This position simply ignores what this case is about. Plaintiff must prove not only that Tiffany Rusher was treated wrongly, but why she was mistreated and who is legally culpable for that mistreatment. Plaintiff's complaint alleges that top-level management decisions, including decisions by Governor Rauner and IDOC Director John Baldwin, led to the adoption of policies that violated Tiffany Rusher's rights and injured her. Plaintiff is entitled to prove those allegations through discovery. The fact that such top-level management choices may have injured other inmates is irrelevant; Plaintiff is still entitled to prove that they injured her daughter. Defendants therefore cannot oppose discovery into their management-level decisions on the grounds that such decisions also impacted other inmates in addition to Tiffany Rusher.

Alternatively, if Defendants are arguing that the *Rasho* litigation somehow precludes claims about their management-level decisions, settled case law provides the opposite: a class action for injunctive relief under Rule 23(b)(2), like *Rasho*, does ***not*** preclude subsequent individual claims for damages. *See Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867 (1984); *Crowder v. Lash*, 687 F.2d 996, 1009 (7th Cir. 1982); *In re Jackson Lockdown/MCO Cases*, 568 F. Supp. 869, 892 (E.D. Mich. 1983) ("[E]very federal court of appeals that has considered the question has held that a class action seeking only declaratory and injunctive relief does not bar subsequent individual suits for damages based on the same or similar conditions." (collecting cases, including *Crowder*)).

**Defendants' "scope" objections are waived because defense counsel refused to meet and confer**. Defense counsel repeatedly objects that the scope of Plaintiff's requests is too broad; essentially, the argument seems to be that because the Defendants are large entities,

asking them to locate records pertinent to this case would be like searching for a needle in a haystack. (*See* ECF 55 at 2-4; 7, 8.) There are multiple problems with this argument.

First, it largely misconstrues what Plaintiff is asking for. As Plaintiff explained with respect to Interrogatories 2 and 3, for example, Governor Rauner and Director Baldwin refused to identify persons involved with making the management-level decisions that Plaintiff alleges, yet both those defendants referred to Ms. Rusher's medical and prison files, which will never identify such persons. (*See* ECF 50 at 6.) The witnesses to decision-making by Governor Rauner and Director Baldwin are likely to be a handful of persons who are readily identifiable.

More broadly, the objection betrays a simple refusal to conduct even a minimal investigation that is required of defense counsel. Plaintiff's RFP 21, for example, asks for communications relating to Tiffany Rusher's commitment proceedings. Defendants object that this request is unduly burdensome because "[t]o locate every potentially responsive communication, Defendants would need to search the email accounts of every employee of multiple state agencies to see if they concern Tiffany Rusher's discharge to the [DHS]." (ECF 55 at 8.) That is nonsense, of course. In all likelihood Ms. Rusher's DHS discharge was undertaken by a handful of employees; a competent attorney representing the Defendants would quickly identify such persons, interview them to determine who had responsive documents, and then gather and produce it. That is what identifying document custodians is all about. Indeed attorneys representing corporate parties, including government agencies, do this every day; it is one of the more basic functions of corporate representation. Defense counsel's suggestion that that such requests would require a massive canvass of thousands of employees is borne either of inexperience, incompetence, or a bad faith refusal to cooperate in the discovery process.

3

Finally, of course, to the extent a discovery request would actually impose a significant burden, the meet-and-confer process is *the* tool that parties should use to resolve such issues. But defense counsel pointedly refused to engage in the meet-and-confer process, despite Plaintiff counsel's repeated attempts to do so. Having refused to engage in such a process, it is flatly improper for defense counsel now to assert that requests would require an unduly burdensome response.

**Interrogatories 15-18**. Defendants refused to respond to these interrogatories on grounds that "hospital level health care" was vague. (ECF 55 at 4-5.) As Defendants acknowledge, however, Plaintiff provided a definition to the term in her discovery enforcement letter. (*Id. See* ECF 50-2 Ex. 10 at 7 (enforcement letter offering definition of term).) That, again, is the entire point of the meet-and-confer process. It is axiomatic that "if a party believes that the request is vague, that party should attempt to obtain clarification by conferring with the requesting party prior to objecting on this ground." *Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 289 (N.D. Tex. 2017) (quotation omitted). Defendants take the position that they "should not be required" to follow this basic rule, and thus they should be entitled to refuse to respond to the interrogatory because it contains a "term of art." (ECF 55 at 5.) That position is entirely unsupported, and indeed it is indefensible. Defendants must respond to Plaintiff's discovery.

**Baldwin RFP 7**. This RFP asked for production of Governor Rauner's communications regarding mentally ill inmates and solitary confinement. The request was made to John Baldwin in his official capacity pursuant to Plaintiff's ADA and RA claims, and Defendants objected that as director of the IDOC Baldwin does not have access to such documents. (ECF 55 at 6.) But an official capacity suit against the director of the IDOC is a suit against the state. *See Kentucky v.*

*Graham*, 473 U.S. 159, 165 (1985) (official capacity claims against state employees are actually claims against the state). Defendants offer no support for their argument that "[t]he Director of the [IDOC] is not the same legal entity as the State of Illinois"—to the contrary, in an official-capacity suit like this one, they are the same thing. There is simply nothing improper about Plaintiff's request.

*   *   *

The objections reviewed above are among the more egregious arguments asserted by defense counsel, and arise particularly from defense counsel's refusal to meet and confer with Plaintiff's counsel regarding the discovery that is now in dispute. Defense counsel's refusal to engage in a good-faith meet-and-confer process should result in a waiver of all Defendants' objections; but in any event Plaintiff's Motion to Compel adequately addresses the remainder of the Defendants' arguments. For the reasons stated in that motion and in this memorandum, Plaintiff's Motion to Compel should be granted in its entirety.

Dated: June 7, 2019               Respectfully submitted

                                   */s/ Stephen H. Weil*

Stephen H. Weil – steve@weilchardon.com          Alan Mills - alan@uplcchicago.org
Alexis G. Chardon – ali@weilchardon.com          Elizabeth Mazur - liz@uplcchicago.org
Weil & Chardon LLC                                Nicole Schult - Nicole@uplcchicago.org
333 S. Wabash Ave., Suite 2700                    Uptown People's Law Center
Chicago, IL 60604                                 4413 North Sheridan Rd.
312-585-7404                                      Chicago, Illinois 60640
                                                  Tel: (773) 769-1411
                                                  Fax: (773) 769-2224

                                                  *Attorneys for Plaintiff*