**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION**

| | | |
|---|---|---|
| KELLI ANDREWS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18-cv-1101 |
| | ) | |
| BRUCE RAUNER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Plaintiff's Motion to Compel

Discovery Responses From Government Defendants (d/e 50) (Motion).  For the

reasons set forth below, the Motion is ALLOWED in part and DENIED in part.

## BACKGROUND

Plaintiff Kelli Andrews is the mother and administrator of the estate of her

deceased daughter, Tiffany Rusher.  Rusher was mentally ill.  Rusher was

incarcerated in the Defendant Illinois Department of Correction's (Department or

IDOC) Logan Correctional Center (Logan) from March 2013 until May 2016.

Andrews alleges that the Defendants knew Rusher needed inpatient mental

health treatment, but consciously chose to deny her that care.  Instead the

Defendants subjected Rusher to repeated and extended periods of solitary

confinement.  The solitary confinement included eight months in a crisis cell

under constant, around the clock observation.  The crisis cell had only a metal toilet and a raised cement slab on which to sleep, but no furniture.  While in the crisis cell Rusher had only a smock to wear with no other clothing.  Andrews alleges that throughout the solitary confinement and confinement in the crisis cell, Rusher was not allowed to participate in services provided to other inmates. The lack of medical care, repeated solitary confinement, extended confinement in the crisis cell, and denial of participation in services at Logan is hereinafter referred to as the Mistreatment.  Andrews alleges that the Mistreatment caused Rusher's mental condition to deteriorate and resulted in repeated episodes of self-harm and attempted suicides.  See Complaint (d/e 1), ¶¶ 17-30.

Andrews alleges claims against the individual Defendants former Illinois Governor Bruce Rauner, Acting Director of the Department John R. Baldwin, Department Central Regional Psychologist Supervisor Jeff Sim, Logan Chief Psychologist Dr. He Yuan, and Logan Mental Health Professional Brian Richardson; Wexford Health Sources, Inc. (Wexford), Department's contractor to provide medical care at Logan; and the Department.  Complaint, ¶¶ 11-17. Andrews alleges § 1983 claims against Rauner, Baldwin, Sim, Yuan, Richardson, and Wexford for violation of Rusher's Eighth Amendment right against cruel and unusual punishment. Andrews brings the § 1983 claims against the individual Defendants in their individual capacities.  Complaint, Count I.  Andrews alleges

claims against Rauner, Baldwin, and the Department for violations of Rusher's rights under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132 (Count II) and Rehabilitation Act (RA), 29 U.S.C. § 794 (Count III). Andrews brings the claims in Counts II and III against Rauner and Baldwin in their official capacities. Complaint Counts II and III. Current Illinois Governor J.B. Pritzker and current Department Director Rob Jeffreys are also proper party defendants to the claims brought against Rauner and Baldwin, respectively, in their official capacities. Fed. R. Civ. P. 25(d); see Response to Plaintiff's Motion to Compel Discovery Responses (d/e 55), at 1 n.1. The State of Illinois (State) and the Department are the real Defendants in Counts II and III because actions against a state official in his official capacity is an action against the entity of which the officer is an agent. Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). In this case, Governor Rauner was the highest official of the State, and Baldwin was the highest official in the Department.

On December 6, 2019, Andrews propounded interrogatories and requests to produce on Defendants Baldwin, Pritzker, Rauner, the Department, and the State (Responding Defendants). On February 25, 2019 and March 11, 2019, the Responding Defendants responded and objected to some discovery requests. Andrews found the responses inadequate. The parties have communicated with each other regarding their differences and disputes regarding the discovery

requests and the responses but have not resolved them.  Andrews has, thus,

brought this Motion.  The Court addresses the disputed discovery requests

below.

## INTERROGATORIES

Interrogatory No. 2 to all Defendants

Interrogatory No. 2 asked:

Identify by name and address all persons who have knowledge of
facts that relate to any of the claims or defenses in this action,
including but not limited to all persons who are not listed in
Defendant's Rule 26 Initial Disclosures.  If you answer this
Interrogatory by incorporating Documents, please list under oath the
identities of any and all additional persons not listed in these
Documents, or, if there are no such additional Persons with
knowledge responsive to the Interrogatory, please so state under
oath.

Motion, Exhibit 1, Plaintiff's December 6, 2019 Rule 33 Discovery to All

Defendants (Interrogatories to All Defendants), Interrogatory No. 2.

The Responding Defendants objected that the request was overly broad,

unduly burdensome and not proportionate to the needs of the case.  The

Responding Defendants objected that it was unreasonably burdensome to make

them try to identify every person who might have knowledge that may relate to

any of the claims or defenses alleged in the Complaint.  Motion, Exhibit 6,

Defendants' Combined Objections to Plaintiff's December 6, 2018 Interrogatories

(Interrogatory Objections), Objections to Interrogatory 6.  The Responding

Defendants then referred Andrews to the Defendants' initial disclosures and documents produced in discovery.  <u>Motion</u>, Exhibit 7, <u>Official Capacity Defendants' Response to Plaintiff's December 6, 2018 Interrogatories (Official Capacity Interrogatory Response)</u>, Response to Interrogatory 2; <u>Motion</u>, Exhibit 8, <u>Defendant Baldwin's Response to Plaintiff's December 6, 2018 Interrogatories (Baldwin Interrogatory Response)</u>, Response to Interrogatory 2; <u>Motion</u>, Exhibit 9, Defendant Rauner's Response to Plaintiff's December 6, 2018 <u>Interrogatories (Rauner Interrogatory Response)</u>, Response to Interrogatory 2. The documents included Rusher's personal prison file along with copies of Department written policies (Produced Documents).  <u>Motion</u>, at 6.

Providing documents in lieu of answers to an interrogatory is proper if the burden of securing the information from the documents is substantially the same for either party.  Fed. R. Civ. P. 33(d).  The Court finds that providing the documents was an appropriate way to answer the interrogatory with respect to responsive information that would reasonably be expected to be included in the Produced Documents.  The Produced Documents relate to Rusher's medical treatment at Logan, including any mental health treatment.

The Produced Documents would not be likely to contain responsive information related to other allegations in the Complaint.  Andrews alleges § 1983 claims against Governor Rauner, Director Baldwin, and Chief Sim

(Management Defendants) for causing Rusher to be subjected to the Mistreatment in violation of her rights. To prevail on such a claim against each Management Defendant, Andrews must show that: (1) each implemented policies and procedures at Logan that created a substantial risk that the Mistreatment would occur; (2) each personally knew that such policies and procedures at Logan created a substantial risk that the Mistreatment would occur; and (3) each acted with a sufficiently culpable state of mind, "[I]t is enough to show that the defendants knew of a substantial risk of harm to the inmate and disregarded the risk." Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011) (quoting Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005)). The ADA and RA claims for damages against the Department and the State require proof that Department and the State were deliberately indifferent to subjecting Rusher to the Mistreatment. Andrews must prove that these Defendants knew a harm to a federally protected right was substantially likely and failed to act upon that likelihood. Lacy v. Cook County, 897 F.3d 847, 862-63 (7th Cir. 2018)

The Produced Documents only concerned Rusher's treatment at Logan. The Produced Documents might be sufficient for the ADA and RA claims, but not the § 1983 claims. The Produced Documents are not likely to contain information regarding each Management Defendant's knowledge or intent.

The Court, therefore, overrules the objections in part and directs the Responding Defendants to identify any individual who would have knowledge of whether any Management Defendants: (1) implemented policies and procedures at Logan affecting the treatment of mentally ill inmates; (2) personally knew whether policies and procedures at Logan affecting the treatment of mentally ill inmates created a substantial risk of harm to mentally ill inmates; and (3) disregarded the risk that such harm would occur. The individuals so identified in the additional response to this interrogatory required by this paragraph are hereinafter referred to the as the Supplemental Identified Individuals.

Interrogatory 3 to all Defendants

Interrogatory No. 3 asked:

For each Person with knowledge responsive to the previous Interrogatory, please describe with particularity any categories of facts known by each such Person relating to the claims or defenses in this action, including all categories of facts about which the Person may be competent to testify at trial. If this Interrogatory is answered by incorporating Documents, please state under oath whether there are any categories of facts known to any witness relating to the claims or defenses in this action which are not reflected in the Documents upon which you rely; in the event you fail to do so, Plaintiffs will assume the substance of the witnesses' testimony is strictly limited to what is contained in such Documents.

Interrogatories to All Defendants, Interrogatory No. 3. The Responding Defendants objected that the interrogatory was vague, overly broad, unduly burdensome, and not proportional to the claims in this case. Interrogatory

Objections, Response to Interrogatory 3.  The Responding Defendants further referred Andrews to the Produced Documents. Official Capacity Interrogatory Response, Response to Interrogatory 3; Baldwin Interrogatory Response, Response to Interrogatory 3; Rauner Interrogatory Response, Response to Interrogatory 3.

For the reasons stated in the analysis of Interrogatory No. 2, the documents would not be likely to provide responsive information with respect to the Supplemental Responsive Individuals.  The Court, therefore, overrules the objection in part and directs the Defendants to provide the facts that each Supplemental Identified Individual has knowledge related to whether any Management Defendants:  (1) implemented policies and procedures at Logan affecting the treatment of mentally ill inmates; (2) personally knew whether policies and procedures at Logan affecting the treatment of mentally ill inmates created a substantial risk of harm to mentally ill inmates; and (3) disregarded the risk that such harm would occur.

Interrogatory 8 to All Defendants

Interrogatory No. 8 asked:

Please state whether any Defendant or the employee or agent of any Defendant acted inconsistently with any of the policies and practices of the Logan Correctional Center, the [Department], or Wexford at any time during the events described in the complaint. If the answer is in the affirmative, please identify: (a) particular policy or practice

that was violated; (b) the individual(s) who violated each such policy or practice; and (c) any discipline that resulted from that violation.

<u>Interrogatories to All Defendants</u>, Interrogatory No. 8.  The Responding Defendants objected because the interrogatory was overly broad, unduly burdensome, and not proportional to the needs of the case.  <u>Interrogatory Objections</u>, Response to Interrogatory 8.  The objection is sustained.  The interrogatory asks about any employee or agent who acted inconsistently with any policy or practice of Logan, the Department, or Wexford at any time during the events described in the Complaint, presumably between March 2013 and May 2016.  The Department, Logan, and Wexford have myriad policies and practices that are irrelevant to this case.  Asking for detailed information about any violation of any such policy is clearly unduly burdensome and not proportionate to the needs of this case.  The Responding Defendants' objections to Interrogatory No. 8 is sustained.

<u>Interrogatory No. 15</u>

Interrogatory No. 15 asked:

State the date on which you became aware that Illinois had no provision to provide hospital level mental health care to prisoners confined in the [Department].

<u>Interrogatories to All Defendants</u>, Interrogatory No. 15.  Responding Defendants objected because the phrase "hospital level mental health care" was vague, the interrogatory assumed that Illinois had made no such provision, the interrogatory

was irrelevant and overbroad in time and scope, and the interrogatory was irrelevant. Interrogatory Objections, Response to Interrogatory 15. Andrews responded that the term "hospital level mental health care" should be given the same meaning as the term "Inpatient Mental Health Services" in the agreed upon consent order entered May 8, 2013 (Rasho Order) in the case of Rasho v. Walker, C. D. Ill. Case No. 07-1298 docket entry 132. Motion, Exhibit 10, Letter dated March 5, 2019 from Plaintiff's Counsel to Defense Counsel, at 7. Under the Rasho Order, the term "Inpatient Mental Health Services" means;

> Intensive, inpatient hospitalization during the period when an offender's mental health needs exceed the treatment capabilities of IDOC. In such instances, offenders shall be returned to a less intensive treatment environment at the earliest clinically appropriate time.

Rasho Order, at 2. The Responding Defendants did not respond further after Andrews' clarification of the term "hospital level mental health care."

Responding Defendants' vagueness objection is mooted by the clarification that "hospital level mental health care" has the same meaning as "Intensive Mental Health Services" in the Rasho Order. The Department is party to the Rasho case, agreed to the entry of the Rasho Order, and so, agreed to the definition of "Intensive Mental Health Services".

The interrogatory is relevant for purposes of discovery. Andrews must prove that each Management Defendant implemented policies that created a

substantial risk that the Mistreatment would occur; knew the policies created that substantial risk; and had sufficient culpable intent.  If a Management Defendant knew between March 2013 and May 2016 that Illinois had no provision to provide Intensive Mental Health Services to inmates in the custody of the Department, that fact may be relevant evidence or lead to relevant evidence to prove one or more of the elements of the claims against the Management Defendants.  The relevance objection is overruled.

The temporal objection is allowed in part.  The period during which Andrews asserts Illinois had no provision to provide Intensive Mental Health Services to inmates confined in the Department should  be limited to March 1, 2013 to May 31, 2016 to cover the period when Rusher was incarcerated in Logan.

The objection that the interrogatory assumes facts is overruled.  The individual Responding Defendants can respond even if the interrogatory assumes facts.  The response would not need to constitute some kind of admission of Andrews' assertions of assumed facts in the interrogatory.  Each Responding Defendant, other than the State or Department, can respond in a fashion substantially similar to the two examples below:

1. I am not aware that Illinois had no provision between March 2013 and May 2016 to provide Intensive Mental Health Services to prisoners confined to the Department; or

2. I became aware on [state the date] that Illinois had no provision between March 2013 and May 2016 to provide Intensive Mental Health Services to prisoners confined to the Department.

The Court's example answer no. 1 is sufficient if the statement in the interrogatory is false and Illinois had provision between March 2013 and May 2016 to provide Intensive Mental Health Services to prisoners confined to the Department. The example answer no. 1 is also sufficient if a Responding Defendant is not aware of whether Illinois had provision between March 2013 and May 2016 to provide Intensive Mental Health Services to prisoners confined to the Department. The interrogatory only asks for the date a person became aware. The interrogatory does not require any additional answer regarding the accuracy of the person's awareness.

The Court cannot see how the Department, or the State can answer the interrogatory. The interrogatory asks for the date of which "you became aware." The interrogatory uses the personal pronoun "you" which applies to an individual, not a state or organization. The interrogatory also does not identify who in the Department or the State had to become "aware" to make the Department or

State "aware."  The Court will not require the Department or the State to answer Interrogatory No. 15.

Interrogatory No. 16

Interrogatory No. 16 asked:

State the date on which you became aware that there were prisoners confined in the [Department] who were in need of hospital level mental health care.

Interrogatories to All Defendants, Interrogatory No. 16.

The Responding Defendants objected that the term hospital level mental health care was vague, the interrogatory was over broad because it was not limited in time and was not limited to knowledge of Rusher's condition.

Interrogatory Objections, Response to Interrogatory 16.  The vagueness objection was mooted by Andrews' clarification that hospital level mental health care had the same meaning as Intensive Mental Health Services defined in the Rasho Order.  The objection to requests for information about inmates besides Rusher is overruled.  As explained above, a Management Defendant may be liable if he knowingly implemented policies that created a substantial risk of harm to inmates and had the sufficient culpable mind.  Roe v. Elyea, 631 F.3d at 857.  The effect of care provided may be relevant to show the risk of harm or the knowledge of a Management Defendant.  The time objection is sustained in part.

The Responding Defendants will only be required to answer to the relevant period of March 1, 2013 to May 31, 2016.

The objection that the interrogatory assumes facts is overruled. The individual Responding Defendants can respond even if the interrogatory assumes facts. The response would not need to constitute an admission of Andrews' assertions in the interrogatory. Each Responding Defendant, other than the Department or the State, can respond in a fashion substantially similar to the two examples below:

1.    I am not aware that there were prisoners confined in the custody of the Department between March 2013 and May 2016 who needed Intensive Mental Health Services; or

2.    I became aware on [state the date] that there were prisoners confined in the custody of the Department between March 2013 and May 2016 who needed Intensive Mental Health Services.

As explained in connection with Interrogatory 15, an answer that the individual was not aware is not an admission of any assumed fact. For the reasons discussed above concerning Interrogatory 15, the Department and the State are not required to respond to Interrogatory 16.

Interrogatory No. 17

Interrogatory No. 17 asked:

Regarding the previous interrogatory, describe each action You took to make hospital level mental health care available to prisoners confined in the [Department] who were in need of such care.

Interrogatories to All Defendants, Interrogatory No. 17. The Responding Defendants objected that the term hospital level mental health care is vague, the interrogatory assumes the Responding Defendants were aware that Department prisoners needed such care, the request was overly broad because it did not contain a time limitation and because the request was not limited to Rusher. The vagueness objection is moot because Andrews explained that the term means Intensive Mental Health Services as defined in the Rasho Order. The objections that the interrogatory assumes facts is overruled. The objection does not assume facts. If a Responding Defendant states in his response to Interrogatory No. 16 that he was not aware that Department prisoners needed Intensive Mental Health Services, he can provide a response consistent with that lack of knowledge. If a Responding Defendant answered Interrogatory No. 16 that he was aware, he can address what he did personally regarding the situation.

The overbreadth objection is sustained in part as the answer is limited to actions taken between March 1, 2013 and May 31, 2016 when Rusher was in Logan. The objection is otherwise overruled. The question of what each

Responding Defendant did is relevant to whether each had the authority to implement policy, whether each implemented policy, whether each knew that such policy created a substantial risk of harm to mentally ill inmates, and whether each had the requisite culpable mind. The discovery on these elements of the claim go beyond the treatment of Rusher alone. The individual Responding Defendants are ordered to answer the interrogatory with respect to March 1, 2013 to May 31, 2016 and with the term hospital level mental health care having the same meaning as Intensive Mental Health Services in the Rasho Order. The Department and the State are not required to answer this interrogatory for the same reason it is not required to answer Interrogatory 15.

Interrogatory No. 18

Interrogatory No. 18 asked:

State all reasons (if any) that prisoners confined in the [Department] who were in need of hospital level of mental health care were not transferred to one of the state mental health hospitals operated by the Illinois Department of Human Services.

Interrogatories to All Parties, Interrogatory No. 18. The Responding Defendants objected to the term hospital level of mental health care as vague, the interrogatory assumes the Responding Defendants were aware of prisoners who needed such care, and because the interrogatory was overbroad in that it does not contain a time limitation and it is not limited to Rusher's treatment.

Interrogatory Objections, Response to Interrogatory 18.

The vagueness objection is moot since Andrews explained that the definition of Intensive Mental Health Services in the Rasho Opinion applied to the term hospital level of mental health care.  The objection that the interrogatory assumes some awareness by the Responding Defendants is overruled.  The interrogatory asks for reasons that a set of facts existed.  The interrogatory did not ask whether a Responding Defendant was aware of that set of facts.  If a Responding Defendant was not aware of the treatment of mentally ill prisoners, he may so state.  If he was aware of the treatment  of mentally ill inmates but disagrees with the assertion in the interrogatory regarding treatment provided or not provided to such inmates, he may so state.  If he is aware and agrees with assertion in the interrogatory regarding the treatment provided or not provided, he may state any reasons that he knows.

The overbreadth objection is sustained in part. The answer is limited to the period from March 2013 to May 2016.  The rest of the overbreadth objection is overruled for the reasons discussed above with respect to the other interrogatories.

Unlike Interrogatories 15-17, the Department and the State are required to answer this interrogatory.  The interrogatory does not ask for an individual's awareness.  The interrogatory asks for reasons for a not transferring inmates in

the custody of the Department.  The Department and the State can respond similarly to the individual Responding Defendants.

Interrogatory No. 19

Interrogatory No. 19 asks for personal financial information from the individual Responding Defendants for purposes of pursuing punitive damages. Interrogatories to All Parties, Interrogatory No. 19.  The Responding Defendants objected that the interrogatory was premature.  Andrews has no objection to delaying the answer to this interrogatory.  The obligation to answer is delayed until after the Court rules on any summary judgment motions.  If a claim against an individual Responding Defendant survives summary judgment, or if a summary judgment motion is not filed with respect to any claim against an individual Responding Defendant, Andrews may re-serve this Interrogatory within 14 days of the entry of the opinion on summary judgment (or the passage of the deadline to file summary judgment if no summary judgment motion is filed) on such Responding Defendants and such Responding Defendants shall respond to this Interrogatory within 21 days of service.

Requests to Produce

Andrews seeks an order compelling discovery on requests addressed to Baldwin (Baldwin Request) and separate requests addressed to all Defendants (All Defendants Request).

Andrews asks initially that Defendants be required to comply with Rule 34(a)(2)(C) and amend all responses to all requests by stating whether any responsive materials are being withheld pursuant to an objection, and if so, the part of the request to which the withheld materials would be responsive. Fed. R. Civ. P. 34(a)(2)(C). The Rule requires a responding party to provide this information. Defendants are directed to amend their responses to all production requests to provide this information.

The Court now addresses the Motion's request to compel responses to specific production requests.

Baldwin Request No. 1

Baldwin Request No. 1 asked for the following documents:

All Documents concerning Tiffany Rusher that were generated and/or maintained by IDOC at any time pursuant to the assessment plan described in September 20, 2013 memorandum from IDOC to Dr. Raymond Peterson (a copy of which is produced in this matter as Andrews v. Rauner Plaintiff's Production 000008-000012).

Motion, Exhibit 2, Plaintiff's December 5, 2018 Requests for Production to Defendant Baldwin in his Official Capacity (Baldwin Production Request), Request 1. Baldwin objected on the grounds of vagueness, overbreadth, and relevance. Baldwin also indicated that due to the vagueness of the request, it might seek privileged documents, although Baldwin was not withholding any documents on a claim of privilege at the time of the response. Baldwin thereafter

referred Andrews to Rusher's treatment records and other Produced Documents. Motion, Exhibit 4, Defendant Baldwin's Response to Plaintiff's December 5, 2018 Requests for Production of Documents (Baldwin Production Response), Response to Request 1.

Andrews complains that the assessment plan referenced in the request required the Department to produce more responsive documents concerning Rusher. Andrews has attached the assessment plan to the Motion, Exhibit 14, Memorandum dated September 30, 2013, Subject: IDOC Facility and Staffing Assessment Plan (Assessment Plan). The Assessment Plan was a facility and staffing assessment plan for the Department's care for seriously mentally ill (SMI) inmates. The Assessment Plan was a part of the process of developing a possible consent decree in the Rasho case. The Court reads Baldwin Request No. 1 generated or maintained pursuant to the Assessment Plan in Exhibit 14. It is unclear to the Court that Department would have either generated or maintained documents concerning Rusher or any particular inmate pursuant to the Assessment Plan. The response should also be limited to documents generated and/or maintained between the date of the Assessment Plan September 20, 2013 and May 31, 2016. If Baldwin or the Department has such documents, it should produce them or identify any document withheld under a claim of privilege on a properly prepared privilege log that meets the

requirements of Rule 26(b)(5).  Fed. R. Civ. P. 26(b)(5).  If no documents

concerning Rusher was generated or maintained pursuant to the assessment

plan, the Responding Defendants should so state.

Baldwin Request No. 2

Baldwin request No. 2 asks for the following documents:

All inpatient lists that were generated and/or maintained by IDOC at
any time pursuant to the assessment plan described in the
September 20, 2013 memorandum from IDOC to Dr. Raymond
Patterson (a copy of which is produced in this matter as Andrews v.
Rauner, Plaintiff's Production 000008-000012). This includes but is
not limited to inpatient lists that reference Tiffany Rusher.


Baldwin Production Request, Request 2.  Baldwin objected on grounds that the

request was overly broad and unduly burdensome.  Baldwin stated that

information about other inmates was irrelevant and duplicative of the Rusher's

mental health medical records already produced.  Baldwin also objected that the

request was argumentative in that it assumed Rusher needed inpatient care.

Baldwin also objected to disclosing confidential information about non-parties.

Baldwin then referred Andrews to the Produced Documents.  Baldwin Production

Response, Response to Request 2.

Baldwin's objections are sustained in part to the extent that the request is

not limited by time.  The lists to be produced are limited to the period from the

date of the assessment plan, September 20, 2013, to May 31, 2016.  The

objections otherwise are overruled. The inpatient lists are relevant for discovery

purposes to whether Department policies created a substantial risk of harm to

inmates. As explained above, the risk of harm to inmates from Department

policy is an element in Andrews' claims. Baldwin and the Department are

directed to produce the responsive documents limited to the time period listed

above. These documents are confidential subject to the HIPAA Qualified

Protective Order (d/e 25).

<u>Baldwin Requests Nos. 3-6</u>

Baldwin requests Nos. 3-6 ask for the following documents:

3. Documents that reference the identify (sic) of individuals in the
Female SMI Caseload in need of Inpatient Level of Care (LOC) as of
"circa December 6, 2013" (*see Andrews v. Rauner*, Plaintiff's 0017),
including but not limited to documents that reference Tiffany Rusher.

4. Documents that reference the identify (sic) of individuals in the
Female SMI Caseload in need of Inpatient Level of Care (LOC) as of
"circa January 27, 2014" (see Andrews v. Rauner, Plaintiff's
Production 000129- 000130), including but not limited to documents
that reference Tiffany Rusher.

5. Documents that reference the identify (sic) of individuals in the
Female SMI Caseload in need of Inpatient Level of Care (LOC) as of
April 3, 2014 (see Andrews v. Rauner, Plaintiff's Production 000254),
including but not limited to documents that reference Tiffany Rusher.

6. Documents that reference the identify (sic) of individuals in the
Female SMI Caseload in need of Inpatient Level of Care (LOC) as of
February 13, 2015 (see Andrews v. Rauner, Plaintiff's 0279),
including but not limited to documents that reference Tiffany Rusher.

<u>Baldwin Production Request</u>, Requests Nos. 3-6.  Andrews inadvertently used the word "identify" in these requests when she meant to use the word "identity." <u>See</u> <u>Motion</u>, at 17-18.

Baldwin objected on grounds that the requests were vague.  Baldwin also objected that the requests were overly broad and unduly burdensome.  Baldwin stated that information about other inmates was irrelevant and duplicative of the Rusher's mental health medical records already produced.  Baldwin also objected that the requests were argumentative in that they assumed Rusher needed inpatient care.  Baldwin also objected to disclosing confidential information about non-parties.  Baldwin then referred Andrews to the Produced Documents.  <u>Baldwin Production Response</u>, Response to Requests 3-6.

The objections are overruled.  The requests are quite specific.  They are not vague.  The inpatient lists are relevant for discovery purposes to whether Department policies created a substantial risk of harm to inmates.  As explained above, the risk of harm to inmates from Department policy is an element in Andrews' claims.  Baldwin and the Department are directed to produce the responsive documents.   These documents are confidential subject to the HIPAA Qualified Protective Order.

<u>Baldwin Request to Produce No. 7</u>

Baldwin Request to Produce No. 7 asked for the following documents:

All Communications to and/or from Governor Rauner and/or his agents regarding the lack of inpatient care provided to Illinois prisoners between 1/1/2013 and 5/31/2016, including but not limited to communications referenced in the document produced at *Andrews v Rauner*, Plaintiff's Production 000290-000291.

<u>Baldwin Production Request</u>, Request No. 7.  Andrews states that the document cited in the request and produced in discovery stated, in part, "The March [2015 settlement] conference included extensive discussion of the efforts made to secure inpatient beds, including a request from the Governor for funding." <u>Motion</u>, at 19 n.3.  Baldwin objected that the documents were outside of his possession, custody, and control; are not relevant; and are overly broad and unduly burdensome. <u>Baldwin Production Response</u>, Response to Request 7.

The objections are overruled.  Baldwin and Rauner are being sued in their official capacity, which is a suit against the State and the Department.  Current Governor Pritzker is also a proper party to this case.  Fed. R. Civ. P. 25(d). Under these circumstances, Baldwin in his official capacity has access to the responsive documents.  The documents are also relevant and proportional to the needs of this case.  Andrews must prove that Governor Rauner personally implemented policy that he knew created a substantial risk of harm to inmates and acted with the requisite culpable mind.  The documents sought are directly

related to whether he personally implemented policies regarding the treatment of

mentally ill inmates and his personal knowledge of those policies.

All Defendants Request No. 5

All Defendants Request to Produce No. 5 asked for the following:

All communications pertaining to Tiffany Rusher, including but not
limited to: emails, memos, notes, and "Utilization Review" or
"Collegiate Review" communications.

Motion, Exhibit 3, Plaintiff's December 6, 2018 Rule 34 Requests to All

Defendants (All Defendants Production Request), Request No. 5.

Responding Defendants objected on the grounds that the request is vague,

overly broad in time and scope, and not proportional to the needs of the case.

Defendants objected that the request seeks irrelevant information and would

require reviewing all communications throughout Illinois government.

Defendants further stated that the production might require disclosure of

documents subject to attorney work product and attorney client privileges.

Responding Defendants also referred Andrews to the Produced Documents and

one additional document. Motion, Exhibit 5, Defendants' Response to Plaintiff's

December 6, 2018 Requests for Production Documents (All Defendants

Production Response), Response to Request 5.

The objection based on the possibility of requiring production of privileged

documents is overruled.  Parties do not need to object to requests for privileged

documents.  Parties are only required to produce non-privileged documents and may withhold privileged documents and provide a privilege log that meets the requirements of Rule 26(b)(5).  <u>See</u> Fed. R. Civ. P. 26(b)(1) and (b)(5).

The time limitation objection is sustained in part.  The Court limits the request to the period from March 1, 2013 to May 31, 2016 while Rusher was incarcerated at Logan.  The objection regarding undue burden is sustained in part.  The Court agrees that the locations to be searched for responsive documents within Illinois government facilities should be limited.  The Responding Defendants are directed to produce all communications that mention Rusher between March 1, 2013 and May 31, 2016, that were sent to, from, and within the following facilities, agencies, and offices:  the office of the Governor of Illinois, including all staff in that office; the offices of Defendants Baldwin and Sim including all direct reports and support staff of Baldwin, Sim, and their direct reports; Logan; and McFarland Mental Health Center (McFarland) operated by the Department of Human Services.  The Court finds this to be an appropriate portion of Illinois government to search for documents that is proportional to the needs of this case.  Such communications may be relevant to the knowledge of the Department representatives and the individual Responding Defendants about the risk of harm to Rusher caused by the application of Department policies and

practices.  Any responsive documents withheld on a claim of privilege must be identified on a privilege log that meets the requirements of Rule 26(b)(5).

All Defendants Request Nos. 7 and 8

These requests asked for floor plans of Logan.  Defendants have agreed to produce these documents.

All Defendants Request No. 14

All Defendants Request to Produce No. 14 asked for the following:

All physical evidence in your possession relating to Tiffany Rusher.

All Defendants Production Request, Request 14.  Responding Defendants objected because the request was vague, overly broad in time and scope, disproportional to the needs of the case, seeks irrelevant information, and is unduly burdensome.  All Defendants Production Response, Response to Request 14.

The objections are sustained in part.  The Responding Defendants are ordered to produce any physical evidence that they may use at trial that has not already been produced under Rule 26(a)(A)(ii).  The Court otherwise sustains the objection that the request is vague.  The request could mean any tangible object that was in any way related to Rusher.  Such a request would be overly broad and not proportional to the needs of the case.  The request could mean a more limited subset of tangible objects related to Rusher that would be evidence in this

case.  This second interpretation is more limited but is still vague because the request imposes on the Responding Defendants to decide what objects Andrews would consider to be evidence of her claim.  That request is still too broad and unduly burdensome.  The Court, therefore, sustains the objection.

Andrews argues that the Responding Defendants must identify the responsive physical evidence withheld pursuant to the objection.  A party must state whether materials are being withheld pursuant to an objection.  Fed. R. Civ. P. 34(a)(2)(C).  In this case, however, the Court sustained the objection that the request was vague.  Because the request was vague, the Responding Defendants cannot determine whether responsive objects exist.  The Court, therefore, will not require the Responding Defendants to speculate on whether responsive objects exist.

<u>All Defendants Request No. 21</u>

All Defendants Request No. 21 asked for the following:

All documents related to discharge planning for Tiffany Rusher, including without limitation any documents relating to commitment proceedings which were contemplated or initiated, including emails and other communications with the State's Attorney's office.

<u>All Defendants Production Request</u>, Request 21.  Responding Defendants objected because the phrase "discharge planning for Tiffany Rusher" was vague, the request was overbroad, unduly burdensome, and not proportional to the needs of the case.  The Responding Defendants also objected because the

request sought documents subject to attorney work product and attorney client privileges.

The objections are overruled in part. The Court does not find the phrase discharge planning of Tiffany Rusher to be vague. The term covers the preparation for the discharge of Rusher from Logan and her immediate commitment to McFarland. The request, though, should be reasonably limited in time. The Court, therefore, directs Responding Defendants to produce all non-privileged documents generated, sent or received between January 1, 2016, and June 30, 2016, including all communications whether by email or otherwise, that mention Rusher's discharge from Logan in May 2016 or her immediate commitment to McFarland. The Court limits the Responding Defendants' obligation to search for such documents to the records of the following facilities, agencies, and offices: the office of the Governor of Illinois, including all staff in that office; the offices of Defendants Baldwin and Sim including all direct reports and support staff of Baldwin, Sim, and their direct reports; Logan; and McFarland. This limitation on the scope of the search should be sufficient to produce any responsive relevant information and will relieve the Responding Defendants from searching the entire Illinois state government. These documents may contain information relevant to the Responding Defendants' knowledge of Rusher's condition while in Logan and to whether the policies at

Logan created a substantial risk of harm. If Responding Defendants withhold a responsive document on a claim of privilege, the Responding Defendants must identify the document on a properly prepared privilege log.

All Defendants Interrogatory No. 22

All Defendants Interrogatory No. 22 asked for the following:

All documents relating to Illinois Department of Correction's contract with Wexford or any other entity or person relating to the provision of mental health services at Logan Correctional Center which were in effect during the relevant period.

All Defendants Production Request, Request 22. The Responding Defendants objected that the request was overly broad and unduly burdensome and seeks information not relevant to this case. The Responding Defendants also objected because the request might seek documents subject to the attorney client or attorney work product privilege. The Responding Defendants then produced the contract with Wexford. Baldwin Production Response, Response to Request 22.

The objections are overruled. The Responding Defendants are directed to produce all non-privileged documents concerning the formation of the contract (or contracts) with Wexford that was (or were) in effect during the period March 1, 2013 to May 31, 2016, and Wexford's performance under the contract (or contracts) with respect to the provision of mental health services during the period March 1, 2013, to May 1, 2016. Documents that reflect the Department's relationship with Wexford as the contract provider are relevant for purposes of

discovery.  Such information may be relevant for discovery purposes to Andrews'

claim that the Management Defendants knowingly implemented policies and

practices that created a substantial risk of harm.  If any responsive documents

are subject to the claim of privilege, Responding Defendants are directed to

identify those documents on a properly prepared privilege log.

<u>All Defendants Request No. 25</u>

> All Defendants Request No. 25 asked for the following:

> All documents relating to the provision of hospital level mental health
> care to prisoners confined to the [Department], including without
> limitations all plans, communications, emails, studies and similar
> documents relating to contracts with third parties, other state
> agencies, or privately owned or operated hospitals relating to such
> care, or plans or attempts to provide such care.

<u>All Defendants Production Request</u>, Request 25.  The Responding Defendants

objected that the request was overly broad and unduly burdensome and sought

irrelevant information.  The Responding Defendants stated that the term hospital

level mental health care was vague.  The Responding Defendants also objected

because the request might call for documents subject to the attorney client

privilege or attorney work product privilege.

The objection to the vagueness of the term "hospital level mental health

care" is moot because Andrews stated that the term meant the same as

"Intensive Mental Health Services" defined in the <u>Rasho</u> Order.  The other

objections are sustained in part because the request has no time limitation.  The

Court limits the request to the period from March 1, 2013 to May 31, 2016.  The objections are otherwise overruled.  The requested documents are relevant for discovery purposes to the claim that the Management Defendants knowingly implemented policies that created a substantial risk of harm to mentally ill inmates and in doing so disregarded that risk.  Responding Defendants may withhold responsive documents that are subject to a claim of privilege but must identify the withheld documents on a properly prepared privilege log.

All Defendants Request No. 26

All Defendants Request No. 26 asks for an opportunity to inspect areas of Logan where Rusher was housed.  Responding Defendants state that they will agree to a reasonable inspection.  Response to Plaintiff's Motion to Compel Discovery Responses, at 9.  The Court directs the parties to agree on the time, manner, and scope of such reasonable inspection.

THEREFORE, IT IS ORDERED that Plaintiff's Motion to Compel Discovery Responses from Government Defendants (d/e 50 ) is ALLOWED in part and DENIED in part.  The Responding Defendants are directed to produce the additional responses called for in this Opinion and, if necessary a privilege log, by July 31, 2019.  The Court determines, in its discretion, that the cost of bringing and responding to this motion should not be apportioned.  Fed. R. Civ. P. 37(a)(5)(C).

ENTER:  June 18, 2019.

_____s/ *Tom Schanzle-Haskins*_____

TOM SCHANZLE-HASKINS

UNITED STATES MAGISTRATE JUDGE