IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

Kelli Andrews,                                )
                                              )
                          Plaintiff,          )
                                              )        Case No.  18-cv-1101-SEM-TSH
v.                                            )
                                              )
Bruce Rauner *et al.*,                        )
                                              )
                          Defendants.         )

## MOTION FOR SANCTIONS

Pursuant to Federal Rule of Procedure 37(b)(2)(A) and the Court's August 15, 2023

Order (Dkt. 160), Plaintiff hereby moves this Court to enter an order sanctioning Defendant the

State of Illinois for failing to produce an adequately prepared 30(b)(6) witness, and directing that

an adverse inference be established as fact for the purposes of this action.

## BACKGROUND

This case involves Tiffany Rusher, a young mentally ill woman who was imprisoned by

the Department of Corrections beginning in 2011. Plaintiff alleges that over the course of her

incarceration Ms. Rusher exhibited severe symptoms of mental illness requiring treatment at an

inpatient mental hospital. At the time of her incarceration the IDOC did not have the capacity to

provide such hospital-level care, but the Illinois Department of Human Services ("IDHS"),

which operates the state's network of mental hospitals, did.  A state statute, furthermore,

authorized the transfer of mentally ill IDOC prisoners to the custody of the IDHS.  In short, the

State of Illinois had the capacity to provide Ms. Rusher with the care she needed. And the State

acknowledged that Ms. Rusher needed such care: in 2015, an internal IDOC memorandum

written by Ms. Rusher's lead mental health provider concluded that IDOC could not provide her

the mental healthcare she needed and thus placement in an outside mental health facility was

1

necessary. Exhibit 1 at 040813 (filed under seal).  IDOC clinicians reached the same conclusion about multiple other mentally ill prisoners as well.

Even so, Ms. Rusher was never transferred to an inpatient mental health facility.  (Neither were any of the other mentally ill prisoners who were also identified as requiring transfer in similar memorandums that have been produced in this case.) Her symptoms worsened, leading to her placement in extended solitary confinement and further mental deterioration.

Through discovery in this case, Plaintiff has sought to understand why Ms. Rusher was not transferred to an inpatient facility, despite the recommendation of her clinical team.  In February 2022, Plaintiff sought to depose the State of Illinois (in the relevant part) on the following two topics:

> 4. The State's consideration given to the transfer of mentally ill persons who were still in the custody of the IDOC, to outside mental health facilities, including those operated by the IDHS, the persons involved in said consideration, communications relating to such consideration, whether any mentally ill persons were so transferred, and if not, why not.

> 5. The State's consideration given to the transfer of Tiffany Rusher to outside mental health facilities, including those operated by the IDHS, the persons involved in said consideration, communications relating to such consideration, and the reasons she was not so transferred.

Ex. 2.

In response, the State identified a witness, Dr. Norine Ashley, to testify on these topics. However, when Plaintiff took Dr. Ashley's deposition in August 2022, she testified that though she was aware of discussions between IDOC and IDHS to transfer patients to inpatient facilities, she did not know why these discussions did not result in any transfers, or whether Ms. Rusher was considered for a transfer. Ex. 3 at 47:11-14; 60:20-25; 64:1-66:1.  In light of Dr. Ashley's lack of knowledge of this topic, after several conferences, counsel for the State identified a second witness, Dr. Melvin Hinton, to testify on Topics 4 and 5. Dr. Hinton's deposition took

place on February 3, 2023. Ex. 4. He, too, demonstrated a lack of knowledge about the consideration given to transferring mentally ill patients, and Ms. Rusher in particular, to inpatient facilities. *Id.* at 88:19-24; 97:1-16; 98:10-25; 110:19-101:19; 103:7-8; 117:17-118:12; 119:23-120:20. In response, on April 23, 2023, Plaintiff filed a Motion to Compel the State to provide an adequate 30(b)(6) witness to testify on Topics 4 and 5.  (*See* Dkt. 150).

On August 15, 2023, Magistrate Judge Long entered an order compelling the State of Illinois to produce a witness prepared to cover Topics 1, 4, and 5 of Plaintiff's 30(b)(6) Notice. (Dkt. 160). In particular, the Court noted "Surely, someone within the State knew whether any consideration was given to transferring Ms. Rusher to an outside mental health facility. She was either given consideration or she was not." *Id.*  The Court went on to state that "the State had a duty to prepare its witness so that he could give 'complete, knowledgeable and binding answers' *on behalf of the State.*" *Id.* (emphasis added).

Following this order, Plaintiff's counsel had an email exchange with Defense counsel to arrange for the ordered 30(b)(6) deposition. To assist the State in preparation, Plaintiff actually provided the questions that were asked at the deposition in advance. Ex. 5; Ex. 6. On September 29, 2023, IDOC defense counsel sent an email that identified Dr. Luke Fairless as the deponent, but stated "Dr. Fairless will only be able to answer on behalf of IDOC." Ex. 5. Plaintiff's counsel responded that the State was under obligation to provide a witness who was prepared to testify on behalf of the State, including the Department of Human Services and the governor's office. *Id*. IDOC counsel's response again affirmed that they intended to provide a witness who "can only testify as to IDOC." *Id.*

Dr. Fairless's deposition took place on November 2, 2023. As indicated in the emails arranging for the deposition, and over Plaintiff's insistence that the State provide a witness who

could testify for the whole State, and not just for IDOC, Dr. Fairless testified solely as a representative of "IDOC." Ex. 7 at 25:11-2; 25:24-25; 53:15 – 54:7; 57:14-16. He did not speak to anyone from any Illinois entity other than IDOC counsel in preparation for the deposition – in particular, Dr. Fairless confirmed multiple times that he did not interact with anyone from IDHS or the governor's office. *Id.* at 46:11-14; 55:17-23; 66:3-6.

As a result of this improperly narrowed scope, Dr. Fairless testified that he did not know the answers to questions within Topics 4 and 5. Though he testified that there was an agreement between IDOC and IDHS to provide for treatment beds in an IDHS inpatient facility, he was unable to answer when asked about how many patients were considered for transfer to those IDHS beds. *Id*., 39:19 – 24. He was likewise unable to answer questions about who was involved in the negotiations between IDHS and IDOC surrounding that agreement, or when those negotiations occurred. *Id.*, 39:25 – 40:15. He was unable to answer questions on behalf of the State about why IDHS ultimately refused to accept IDOC patients into IDHS facilities, or about the level of care available at IDHS facilities relative to IDOC facilities. *Id.* 50:2 – 52:12. He was also unable to answer whether any attempts at transfers to an IDHS facility were made on behalf of prisoners at Logan Correctional Center, the facility where Ms. Rusher was housed. Indeed, Dr. Fairless testified that he did not know whether Tiffany Rusher was one of the patients considered for transfer to an IDHS facility – he stated only that there were no "formal referrals" made. *Id.* 48:17 – 49:18. As he made clear in later testimony of the deposition however, there were many steps short of a "formal referral" involved in the consideration of a prisoner for transfer to an IDHS facility. *Id.*, 63:7 – 65:7.

## ARGUMENT

For the third time, and despite the Court's explicit order to do so, the State of Illinois has failed to adequately prepare a 30(b)(6) witness regarding Topics 4 and 5. Rule 30(b)(6) requires

a designee to "testify about information known or reasonably available to the organization" –
here, the State of Illinois, not merely the Department of Corrections. Fed. R. Civ. P. 30(b)(6).
This failure is inexcusable, especially given the fact that, in addition to briefing the deposition
topics on the motion to compel the third 30(b)(6) deposition, after three depositions, Plaintiff still
has no answers as to whether and why Ms. Rusher and other severely mentally ill prisoners in
IDOC custody were considered for transfer to IDHS facilities – a question that is central to the
disposition of this case.

"A district court has broad discretion in deciding whether a violation of the rules of
discovery warrants the imposition of sanctions." *Matei v. Cessna Aircraft Co.*, 35 F.3d 1142,
1147 (7th Cir. 1994). That sanctions authority arises from the Court's inherent power. *See*
*Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015) (noting that "A district court
has inherent power to sanction a party who had willfully abused the judicial process or otherwise
conducted litigation in bad faith." (quotation omitted)).

The authority to sanction also arises under Rule 37(b), which provides that "[i]f a party or
. . . a witness designated under Rule 30(b)(6) . . . fails to obey an order to provide or permit
discovery . . . the court where the action is pending may issue further just orders." Fed. R. Civ. P.
37(b)(2)(A). These include a variety of remedies, *see* Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii),
including "directing that . . . designated facts be taken as established for purposes of the action,
as the prevailing party claims[,]" Rule 37(b)(2)(A)(i), "prohibiting the . . . party from supporting
or opposing designated claims or defenses, or from introducing designated matters in evidence,"
Rule 37(b)(2)(A)(ii), and "inform[ing] the jury of the party's failure [to provide information or
identify a witness.]" Rule 37(c)(1)(B).

Whatever its source, the sanction imposed should accomplish two goals: it should "make [moving party] whole for the injury" caused by the discovery misconduct, and it should be "designed to deter the type of [discovery] misconduct" at issue. *DR Distributors, LLC, v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 864 (N.D. Ill. 2021) (citing *NHL v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976)). Plaintiff respectfully submits that both forms of sanction are appropriate in this case.

Rule 37(b) sanctions are warranted where, as happened in this case, a party fails to comply with a discovery order in a manner that "displays willfulness, bad faith, or fault." *See, e.g.*, *Langley by Langley v. Union Elec. Co.*, 107 F.3D 510, 514 (7th Cir. 1997) (internal quotation omitted). A party's subjective motivation need not be at issue. Rather, for purposes of Rule 37, fault concerns "the reasonableness of the conduct-or lack thereof-which eventually culminated in the violation," and not the party's subjective motivation for failing to comply with its discovery obligations. *Id.* (internal quotation omitted). In this case, the State has had three opportunities to properly prepare a witness to testify to a key issue in this case. Yet, despite a court order and pre-prepared questions, the State has failed to make even the most basic attempt to comply with its discovery obligations and flouts this Court's orders, and does so flagrantly.

Defendant's discovery misconduct is also exceptionally harmful to Plaintiff. In order to establish her claims under either the ADA or the Eighth Amendment, Plaintiff must establish not only that Ms. Rusher was injured, but that her injuries resulted from the deliberate indifference of the defendant—as relevant here, the State of Illinois. Plaintiff prepared the Rule 30(b)(6) topics at issue in this motion precisely to gather evidence regarding whether the State was deliberately indifferent, to Ms. Rusher's needs and her rights as a disabled person, and by simply

refusing to prepare a witness to offer testimony on those topics—despite this Court's order that it do so—the State has frustrated the gathering of that evidence.

The State must not be permitted to profit from flouting its discovery obligations, and Plaintiff must be protected from the harm caused by the State's misconduct.  The Court has multiple sanctions at its disposal; Plaintiff respectfully submits that the appropriate sanction here is one calibrated and congruent with the State's refusal to prepare a Rule 30(b)(6) witness on the noticed topics.  *See* Rule 37(b)(2)(A)(i) (empowering court to issue sanctions order "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims").  Plaintiff therefore respectfully requests that this Court order that, for the purposes of the action, the following facts be established as facts of record:

1.  During the relevant period, the State's policymakers were informed that Tiffany Rusher required hospital level care.

2.  During the relevant period, the State's policymakers were informed that Tiffany Rusher required hospital level care.

3.  During the relevant period, the State's policymakers were informed that Tiffany Rusher required a level of mental health care that could not be provided within the IDOC.

4.  During the relevant period, the State could have transferred Tiffany Rusher to an IDHS facility.

5.  During the relevant period, the State's policymakers knew that an IDHS facility could have provided the level of mental healthcare Tiffany Rusher required.

6.  At no point during Tiffany Rusher's incarceration in the IDOC did the State or its

policymakers attempt to provide her with hospital level care.

7.  At no point during Tiffany Rusher's incarceration in the IDOC did the State or its policymakers attempt to transfer her to a facility where she could receive hospital level care.

Plaintiff respectfully submits that a sanction so calibrated to Plaintiff's Rule 30(b)(6) notice is enough to protect Plaintiff and to deter such conduct by the State going forward.  In addition to or in lieu of this sanction, Plaintiff requests that the Court issue whatever sanctions order it determines is appropriate to remedy the prejudice caused to Plaintiff by the State's discovery misconduct and to deter such misconduct in the future.

## CONCLUSION

For the reasons set forth in above, Plaintiff respectfully requests that the Court issue a sanctions order against the State or its counsel for the discovery misconduct described in this motion.

Date:  March 18, 2024                              Respectfully submitted,

                                                                s/ Nicole Schult

 Alan Mills – alan@uplcchicago.org
Nicole Schult – nicole@uplcchicago.org
Emily Hirsch – emily@uplcchicago.org
Uptown People's Law Center
4413 North Sheridan Rd.
Chicago, Illinois 60640
Tel: (773) 769-1411

 Stephen H. Weil – weil@loevy.com
 Jon Loevy – jon@loevy.com
 Loevy & Loevy
 311 N. Aberdeen Street, Third Floor
 Chicago, IL 60607
 312-243-5900

*Attorneys for Plaintiff*

## Certificate of Service

The undersigned, an attorney, hereby certifies that s/he filed and served the foregoing

**Plaintiff's Motion for Sanctions** to all counsel of record by filing the same through the

CM/ECF system.

s/  Nicole Schult